## IN THE UNITED STATES DISTRICT COURT
## FOR THE SOUTHERN DISTRICT OF NEW YORK

| | | |
|---|---|---|
| NOKIA CORPORATION | ) | |
| | ) | |
| Plaintiff, | ) | Civil Action No. 08-cv-01507 |
| | ) | (DAB) |
| v. | ) | |
| | ) | |
| INTERDIGITAL INC., INTERDIGITAL | ) | |
| COMMUNICATIONS, LLC, and INTERDIGITAL | ) | |
| TECHNOLOGY CORPORATION | ) | |
| | ) | |
| Defendants. | ) | |
| | ) | |

## DECLARATION OF KARA F. STOLL

I, KARA F. STOLL, declare under penalty of perjury:

1.     I am an attorney with Finnegan, Henderson, Farabow, Garrett & Dunner, L.L.P., 901 New York Avenue NW, Washington, DC 20001.  The facts set forth herein are of my own personal knowledge and, if sworn, I could and would testify competently to them.  I am submitting this Declaration in support of InterDigital's Opposition to Nokia's Motion for Preliminary Injunction and Application for Show Cause Order.

2.     Attached hereto as Exhibit A is a true and correct copy of the Commission Investigative Staff's Response to Nokia Respondents' Motion to Terminate, or Alternatively, to Stay the Investigation as to Nokia Due to an Arbitrable Dispute, filed in the ITC on December 21, 2007.  Exhibit A has been filed under seal.

3.     Attached hereto as Exhibit B is a true and correct copy of Nokia's Reply in Support of Nokia's Motion to Terminate, or Alternatively, to Stay the Investigation as to Nokia Due to an Arbitrable Dispute, filed in the ITC on December 26, 2007.  Exhibit B has been filed under seal.

4.      Attached hereto as Exhibit C is a true and correct copy of InterDigital's Opposition to Nokia's Motion to Terminate, or Alternatively, to Stay the Investigation as to Nokia Due to an Arbitrable Dispute, filed in the ITC on December 21, 2007. Exhibit C has been filed under seal.

5.      Attached hereto as Exhibit D is a true and correct copy of Nokia's First Amended Complaint with Attachment A, originally filed in the United States District Court for the District of Delaware (Delaware I) on January 9, 2007.

6.      Attached hereto as Exhibit E is a true and correct copy of Nokia's Plaintiffs' Statement Pursuant to Second Discovery Order with an excerpt from Attachment A, filed in the United States District Court for the District of Delaware (Delaware I) on December 14, 2006.

7.      Attached hereto as Exhibit F is a true and correct copy of Nokia's Plaintiffs' Opening Brief in Support of Motion for Mandatory Stay Pursuant to 28 U.S.C. § 1659(a), originally filed in the United States District Court for the District of Delaware (Delaware I) on October 5, 2007.

8.      Attached hereto as Exhibit G is a true and correct copy of an Order dated December 5, 2007 of the Honorable Joseph J. Farnan, Jr., United States District Court for the District of Delaware (Delaware I).

9.      Attached hereto as Exhibit H is a true and correct copy of pages 1-4, 9, 14, 21, 122, 123 and 204 of the transcript of the Preliminary Conference held on October 18, 2007 in the ITC.

10.      Attached hereto as Exhibit I is a true and correct copy of InterDigital's Second Amended Complaint, filed in the United States District Court for the District of Delaware (Delaware II) on October 23, 2007.

11.     Attached hereto as Exhibit J is a true and correct copy of Nokia's Defendants' Motion for a Stay of Proceedings, filed in the United States District Court for the District of Delaware (Delaware II) on October 5, 2007.

12.     Attached hereto as Exhibit K is a true and correct copy of the United States District Court District of Delaware Civil Docket for Case No. 1:07-cv-00489-SLR (Delaware II) through March 4, 2008.

13.     Attached hereto as Exhibit L is a true and correct copy of Respondent Nokia Corporation's Notice of Appeal, filed in the United States District Court, Southern District of New York on January 26, 2006.

14.     Attached hereto as Exhibit M is a true and correct copy of the article found at www.3g.co.uk/PR/April2006/2990.htm entitled:  "Nokia and InterDitigal Resolve 2G/3G Royalty Issues," dated April 28, 2006.

15.     Attached hereto as Exhibit N is a true and correct copy of the Complaint of InterDigital Communications, LLC and InterDigital Technology Corporation, filed in the ITC on August 7, 2007.

16.     Attached hereto as Exhibit O is a true and correct copy of Nokia Corporation and Nokia Inc.'s Response to the Complaint and Notice of Investigation, filed in the ITC on October 5, 2007.

Dated:  March 7, 2008                    Respectfully submitted,

                                         _Kara Stoll_

                                         Kara F. Stoll

# EXHIBIT A

# BEING FILED UNDER SEAL

# EXHIBIT B

# BEING FILED UNDER SEAL

# EXHIBIT C

# BEING FILED UNDER SEAL

# EXHIBIT E

IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF DELAWARE

NOKIA CORPORATION and NOKIA INC.,

      Plaintiffs,

          v.

INTERDIGITAL COMMUNICATIONS
CORPORATION and INTERDIGITAL
TECHNOLOGY CORPORATION,

      Defendants.

C.A. No. 05-16-JJF

## PLAINTIFFS' STATEMENT PURSUANT
## TO SECOND DISCOVERY ORDER

Pursuant to the Second Discovery Order issued by Special Master Seitz on November 14, 2006, Plaintiffs Nokia Corp. and Nokia Inc. ("Nokia") hereby serve on Defendants InterDigital Communications Corp. and InterDigital Technology Corp. ("InterDigital") Plaintiffs' Statement Pursuant to Second Discovery Order.

### I.    InterDigital's ETSI Declarations

In Attachment A, Nokia demonstrates on a patent-by-patent basis that InterDigital's declarations to ETSI that 195 of InterDigital's U.S. patents are essential to the 3G standard UMTS are "false or misleading." *See* 15 U.S.C. § 1125(a)(1).

In addition, InterDigital's ETSI declarations were made in bad faith. As a preliminary matter, Nokia notes that evidence of bad faith – e.g., evidence that InterDigital knew or should have known that its ETSI declarations were "false or misleading" at the time it made them – is inherently more likely to be in the possession of InterDigital rather than Nokia. Nokia has served various discovery requests on InterDigital regarding bad faith but has not yet received

2.

adequate responses.[1] Nokia expects, for example, to obtain further evidence of bad faith when InterDigital serves its Statement pursuant to the Special Master's Second Discovery Order.

Nokia hereby incorporates by reference Nokia's response to Interrogatory No. 2 in Plaintiffs' First Supplemental Objections and Responses to Defendants' First Set of Interrogatories to Plaintiff, in which Nokia explains some contentions that InterDigital's ETSI declarations and other statements were made in bad faith.

Nokia further contends that InterDigital's interpretation of the ETSI declaration requirements demonstrates bad faith. InterDigital evidently interprets the ETSI IPR Policy and ETSI IPR Guidelines to require declaration whenever a patent "might," in some nebulous sense, at some undefined point in the future, and based on some unknown and unforeseen events, become essential to a standard – without any objective factual analysis of the essentiality of the claims. InterDigital's capacious interpretation of the ETSI requirements deprives the declaration process of any meaning, and is itself evidence of bad faith. For example, although the ETSI IPR policy defines "ESSENTIAL" to encompass "technical (but not commercial) grounds," InterDigital interprets ETSI's requirement that members "inform ETSI of ESSENTIAL IPRs" to require InterDigital to declare patents that are essential only on "commercial" grounds. Declarations made pursuant to InterDigital's bad faith "interpretation" are likewise made in bad faith.

Similarly, InterDigital's bad faith is demonstrated by the inadequate process InterDigital uses for determining essentiality. InterDigital has admitted that it declared patents to ETSI as essential to UMTS without preparing claims charts comparing the patents to specific provisions of the standard. Instead, InterDigital relies on a casual process for identifying patents to declare

---

[1]    Nokia also does not concede that bad faith is required as a matter of law for its Lanham Act claim.

3.

to ETSI. Through this inadequate process, InterDigital declares patents that it knows are not essential or for InterDigital is willfully ignorant. This informal process allows InterDigital to greatly increase the number of patents it can declare to ETSI and thereby furthers InterDigital's goal of licensing its patents. InterDigital's use of this inadequate process, however, demonstrates bad faith.

InterDigital's bad faith is also demonstrated by the vague nature of its essentiality declarations. For the 195 U.S. patents that InterDigital declared to ETSI as essential to the 3G standard UMTS, InterDigital did not list the ETSI Standard Number for the particular provision of the UMTS standard for which the patents are allegedly essential, even though the declaration form available at the time InterDigital made most of its declarations included a column for "ETSI Standard No." UMTS is broken into more than 400 provisions with separate ETSI Standard Numbers. InterDigital therefore knew or should have known that prospective licensees would face great difficulties in determining whether a patent declared by InterDigital was actually essential. Moreover, in determining whether to declare a patent essential, InterDigital at times compared the patent to a particular provision of UMTS. Despite having easy access to this information, InterDigital chose not to include it in essentiality declarations, and instead preferred to make its essentiality declarations difficult to confirm or refute.

InterDigital's bad faith is further demonstrated by InterDigital's refusal to comply with ETSI's requirements for timely declarations. Although ETSI requires that declarations of essential patents and applications be made "in a timely fashion," InterDigital has only declared patents and applications to ETSI twice – once in 2001 and once three years later in 2004. InterDigital consequently waits for substantial periods of time before declaring patents to ETSI.

4.

In fact, InterDigital has not yet declared to ETSI one patent, U.S. Patent No. 6,771,632, that InterDigital has in this litigation claimed to be essential to UMTS.

Nokia also notes that InterDigital's ETSI declarations regarding the 34 patents listed in Attachment B exhibit particular bad faith. InterDigital declared these patents to ETSI as essential to UMTS in 2001, but did not re-declare these patents to ETSI as essential in 2004. InterDigital has revealed to Nokia that the reason that InterDigital did not declare these patents a second time is that InterDigital no longer contends that these patents are essential to UMTS. InterDigital has not, however, requested that ETSI remove or update InterDigital's declarations regarding these non-essential patents from the ETSI database of declared patents, although InterDigital has updated its other declarations for other purposes. InterDigital evidently prefers to allow these false statements to remain in the ETSI database and to keep secret from the world that it no longer contends these patents to be essential to UMTS. InterDigital's secret withdrawal of these patents is an attempt to grant licenses and garner increased royalties on patents that even InterDigital knows are not essential. In doing so, InterDigital acts in bad faith.

Furthermore, InterDigital's ETSI declarations regarding the 45 patents listed in Attachment C exhibit particular bad faith. These patents concern only technology related to "time Division duplexing" or "TDD." Although for all practical purposes TDD technology has not been implemented for wireless mobile phone applications – and a license is therefore not needed for these patents – InterDigital did not indicate that these patents are not essential to the aspects of UMTS actually being practiced by manufacturers. InterDigital's vague references in its declarations to the UMTS specification make it more difficult for parties to determine that these patents are not declared for UMTS-FDD. Accordingly, InterDigital's claims that

5.

manufacturers must pay InterDigital substantial royalties based on the patents declared to ETSI – including the TDD patents – are "false or misleading" and made in bad faith.

Similarly, InterDigital's declarations regarding the 22 patents listed in Attachment D exhibit particular bad faith. InterDigital contends that manufacturers must pay InterDigital significant royalties for the patents it has declared to ETSI, including these patents. Much of the industry, however, *already* paid or is paying for licenses to these patents because rights to these patents were included in licenses granted with respect to the practice of the IS-95 CDMA standard. InterDigital knew or should have known that these rights to these patents had already been granted and that additional payments were unnecessary. InterDigital's "false or misleading" declarations regarding these patents were therefore made in bad faith.

These separate explanations of InterDigital's bad faith in declaring the 195 U.S. patents listed in Attachment A to ETSI are each sufficient to support Nokia's Lanham Act claim. Moreover, taken collectively, these different bad-faith allegations demonstrate a calculated campaign by InterDigital to convince the 3G industry, through false and misleading statements regarding these 195 patents, unnecessarily to pay InterDigital substantial royalties for products currently being manufactured to comply with UMTS.

## II.    InterDigital's Other Statements

Nokia's Lanham Act claim also focuses on InterDigital's efforts to market its patent portfolio through general statements that its patents are essential to 3G standards being implemented by manufacturers. Many of these general statements make specific reference to InterDigital's ETSI declarations. Nokia therefore incorporates by reference all of InterDigital's general essentiality statements (apart from the ETSI declarations) listed in (1) Plaintiffs' Statement Pursuant to First Discovery Order; (2) Defendants' Statement Pursuant to Special

6.

Master's First Discovery Order; and (3) Plaintiffs' First Supplemental Objections and Responses to Defendants' First Set of Interrogatories to Plaintiff, in particular Nokia's response to Interrogatory No. 1. These statements are false and misleading because manufacturers do not need to take a license to InterDigital's portfolio on the basis of the purported essentiality of any of the patents InterDigital declared to ETSI as essential to UMTS, as noted above and in Attachment A. Moreover, because these general statements rely on or reference the ETSI declarations, these statements are made in bad faith for the reasons noted above.

On information and belief, InterDigital has made additional essentiality claims through licensing presentations that are actionable under the Lanham Act. InterDigital has currently frustrated Nokia's efforts to obtain such presentations for use in these proceedings. When those discovery roadblocks are removed, Nokia will supplement this Statement accordingly.

MORRIS, NICHOLS, ARSHT & TUNNELL LLP

Jack B. Blumenfeld (#1014)
Julia Heaney (#3052)
1201 N. Market Street
Wilmington, DE 19801
(302) 658-9200
Attorneys for NOKIA CORPORATION and NOKIA INC.

OF COUNSEL:

ALSTON & BIRD LLP
Peter Kontio
Patrick Flinn
Randall Allen
Lance Lawson
1201 West Peachtree Street
Atlanta, GA 30309
(404) 881-7000

December 14, 2006

# ATTACHMENT A

**U.S. Patent No. 5,260,967**

InterDigital omitted this patent from its 2004 declaration to ETSI. InterDigital admitted that its 2004 declaration superseded its 2001 declaration. See Boles Tr. Vol. 1, 114-15. InterDigital therefore has disclaimed the essentiality of this patent.

InterDigital declared this patent essential to UMTS, a 3G standard encompassing two distinct technologies: those concerning time division duplexing ("TDD") and those concerning frequency division duplexing ("FDD"). UMTS-FDD has been widely implemented, but for all practical purposes UMTS-TDD has not been implemented for wireless mobile phone applications. InterDigital declared this patent to ETSI and has contended that manufacturers must pay to use its essential patents, including this one, thereby claiming that this patent relates to technology that manufacturers are currently implementing, i.e., UMTS-FDD. This patent, however, relates to technology concerning TDD, and InterDigital's essentiality declaration and indication that payment must be made for this patent are false and misleading.

Moreover, Nokia is already specifically licensed to this patent. InterDigital granted Nokia a license to its TDD technology, including patents and patent applications, in the TDD Development Agreement, (*see, e.g.*, Article 4 and section 4.2), executed by the parties and effective January 29, 1999. Thus, to the extent that InterDigital has made public statements implying that Nokia must pay to use InterDigital's 3G patent portfolio including this TDD-related patent, those statements are false and/or misleading.

Nokia reserves all of its rights with respect to this patent, including without limitation, the right to challenge the essentiality and validity of this patent.

117

# EXHIBIT F

IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF DELAWARE

NOKIA CORPORATION and NOKIA INC.,

　　　　　　　Plaintiffs,

　　　　v.

INTERDIGITAL COMMUNICATIONS
CORPORATION and INTERDIGITAL
TECHNOLOGY CORPORATION,

　　　　　　　Defendants.

C.A. No. 05-16 (JJF)

**PUBLIC VERSION**

---

**PLAINTIFFS' OPENING BRIEF IN SUPPORT OF MOTION FOR
MANDATORY STAY PURSUANT TO 28 U.S.C. § 1659(a)**

MORRIS, NICHOLS, ARSHT & TUNNELL LLP
Jack B. Blumenfeld (#1014)
Julia Heaney (#3052)
1201 N. Market Street
Wilmington, DE  19801
(302) 658-9200
jblumenfeld@mnat.com
jheaney@mnat.com

*Attorneys for Plaintiffs*

*Of Counsel*:

Patrick Flinn
Randall Allen
ALSTON & BIRD LLP
1201 West Peachtree Street
Atlanta, GA  30309
(404) 881-7000

Original Filing Date:  October 5, 2007

Redacted Filing Date:  October 11, 2007

## TABLE OF CONTENTS

**Page**

NATURE AND STAGE OF THE PROCEEDINGS ............................................................1

SUMMARY OF THE ARGUMENT ...............................................................................3

STATEMENT OF FACTS .............................................................................................4

ARGUMENT ...............................................................................................................11

    I.    THE STATUTE MANDATES A STAY OF CLAIMS THAT HAVE ANY
          ISSUES IN COMMON WITH AN ITC PROCEEDING............................................11

    II.   THERE ARE OVERLAPPING ISSUES IN THIS CASE. ........................................14

        A.  The "Essentiality" Issue Is Common to Both Cases and Requires a Stay of
            all Claims in this Case...........................................................................................14

        B.  The Other Common Issues With the Three Patents Also Mandate a Stay. ...........15

        C.  This Court Should Use Its Discretion to Stay Any Portions of the Case Not
            Otherwise Subject to the Mandatory Stay. .........................................................17

CONCLUSION............................................................................................................19

## <u>TABLE OF AUTHORITIES</u>

<span style="font-variant: small-caps">Cases</span>

*Amkor Tech. , Inc. v. Carsem (M) SDN BHD*,
   No. 03-5116 MMC, 2004 WL 3237542 ........................................................................ 12-13

*Broadcom Corp. v. Qualcomm Inc.*,
   No. 06-4292, 2007 WL 2475874 (3d Cir. Sept. 4, 2007) ........................................14

*Cellco P'ship v. Broadcom Corp.*,
   227 F. App'x. 889 (Fed. Cir. 2007) ........................................................................12

*Cost Bros., Inc. v. Travelers Indemnity Co.*,
   760 F.2d 58 (3d Cir. 1985) ........................................................................................17

*Flexsys Americas, LP v. Kumho Tire, U.S.A., Inc.*,
   No. 5:05CV156, 2005 WL 1126750 (N.D. Ohio Apr. 29, 2005) ......................13, 19

*In re Princo Corp.*,
   478 F.3d 1345 (Fed. Cir. 2007) ..................................................................................12

*InterDigital Communications, LLC, et al v. Nokia Corp., et al.*,
   No. 1:07-cv-00489-SLR .............................................................................................2

*Landis v. N. Am. Co.*,
   299 U.S. 248 (1936) ....................................................................................................17

*Micron Tech., Inc. v. Mosel Vitelic Corp., Inc.*,
   No. CIV 98-0293-S-LMB, 1999 WL 458168 (D. Idaho Mar. 31, 1999) ...............13

*Pegasus Dev. Corp. v. DirecTV, Inc.*,
   C.A. No. 00-1020-GMS, 2003 WL 21105073 (D. Del. May 14, 2003) .................17

*Thomson Licensing S.A. v. Benq Corp.*,
   No. 3:05-CV-01005-JSW, 2005 WL 1039030 (E.D. Cal. May 4, 2005) ...............12

*Verve, LLC v. Verifone, Inc.*,
   No. C04-03659JF, 2004 WL 2600452 (N.D. Cal. Nov. 15, 2004) ....................12, 19

*Xerox Corp. v. 3Com Corp.*,
   69 F. Supp. 2d 404 (W.D.N.Y.1999) ........................................................................17

## <u>TABLE OF AUTHORITIES, cont'd</u>

**STATUTES**

19 U.S.C. § 1337.................................................................................................9

19 U.S.C. § 1337(a)(1)(A)(i) ..............................................................................9

28 U.S.C. § 1659(a) ......................................................................................*Passim*

**OTHER AUTHORITIES**

H.R. Rep. 103-826(I), (1994), *as reprinted in* 1994 U.S.C.C.A.N. 3773......................................12

1.

## NATURE AND STAGE OF THE PROCEEDINGS

In this case, each side accuses the other of engaging in acts of unfair competition arising from declarations of essentiality of patents to the European Telecommunications Standards Institute ("ETSI"). Plaintiffs Nokia Corp. and Nokia Inc. (collectively, "Nokia") have further alleged that defendants InterDigital Communications Corp. and InterDigital Technology Corp. (collectively, "InterDigital") have made false statements about the validity and scope of certain of InterDigital's patents.

In an amended complaint filed in January, 2007, Nokia sought broad equitable and declaratory relief with respect to the InterDigital patent portfolio, and challenged InterDigital's public statements that manufacturers of phones compliant with ETSI's Universal Mobile Telecommunications System ("UMTS") standard[1] were required to pay InterDigital substantial sums of money due to the alleged essentiality of several hundred patents. Nokia's Amended Complaint alleges that the industry does not owe InterDigital any money for these patents because they are alternatively (a) not essential, (b) invalid, (c) already licensed to the industry, or (d) applicable to a portion of the UMTS standard not implemented by commercial carriers. In response to the Amended Complaint, InterDigital filed what it claimed was a "mirror image" of the Nokia complaint.

In March, 2007, InterDigital replaced the counsel that had been representing it since 2005 in the case. New counsel, after requesting a delay of nearly two months to learn about the case, asked the Special Master to enter an order managing discovery. A Case Management Order ("CMO") prepared by the Special Master was entered by the Court on August 29, 2007 (D.I. 214). No depositions or new, non-trivial document discovery took place

---

[1]    UMTS is a Third Generation (or "3G") standard, following the first analog-based cell phone standard ("1G") and the first digital standards ("2G").

2.

between the time InterDigital replaced its counsel and the entry of this Order. InterDigital refused to produce patent-related documents during this period or to make any inventors available for deposition and, to date, still has not provided any such discovery.

As part of the CMO, Nokia was required, over its objections, to state contentions regarding 24 InterDigital patents that had not been declared to ETSI when Nokia's Amended Complaint was filed. On August 7, 2007, just prior to the date Nokia was required to submit these contentions, InterDigital filed a complaint with the International Trade Commission ("ITC"), asserting that Nokia infringed two of those 24 new patents. On September 5, 2007, the ITC agreed to conduct an investigation based on InterDigital's complaint. For reasons explained in more detail below, InterDigital felt it necessary to specifically allege that these two patents were essential to the practice of the UMTS standard.[2]

InterDigital also filed a complaint against Nokia for infringement of those two patents in this Court, but failed to mark it as a related case to this one, as required by D. Del. LR 3.1(b).[3]

Because InterDigital had insisted on litigating the same two patents in three different cases, Nokia asked the Special Master to delay requiring Nokia to provide contentions regarding these two patents until the correct forum was resolved. During an August 20, 2007 teleconference, the Special Master refused, but stayed that order pending Nokia's appeal of that decision. ████████████████████████████████████████████████████

---

[2]    As shown below, to sue in the ITC, a patent owner must plead and prove more than infringement of a valid patent. A patent owner must prove the existence of a domestic industry that practices the accused invention. InterDigital makes no products and principally seeks patent license fees. Accordingly, it appears as if InterDigital is counting on proving essentiality as the basis for its domestic industry case.

[3]    That case, *InterDigital Communications, LLC, et al v. Nokia Corp., et al.*, C.A. No. 07-489-SLR, is currently assigned to Judge Robinson.

On September 27, 2007, this Court affirmed the Special Master's decision to require Nokia to submit contentions regarding the scope of the two ITC patents in this proceeding (D.I. 220). The next day, September 28, 2007, InterDigital sought leave in the ITC to add a third patent to the case, and filed an amended complaint in its infringement case in this Court. This new patent, U.S. Patent Number 6,973,579 (the "'579 patent"), was identified by Nokia in 2006 in this case as one of specific the patents whose scope was contested. The issues of enforceability and validity of that patent were joined in this case with the January 2007 Amended Complaint.

Today, October 5, 2007, Nokia answered InterDigital's complaint in the ITC. Among other affirmative defenses, Nokia alleges that InterDigital is not entitled to an exclusion order by virtue of its declarations of essentiality to ETSI and promise to license those patents on terms that are fair, reasonable, and non-discriminatory.

Nokia now moves, pursuant to 28 U.S.C. § 1659(a), for a mandatory stay of this entire action as a result of InterDigital's ITC filing. A companion motion seeking to stay the infringement action filed before Judge Robinson has also been filed.

## SUMMARY OF THE ARGUMENT

A stay of "any claim" in a district court is *mandatory* when any "issue" is presented to the ITC proceeding and a district court at the same time. 28 U.S.C. § 1659(a). In this case, the unfair competition claims will necessarily address the definition of "essential," and will do so specifically in the context of the ETSI IPR policy which defines that term. In the ITC case, InterDigital elected to prove that its patents are not just infringed, but essential to the

4.

practice of the UMTS standard and Nokia's affirmative defenses also involve the issue of essentiality.

In addition, the common issues of scope, validity and enforceability of the three InterDigital patents at issue in the ITC require that this Court stay the proceedings with respect to those three patents.  Moreover, because InterDigital has consistently maintained that its counterclaims are merely contingent on Nokia's claims (and in fact InterDigital believes that its claims are not even actionable, but has filed them only in the alternative that Nokia prevails), there is no reason for InterDigital's counterclaims -- or any claims -- to proceed once Nokia's claims are stayed.

## STATEMENT OF FACTS

**Issues in Nokia's Claims in this Case.**  InterDigital's violations of the Lanham Act and various state unfair competition laws arise from its false and misleading statements regarding the scope and validity of its patent portfolio and InterDigital's related claims that the mobile phone industry must pay substantial royalties for the use of InterDigital's technology purportedly covered by that portfolio.

More specifically, InterDigital claims that it owns a substantial number of valid patents that are "essential" to interoperability standards necessary for the success of the mobile telephone industries.  This suit focuses on interoperability standards for mobile telephones known as UMTS, which is the predominant third and most recent generation of wireless interoperability standards.[4]

---

[4]    WCDMA (Wideband Code Division Multiple Access) is the name of the technique that allows multiple users to share the same radio frequency in UMTS, and, therefore, the terms WCDMA and UMTS are, for purposes of this Motion, used interchangeably.

5.

When a valid patent claim covers a portion of an interoperability standard, it is typically described as "essential" to the standard. The owner of such a patent can demand compensation from the entire mobile telephone industry implementing that aspect of the standard based on its asserted use. After manufacturers have expended substantial capital implementing a portion of a standard, the owner of a valid essential patent could, absent proper controls, attempt to "hold up" the industry and extort unreasonable patent royalties.

Standards-setting organizations employ a variety of strategies to prevent such "hold-ups." For example, ETSI, the world leader in promulgating UMTS, requires that its members disclose essential intellectual property rights, including patents, to the industry by making a formal declaration of essentiality to ETSI.[5] ETSI further requests that its members agree to grant irrevocable licenses for their declared patents on terms that are "fair, reasonable and non-discriminatory" or "FRAND."[6] Nokia and InterDigital are both ETSI members.

Nokia has alleged in this case InterDigital's abuse of the ETSI declaration policy. InterDigital abused the standards process by, among other things, declaring to ETSI that patents were essential when they were clearly not. InterDigital touts a portfolio of more than 200 allegedly essential patents, but that claim is a gross exaggeration. In many instances, InterDigital attempts to inflate the volume of purportedly essential patents by filing a single application that sprouts dozens of continuation applications, producing many patents with claims all arising from the same specification. Two of the patents at issue in this case and asserted by InterDigital at the ITC, U.S. Patent Numbers 7,117,004 (the "'004 patent") and 7,190,966 (the "'966 patent"), are excellent examples of this abuse. Both claim priority to an application filed in 1996. Prior to the

---

[5]     *See* ETSI Guide on Intellectual Property Rights (Exhibit A), § 2.

[6]     *See* ETSI IPR Policy (Exhibit B), ¶ 6.1.

6.

issuance of these two patents (in late 2006 and early 2007), InterDigital had declared as "essential" at least 15 other patents springing from the same application. The first such "essential" patent issued in 1998,[7] and InterDigital's first set of declarations of "essential" patents were filed in 2001.

Although it had more than a decade to write claims to read on the emerging standard, and although it had declared at least 15 patents from a single family as essential by 2006, it is telling that InterDigital did not feel comfortable enough to charge anyone with infringing any of these 15 patents. InterDigital has abandoned all 15 of the "essential" patents from this specification and relies only on patents issued in October, 2006 and March 2007 in its ITC case against Nokia.

This abuse places the definition of "essential" at the very center of the parties' Lanham Act and related state law claims. Indeed, the parties have repeatedly disputed the definition of essential and the Special Master ordered the parties to provide their definitions of essential in a contention interrogatory response.[8] The parties' responses, not surprisingly, differed widely. Nokia's proposed definition tracks language in the ETSI IPR policy and Nokia maintains that such language excludes patents that are considered to be commercially essential, but not technically essential.[9] Nokia further recognizes that an exception is available only in

---

[7]    U.S. Patent No. 5,841,768 (filed in 1996).

[8]    *See* First Amended Case Management Order (D.I. 204) at ¶ 2.

[9]    The definition of "essential" in the ETSI IPR Policy states:

   ESSENTIAL as applied to IPR means that it is not possible on technical (but not commercial) grounds, taking into account normal technical practice and the state of the art generally available at the time of standardization, to make, sell, lease, otherwise dispose of, repair, use or operate EQUIPMENT or METHODS which comply with a STANDARD without infringing that IPR. For the avoidance of doubt in exceptional cases where a STANDARD can only be implemented by

"exceptional cases" where patents may be essential if there are a number of ways of implementing a standard, but all of them are patented.[10]  InterDigital, on the other hand, claims that nearly 50% of its patents for which essentiality remains an issue fall within the "exceptional case" provision of the definition.[11]  The parties' dispute regarding the definition of essentiality is of paramount importance to Nokia's claims and InterDigital's mirror-image counterclaims.

When Nokia filed its Amended Complaint in this case, InterDigital had only submitted its patents to ETSI as essential to UMTS on two occasions:  once in 2001, and once in 2004.  The 2004 declaration included the '579 patent and Nokia's Amended Complaint unquestionably put the scope, validity and enforceability of the '579 patent at issue.  Then, on March 21, 2007, InterDigital submitted its third set of declarations to ETSI regarding 26 additional patents, which included the '004 patent and the '966 patent.  ETSI, however, did not publish, and still has not published, the March, 2007 submission in its online database of ETSI declarations. ████████████████████████████████████████████

████████████████████████████████████████████████████████████████

---

technical solutions, all of which are infringements of IPRs, all such IPRs shall be considered ESSENTIAL.

(Exhibit B).

[10]  *See* Nokia's September 18, 2007 Interrogatory Response Pursuant to Paragraph Two of the Amended Case Management Order (Exhibit C) at 1-2.

[11]  *See* First Amended Case Management Order (D.I. 204) at Exhibits A and B.  In Exhibit A, InterDigital identifies 239 patents it has declared to ETSI, although the essentiality of roughly 70 of these patents is not at issue because they are either associated with a portion of the UMTS standard not used by the industry or are already licensed to the industry.  In Exhibit B, InterDigital identifies 77 patents (or roughly half of the patents still at issue) which it claims are essential only under the exceptional case provision.

8.

███████████████████████████████████████████████    The Special

Master agreed that these new patents were part of this action and ordered Nokia to provide

essentiality contentions regarding the 26 newly declared InterDigital patents (D.I. 204).    The

Court then adopted the Special Master's Order (D.I. 214).    As explained below, the '579, '004

and '966 patents are each also at issue in InterDigital's ITC action against Nokia.

          **Issues in InterDigital's Counterclaims in this Action.**    On February 21, 2007,

InterDigital filed retaliatory counterclaims against Nokia that attempt to mirror Nokia's claims

against InterDigital, ostensibly attacking the essentiality of 195 patents that Nokia has declared

to ETSI as essential to UMTS.

          InterDigital made clear that its counterclaims were filed in the "alternative," and

on the condition that the Court concluded that the submission of an ETSI information statement

was actionable under the Lanham Act.[13]    InterDigital has confirmed this aspect of its

counterclaims on numerous, recent occasions.  First, in a June 4, 2007 letter from InterDigital's

counsel to the Special Master, InterDigital explained under its heading "Description of the

Case," that it "filed a conditional counterclaim, essentially mirroring Nokia's claims against it,"

and that the claims were "contingent," and filed only to ensure that Nokia's own statements

would be "assessed under the same standards it invokes to challenge InterDigital's statements."[14]

More recently, InterDigital again confirmed that "InterDigital's counterclaims concerning

---

[12]    ████████████████████████████████████████████████████████████████████

[13]    InterDigital's Original Answer to Nokia's First Amended Complaint and Original
Counterclaims (D.I. 160) at ¶ 204.

[14]    June 4, 2007 Letter from Richard Horwitz to Special Master (Exhibit F) at 3-4.

9.

Nokia's statements to ETSI are expressly conditioned on the unlikely event that the Court finds InterDigital's corresponding statements to be actionable."[15]

**InterDigital's ITC Case.** On August 7, 2007, InterDigital filed an investigation request with the ITC alleging infringement by Nokia of two patents (the '004 patent and the '966 patent, both among InterDigital's March, 2007 filing with ETSI and, as described above, both part of the pending action) and requesting, among other relief, an order barring Nokia from importing infringing UMTS handsets into the United States.[16] On September 5, 2007, the ITC agreed to conduct an investigation based on the Original ITC Complaint and the ITC named Nokia as a respondent.[17] Then, on September 28, 2007, InterDigital filed a Motion to Amend its Original ITC Complaint which adds an infringement claim for the '579 patent.[18]

The purported essentiality of these three patents to UMTS is central to InterDigital's ITC action. InterDigital appears to believe that proving essentiality is necessary for it to obtain any relief from the ITC. This is because the remedy provided by the ITC under 19 U.S.C. § 1337 does *not* give the ITC jurisdiction over patent infringement claims asserted against *all* imported products. Rather, a complainant in the ITC must plead and prove the existence of "an industry in the United States" that would be "destroy[ed] or substantially injure[d]" by the importation of an infringing product. 19 U.S.C. § 1337(a)(1)(A)(i). This

---

[15]    InterDigital's September 5, 2007 Opposition to Nokia's Objections to Special Master's August 20, 2007 Decision (D.I. 216) at n. 6.

[16]    *See* ITC Complaint (Exhibit G), ¶ 65(c).

[17]    *See* Notice of Investigation (Exhibit H).

[18]    *See* InterDigital's proposed Amended Complaint ("Amended ITC Complaint") (Exhibit I), ¶ 39.

requires the complainant to prove that some domestic industry practices the technology claimed in the patents at issue.

This "domestic industry" requirement is particularly difficult for InterDigital to prove because InterDigital does not make any products that practice the patents. Rather, InterDigital claims the benefit of a domestic industry based on its activities in standard setting and the alleged practice of its inventions by its *licensees*.[19] It is unlikely that any licensee has ever specifically licensed only the three ITC patents to the exclusion of the other patents in the InterDigital portfolio given what appears to be InterDigital's typical practice of licensing only on a portfolio basis. Thus, the two ways InterDigital could try to meet its burden of proving that a domestic industry practices these inventions are: to prove (a) specific practice of the patents through technical information provided by a licensee somehow willing to help InterDigital; or (b) that the patents are essential to UMTS. InterDigital will likely seize on the second method given the obvious problems in proving the first.

For this reason, essentiality permeates the ITC proceedings. InterDigital's Amended ITC Complaint states that "any of [Nokia's] handsets capable of operating in a 3G WCDMA [i.e., UMTS] system are accused of infringing [the '004 and the '966 patents]," (Exhibit I, ¶ 51) and that Nokia's handsets capable of operating with a specific portion of the UMTS standard called HSDPA are accused of infringing the '579 patent (*see id.* at ¶ 52). Further, InterDigital explains that Nokia's products are specifically designed to be used in a 3G UMTS system, are advertised as working with a 3G UMTS system, and that there is no substantial non-infringing use of the products when used in a 3G UMTS system. *See id.* at ¶¶ 62-63.

---

[19]    *See* InterDigital's Original ITC Complaint (Exhibit G), ¶ 64.

11.

InterDigital's Amended ITC Complaint sets forth InterDigital's purported work in developing the 3G standard and the fact that InterDigital's licensees make 3G-compliant products. *See id.* at ¶¶ 75, 80-81. In addition to the statements in the Amended ITC Complaint, InterDigital also provided with its filing lengthy portions of the UMTS standard and claims charts comparing the '579, '004 and '966 patents to the UMTS standard.[20]

InterDigital served discovery requests in the ITC requesting that Nokia admit or deny that the '004 patent and '966 patent are essential to UMTS and that practice of UMTS infringes the '004 and '966 patents.[21] InterDigital has made it quite clear that it plans to address directly the issue of whether these patents are "essential" to the UMTS standard promulgated by ETSI.

## ARGUMENT

### I.  THE STATUTE MANDATES A STAY OF CLAIMS THAT HAVE ANY ISSUES IN COMMON WITH AN ITC PROCEEDING.

Congress has provided that when an *issue* exists in common between an ITC case and a district court case, the *claims* where those issues are present *must be stayed.* 28 U.S.C. § 1659(a) provides:

> In a civil action involving parties that are also parties to a proceeding before the United States International Trade Commission under section 337 of the Tariff Act of 1930, at the request of a party to the civil action that is also a respondent in the proceeding before the Commission, *the district court shall stay, until the determination of the Commission becomes final, proceedings in the civil action with respect to any claim that involves the same issues involved in the proceeding before the Commission,* but only if such request is made within-- (1) 30 days after the party is named as a respondent in the proceeding before

---

[20]    *See* Exhibits 18 and 19 to Exhibit I; Exhibits 6, 7, 10, 11, and 12 to Exhibit G.

[21]    *See* InterDigital's September 11, 2007 First Set of Requests for Admission to Respondents (Exhibit J), Request Nos. 32-39.

12.

the Commission, or (2) 30 days after the district court action is filed, whichever is later.

(Emphasis added.)  This statute implements Congress' decision to allow an ITC Respondent to avoid fighting the same issues on multiple legal fronts and instead, to "address the possibility that infringement proceedings may be brought against imported goods in two forums at the same time." H.R. Rep. 103-826(I), at 141 (1994), *as reprinted in* 1994 U.S.C.C.A.N. 3773; *see also In re Princo Corp.*, 478 F.3d 1345, 1355 (Fed. Cir. 2007) (Congress enacted this provision "to prevent separate proceedings on the same issues occurring at the same time").

The key to § 1659(a) is not that Congress opted to stay only identical disputes or identical claims, but all claims in civil courts where the claims involve the same issues as those in a claim between the same parties pending before the ITC.  Specifically, stays are not limited to infringement actions or issues only, but stays are instead appropriate "with respect to any claim that involves the same issues as those pending before the Commission." H.R. Rep. 103-826(I), at 141; *see also Princo Corp.*, 478 F.3d at 1356 ("[t]he statute is *not limited to a stay of any district court determination of issues pending before the Commission; it extends to any district court 'proceedings' on a 'claim' involving issues pending before the Commission*") (emphasis added).

Consistent with the above discussion of the purposes of § 1659(a), the statute has generally been applied by district courts (or discussed by other courts) to stay matters with little comment or discussion regarding what constitutes the same issues. *See Verve, LLC v. Verifone, Inc.*, No. C04-03659JF, 2004 WL 2600452, at *1 (N.D. Cal. Nov. 15, 2004); *Cellco P'ship v. Broadcom Corp.*, 227 F. App'x. 889 (Fed. Cir. 2007); *Thomson Licensing S.A. v. Benq Corp.*, No. 3:05-CV-01005-JSW, 2005 WL 1039030, at *1 (E.D. Cal. May 4, 2005); *Amkor Tech. , Inc.*

13.

*v. Carsem (M) SDN BHD*, No. 03-5116 MMC, 2004 WL 3237542, at * 1 (N.D. Cal. Feb. 9, 2004).

There are some limited circumstances, however, where district courts have addressed in more detail § 1659(a)'s requirement that the same issues be before the court and the ITC. These circumstances arise when courts consider whether to stay claims in a district court involving patents that are similar, but legally separate, from patents involved in ITC actions. Notably, that is not the circumstance in the present case given that each of Nokia's claims includes InterDigital's patent portfolio and thus the patents at issue in the ITC action.

In the limited situations described above, some courts have determined that where the ITC will construe similar claims to those at issue before the court or consider other issues which will make resolution of claims easier for the court, even claims solely regarding patents not before the ITC should be stayed. *See Flexsys Americas, LP v. Kumho Tire, U.S.A., Inc.*, No. 5:05CV156, 2005 WL 1126750, at *4 (N.D. Ohio Apr. 29, 2005). Other courts have determined that § 1659(a) only applies to the claims involving precisely the same patents at issue in the ITC action, and not the other patent infringement claims, and therefore have refused their discretion to stay claims solely related to other patents not present at the ITC. *See Micron Tech., Inc. v. Mosel Vitelic Corp., Inc.*, No. CIV 98-0293-S-LMB, 1999 WL 458168, at *3 (D. Idaho Mar. 31, 1999). Regardless of the fact that courts have differed on how to treat claims expressly about patents not before the ITC, the fact remains that here, all of Nokia's claims, at InterDigital's insistence, include the three patents which InterDigital seeks to litigate in the ITC, and, as demonstrated below, because the same issues are at present in both actions, all claims in this case should be stayed.

14.

## II.    **THERE ARE OVERLAPPING ISSUES IN THIS CASE.**

### A.    The "Essentiality" Issue Is Common to Both Cases and Requires a Stay of all Claims in this Case.

The issue of what is an "essential" patent, and how that definition is applied to patents declared to ETSI, is a central issue in both this case and in the ITC case. It is central here because InterDigital claims that its statements of "essentiality" are true because of the nature of the definition of "essential" under the ETSI policy. It is central in the ITC case because if the patents are not "essential," then there is no domestic industry to protect and the ITC has no jurisdiction.

Moreover, as noted above, the ETSI definition of "essential" is also central in the ITC case because the declaration to ETSI of "essential" patents gives rise to various defenses, including patent misuse of those patents. Indeed, the Third Circuit has recently ruled in a case involving the ETSI IPR policy that a "patent holder's intentionally false promise to license essential proprietary technology on FRAND terms," coupled with the "patent holder's subsequent breach of that promise" gives rise to antitrust liability. *See Broadcom Corp. v. Qualcomm Inc.*, No. 06-4292, 2007 WL 2475874, at *11 (3d Cir. Sept. 4, 2007). Thus, the presence of the essentiality issues in all claims requires all claims to be stayed.

Indeed, when addressing the narrow issue of whether to require discovery on the ITC patents in this case, the Special Master in this case recognized the presence of overlapping *issues* between the actions.[22] Similarly, this Court noted that "determining essentiality of the patents may implicate issues synonymous to issues raised in the infringement actions [before the

---

[22]    *See* Transcript of Aug. 20, 2007 Teleconference (Exhibit K) at 22:6-7.

15.

ITC and before this Court]."[23]  This Court cannot continue with the prosecution of the claims or counterclaims in light of the presence of the essentiality issues in the two parallel proceedings.

          **B.**      **The Other Common Issues With the Three Patents Also Mandate a Stay.**

      With regard to the three patents (the '579, '004 and '966 patents) InterDigital has injected into this case and the ITC, there are unquestionably issues in common.  The scope of the patents – what they cover and what they do not – will be decided in both cases.  InterDigital will seek to prove in both cases that the patents are essential.  Both this Court and the ITC will be required to construe the claims of these patents.

      The validity of these patents is likewise at issue in both cases.  Nokia's Amended Complaint puts directly at issue the validity of the patents Nokia specifically challenged, including the '579 patent.  For example, Nokia's Amended Complaint alleges that, even if some of InterDigital's patents were to "meet the definition of 'essential,' members of the industry do not need to pay InterDigital any money for them . . . [in part because] the patents cannot be valid and cover the standard at the same time."[24]  Indeed, Nokia's requested relief includes judgment:

        (c) Declaring the extent to which any of the patents [challenged by Nokia] have valid, enforceable claims which necessarily read on any product compliant with . . . any 3G Standard . . . ; [and]

        . . .

        (e) That InterDigital's statements concerning the scope and validity of its 3G patents are false and misleading[.][25]

      Moreover, because ███████████████████ the '004 and '966 patents be included in this case ████████████████████████████████ the

---

[23]     September 27, 2007 Memorandum Opinion (D.I. 220) at 4.

[24]     Nokia Amended Complaint (D.I. 122) at ¶ 36(d); *see also id.* at ¶¶ 50-51.

[25]     *Id.* at p. 26.

16.

validity of those patents is in common in both cases.  The same is true for the enforceability of these patents.

Because these *issues* with respect to the three patents are found in *all* of Nokia's unfair competition *claims*, there is no separate claim that can be litigated in this Court free from the requirements of § 1659(a).



---

26    InterDigital's September 5, 2007 Opposition to Nokia's Objections to Special Master's August 20, 2007 Decision (D.I. 216) at 3, 4, 11 and 14.

27    *See* September 11, 2007 Letter from Special Master (Exhibit L) at 1.

17.

    C.    This Court Should Use Its Discretion to Stay Any Portions
        of the Case Not Otherwise Subject to the Mandatory Stay.

The essentiality issues discussed above permeate both the claims and the counterclaims in this case, and the claims and defenses in the ITC. Likewise, the patent specific issues in this case cannot be separated from InterDigital's claims or the defenses Nokia today asserts in that action. To the extent there is anything left, however, this Court should exercise its discretion and stay anything remaining.

District courts have the inherent power to stay a particular case pending the conclusion of some other event. *See, e.g., Landis v. N. Am. Co.*, 299 U.S. 248, 254-55 (1936). The Third Circuit has held that a court has the "inherent power to conserve judicial resources by controlling its own docket." *Cost Bros., Inc. v. Travelers Indemnity Co.*, 760 F.2d 58, 60 (3d Cir. 1985). Such stays are discretionary. *See Pegasus Dev. Corp. v. DirecTV, Inc.*, C.A. No. 00-1020-GMS, 2003 WL 21105073, at *1 (D. Del. May 14, 2003). In ruling on a motion to stay, courts are guided by three factors: "(1) whether a stay would unduly prejudice or present a clear tactical disadvantage to the non-moving party; (2) whether a stay will simplify the issues in question and trial of the case; and (3) whether discovery is complete and whether a trial date has been set." *Id.* at *1 (quoting *Xerox Corp. v. 3Com Corp.*, 69 F. Supp. 2d 404, 406 (W.D.N.Y.1999)).

Here, Nokia's and InterDigital's claims are so entwined, that if any claims are stayed, all should be stayed. Specifically, InterDigital has made numerous and express statements that its counterclaims are filed in the "alternative," and are brought only on the condition that the Court concludes that the submission of ETSI information statements is

18.

actionable under the Lanham Act.[28]    InterDigital maintains that its counterclaims are "contingent" claims, filed only to ensure that Nokia's own statements would be "assessed under the same standards it invokes to challenge InterDigital's statements."[29] ████████████████

████████████████████████████████████████████████████████
████████████████████████████████████████████████████████
████████████████████████████████████████████████████████
████████████████████████████████████████████████████████
████████████████████████████████████████████████████████
████████████████████████████████████████████████████████

        The other two prongs cited above (whether a stay will simplify the issues in question and the trial of the case and whether discovery is complete and a trial date has been set) also weigh in favor of staying any claims remaining after application of the mandatory stay. The benefit of the ITC's adjudication of issues, whether or not issue preclusive, will certainly be of benefit to this Court. As for the final prong, discovery in this case has been at a virtual standstill since March and does not close until December of this year (D.I. 171). As the Court recognized,

---

[28]    InterDigital's Original Answer to Nokia's First Amended Complaint and Original Counterclaims (D.I. 160) at ¶ 204.

[29]    Exhibit F at 3-4; *see also* InterDigital's September 5, 2007 Opposition to Nokia's Objections to Special Master's August 20, 2007 Decision (D.I. 216) at n. 6 ("InterDigital's counterclaims concerning Nokia's statements to ETSI are expressly conditioned on the unlikely event that the Court finds InterDigital's corresponding statements to be actionable").

[30]    ████████████████████████████████████████████████████

19.

staying only a portion of the case "could result in bifurcated proceedings," which would not conserve judicial resources.[31]

Finally, a stay of remaining claims after § 1659(a) is applied is consistent with other courts' actions. *See Flexsys*, 2005 WL 1126750, at *4 (staying claims on patents that were not before the ITC given the court had already stayed other claims pursuant to § 1659(a)); *Verve, LLC,* 2004 WL 2600452, at *1 (staying claims involving non-moving defendants who were not parties to the related ITC action given the same claims against moving defendants, who were parties to the ITC, had been stayed). Accordingly, to the extent the Court finds any claims are not subject to § 1659(a)'s mandatory stay, the Court should nonetheless stay the entire action, in its discretion, pending resolution of InterDigital's ITC action.[32]

## **CONCLUSION**

Because a stay of claims is mandatory when they share issues in common with an ITC proceeding, this Court should stay this case in its entirety pending the resolution of the ITC case. Any claims found not to have issues in common should be stayed under the Court's discretionary power.

---

[31]    September 27, 2007 Memorandum Order (D.I. 220) at 5.

[32]    In the unlikely event that the Court finds a stay of Nokia's claims is warranted but a stay of InterDigital's contingent counterclaims is not, Nokia would respectfully request that Nokia's claims go forward on all patents at issue except for the three ITC patents (the '579, '004 and '966 patents) in order to avoid piecemeal, inefficient, and asymmetrical litigation of the Lanham Act issues.

20.

MORRIS, NICHOLS, ARSHT & TUNNELL LLP

/s/ Jack B. Blumenfeld (#1014)
Jack B. Blumenfeld (#1014)
Julia Heaney (#3052)
1201 N. Market Street
Wilmington, DE 19801
(302) 658-9200
jblumenfeld@mnat.com
jheaney@mnat.com

*Attorneys for Plaintiffs*

*Of Counsel*:

Patrick Flinn
Randall Allen
ALSTON & BIRD LLP
1201 West Peachtree Street
Atlanta, GA 30309
(404) 881-7000

October 5, 2007

## CERTIFICATE OF SERVICE

I, Jack B. Blumenfeld, hereby certify that on October 11, 2007, I electronically filed the foregoing with the Clerk of the Court using CM/ECF, which will send notification of such filing(s) to the following:

> Richard L. Horwitz
> POTTER ANDERSON & CORROON LLP

I also certify that copies were caused to be served on October 11, 2007 upon the following in the manner indicated:

### BY ELECTRONIC MAIL
### and HAND DELIVERY

Richard L. Horwitz
POTTER ANDERSON & CORROON LLP
1313 N. Market Street
Wilmington, DE  19801

### BY ELECTRONIC MAIL

Ron E. Shulman
WILSON SONSINI GOODRICH & ROSATI
650 Page Mill Road
Palo Alto, CA 94304-1050

Mark D. Flanagan
WILMER CUTLER PICKERING HALE
  AND DORR LLP
1117 California Avenue
Palo Alto, CA  94304

Patrick J. Coyne
FINNEGAN, HENDERSON, FARABOW,
  GARRETT & DUNNER, LLP
901 New York Avenue, NW
Washington, DC  20001

> /s/ Julia Heaney
> Julia Heaney (#3052)
> jheaney@mnat.com

# EXHIBIT G

246

ORIGINAL IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF DELAWARE

NOKIA CORPORATION                          §
and NOKIA INC.,                            §
                                           §
         Plaintiffs,                       §
                                           §
V.                                         §         CIVIL ACTION NO. 05-16-JJF
                                           §
                                           §         HONORABLE JOSEPH J. FARNAN, JR.
INTERDIGITAL COMMUNICATIONS                §
CORPORATION and INTERDIGITAL               §
TECHNOLOGY CORPORATION,                    §
                                           §
         Defendants.                       §



## ORDER

This Court, having considered Plaintiffs Nokia Corporation and Nokia Inc.'s Motion for

Mandatory Stay Pursuant to 28 U.S.C. § 1659(a), any responses and replies thereto, any

exhibits and appendices filed in connection with said pleadings, and any arguments of counsel,

orders that Plaintiffs' motion for a stay of the above-captioned action is hereby GRANTED,

subject to the following provisions:

1. This action is stayed in its entirety pending a full and final resolution of the

   International Trade Commission investigation, captioned *In re Certain 3G*

   *Mobile Handsets and Components Thereof*, Inv. No. 337-TA-613 (the "ITC

   Action"), including any initial and final determinations of the Administrative

   Law Judge, the International Trade Commission, and any appeals therefrom (the

   "Stay Period").

2. During the Stay Period, subject to paragraph 4, the Parties to this action and their

   Affiliates shall not initiate in any forum (including by requesting that an

   administrative or regulatory body (e.g. the International Trade Commission)

initiate an investigation or action) any new claims or counterclaims against a Party to this action and/or any of its Affiliates that are the "Same Claims."

    a. For purposes of this Order, "Same Claims" means any claims or counterclaims involving the same causes of action (i.e., the claims set forth in Appendix I attached hereto) as are alleged in the present suit that are based on at least similar, but not necessarily identical, factual allegations (e.g., alleged false or misleading statements of the same nature as those currently at issue in this action).

    b. During the Stay Period, should any Party to this action and/or any of its Affiliates initiate in any forum (including by requesting that an administrative or regulatory body (e.g. the International Trade Commission) initiate an investigation or action) any new claims or counterclaims against any Party to this action and/or any of its Affiliates that are the Same Claims, the other Party and/or its Affiliates may at their sole discretion (i) seek to stay the new claims pursuant to the terms of this Order, (ii) seek to have this Court prevent the Party and/or its Affiliates from pursuing the new claims, and/or (iii) seek the dissolution of the stay in this Court pursuant to the terms of this Order.

3. During the Stay Period, should either Party to this action and/or any of its Affiliates and/or Nokia Siemens Networks initiate or cause to be initiated in any forum (including by requesting that an administrative or regulatory body (e.g. the International Trade Commission) initiate an investigation or action) any new claims, counterclaims, or defenses that are "Similar Claims," the other Party may seek the dissolution of the stay in this Court pursuant to the terms of this Order.

2

a. For purposes of this Order, "Similar Claims" means any claims that are the Same Claims as defined in Section 2.a above, and any claims, counterclaims or defenses based on the same factual allegations as are alleged in the present suit (e.g., alleged false or misleading statements of the same nature as those currently at issue in this action), but that are brought or initiated under causes of action or legal theories not encompassed in the present suit (including, but not limited to, the laws of states not asserted in this case).

4. Notwithstanding anything to the contrary in this Order, any defense or counterclaim asserted in the ITC Action shall be deemed not to be a Same Claim or Similar Claim, and shall not be grounds for allowing the other Party to seek any relief under this Order. To the extent a claim or defense originally brought in the ITC Action is remanded, or otherwise transferred to a district court, however, such claims, if actually pursued in the district court, may provide grounds for the other party to seek relief pursuant to the terms of this Order.

5. For purposes of this Order and application of any of its provisions, (a) "Party" shall include the named parties to this action; (b) "Affiliate" shall be defined as any entity which, directly or indirectly, controls, is controlled by, or is under common control with, any "Party" to this action; and (c) notwithstanding the definitions above, Nokia Siemens Networks shall not be deemed an Affiliate of any of the Nokia Parties for purposes of this Order.

6. During the Stay Period, the Parties also agree to stay the prosecution of their dispute in the International Chamber of Commerce, International Court of Arbitration, Arbitration No.: 14 685/EBS (the "Arbitration"). However, if Nokia or any of its Affiliates attempts to use any of the Licensing Presentations

3

that are the subject of the Arbitration in any new action during the Stay Period, InterDigital may restart the Arbitration.

7. Following the expiration or termination of the Stay Period, the Parties shall confer with the Special Master and the Court for purposes of entry of a revised Scheduling Order and Case Management Order setting forth new dates for all deadlines remaining at the time the stay was entered.  With the exception of the dates, the following shall be given the same effect that they had prior to the entry of the stay:  (a) all Orders by the Court or the Special Master issued prior to the stay, including any discovery or case management orders (e.g., the First Amended Case Management Order and the order appointing Special Master Seitz); and (b) the Parties' statements and selections made pursuant to any discovery or case management order, including the selections of Representative Patents and Selected License Targets pursuant to the First Amended Case Management Order.

SIGNED ON _December 5_ , 2007.

_____
United States District Judge

# Appendix I

Nokia's Claims

COUNT I.
Violation of § 43(a) of the Lanham Act
COUNT II.
Violation of § 43(a) of the Lanham Act
COUNT III.
Violation of Delaware Deceptive Trade Practices Act
COUNT IV.
Common Law Unfair Competition
(Delaware)
COUNT V.
Common Law Unfair Competition
(Pennsylvania)
COUNT VI.
Intentional Interference with Prospective Business Opportunities
(Delaware)
COUNT VII.
Intentional Interference with Prospective Business Relations
(Pennsylvania)
COUNT VIII.
Intentional Interference with Prospective Business Relations
(Texas)
COUNT IX.
Injurious Falsehood
(Delaware)
COUNT X.
Commercial Disparagement
(Pennsylvania)
COUNT XI.
Business Disparagement
(Texas)
COUNT XII.
Unjust Enrichment
(Delaware)
COUNT XIII.
Unjust Enrichment
(Pennsylvania)
COUNT XIV.
Unjust Enrichment
(Texas)

InterDigital's Counterclaims

COUNT I
VIOLATION OF SECTION 43(A)(1)(A) OF THE LANHAM ACT
COUNT II
VIOLATION OF SECTION 43(A)(1)(B) OF THE LANHAM ACT

1

COUNT III
VIOLATION OF SECTION 43(A)(1)(A) OF THE LANHAM ACT
COUNT IV
VIOLATION OF DELAWARE DECEPTIVE TRADE PRACTICES ACT
(DELAWARE)
COUNT V
COMMON LAW UNFAIR COMPETITION
(DELAWARE)
COUNT VI
INTENTIONAL INTERFERENCE WITH PROSPECTIVE BUSINESS OPPORTUNITIES
(DELAWARE)
COUNT VII
INTENTIONAL INTERFERENCE WITH PROSPECTIVE BUSINESS RELATIONS
(PENNSYLVANIA)
COUNT VIII
INJURIOUS FALSEHOOD
(DELAWARE)
COUNT IX
COMMERCIAL DISPARAGEMENT
(PENNSYLVANIA)
COUNT X
UNJUST ENRICHMENT
(DELAWARE)
COUNT XI
UNJUST ENRICHMENT
(PENNSYLVANIA)

# EXHIBIT H

# UNITED STATES
# INTERNATIONAL TRADE COMMISSION

In the Matter of:            )
                             )   Investigation No.:
CERTAIN 3G MOBILE HANDSETS   )   337-TA-613
AND COMPONENTS               )
PRELIMINARY CONFERENCE       )

RECEIVED
OFC OF THE SECRETARY
US INTL TRADE COMM
2007 OCT 23 PM 5: 02

Pages:   1 through 204

Place:   Washington, D.C.

Date:    October 18, 2007

---

**HERITAGE REPORTING CORPORATION**
*Official Reporters*
1220 L Street, N.W., Suite 600
Washington, D.C.  20005
(202) 628-4888


ORIGINAL

1

THE UNITED STATES INTERNATIONAL TRADE COMMISSION

In the Matter of:          )
                           )   Investigation No.:
CERTAIN 3G MOBILE HANDSETS )   337-TA-613
AND COMPONENTS             )
PRELIMINARY CONFERENCE     )


                          Thursday,
                          October 18, 2007

                          Hearing Room B
                          U.S. International
                          Trade Commission
                          500 E Street, S.W.
                          Washington, D.C.


     The preliminary conference commenced, pursuant to

notice, at 1:50 p.m., before the United States

International Trade Commission, the Honorable PAUL J.

LUCKERN, Administrative Law Judge, presiding.


   APPEARANCES:

   On behalf of Complainant, InterDigital Communications,
   LLC and InterDigital Technology Corporation:

        SMITH R. BRITTINGHAM, IV, Esquire
        PATRICK J. COYNE
        Finnegan, Henderson, Farabow,
        Garrett & Dunner, LLP
        901 New York Avenue, N.W.
        Washington, D.C.  20001
        (202) 408-4000

APPEARANCES:    (Cont'd.)

On behalf of Respondents, Nokia Corporation and Nokia, Inc.:

    PAUL F. BRINKMAN, Esquire
    JEFFREY SCHWARTZ, Esquire
    Alston & Bird, LLP
    950 F Street, N.W.
    Washington, D.C.  20004
    (202) 756-3404

Also on behalf of Respondents, Nokia Corporation and Nokia, Inc.:

    PATRICK J. FLINN, Esquire
    MARK A. McCARTY, Esquire
    Alston & Bird, LLP
    1201 West Peachtree Street
    Atlanta, Georgia  20004
    (404) 881-7737

Also on behalf of Respondents, Nokia Corporation and Nokia, Inc.:

    LANCE A. LAWSON, Esquire
    ROSS R. BARTON, Esquire
    Alston & Bird, LLP
    101 South Tryon Street, Suite 4000
    Charlotte, North Carolina  28280

Also on behalf of Respondents, Nokia Corporation and Nokia, Inc.:

    A. WILLIAM URQUHART
    ERICA P. TAGGART
    Quinn Emanuel Urquhart Oliver & Hedges, LLP
    865 South Figeroa Street, Tenth Floor
    Los Angeles, California  90017

On behalf of the Staff, International Trade Commission:

    DAVID HOLLANDER

1                  P R O C E E D I N G S

2                                          (1:50 p.m.)

3              JUDGE LUCKERN:   This is a preliminary

4    conference In the Matter of 3G Mobile Handsets and

5    Components, Investigation No. 337-TA-613.  It is

6    pursuant to Order No. 1, which issued on September 7.

7              Before we continue, let's find out who is in

8    the hearing room.  So would Complainant, who initiated

9    this investigation through the filing of the

10   complaint, please identify who Complainant is, and who

11   is here representing Complainant?  And anybody else in

12   the hearing room that's associated with Complainant,

13   InterDigital Communications Corporation of King of

14   Prussia, Pennsylvania, and InterDigital Technology

15   Corporation of Wilmington, Delaware.  Actually, there

16   are two Complainants.  Go ahead.

17             MR. BRITTINGHAM:  Your Honor, this is Smith

18   Brittingham, with Finnegan Henderson Farabow Garrett &

19   Dunner, representing the Complainants you just

20   mentioned.  I am here with Patrick Coyne.

21             At the front table also Raj Gupta, Chris

22   Isaac, all from Finnegan.  Behind me is Houtan

23   Esfahani, also from Finnegan, and Elizabeth Niemeyer

24   on the other end, from Finnegan.  And Xian Yu Ng in

25   the back, also from Finnegan.

4

1          We also have, from InterDigital, Lawrence
2    Shay and Erik Videlock.
3          JUDGE LUCKERN:  Okay.  Let's hear from
4    Respondents, Nokia Corporation and Nokia, Inc.
5          MR. BRINKMAN:  Good afternoon, Your Honor.
6    This is Paul Brinkman from Alston & Bird.  With me on
7    the front table is Patrick Flinn of Alston & Bird,
8    Todd Lightstein from Nokia, and Charles Veerhoven from
9    Quinn Emanuel.
10          The table behind me, John Haynes from Alston
11    & Bird and Jeff Schwartz from Alston & Bird.  And just
12    for Your Honor's information and the audience, we have
13    some attorneys from abroad who are attending the AIPLA
14    Conference who wanted to see what an ITC hearing
15    looked like.
16          JUDGE LUCKERN:  Well, this is not really an
17    evidentiary hearing; it is merely a preliminary
18    conference.  I don't know if they're going to get very
19    much out of it, but I'm glad to have them here in the
20    hearing room.  We are on the public record.
21    Obviously, if we have to go on the confidential
22    record, well then, depending on whose information it
23    is, certain people will have to be excused, because we
24    could not function without getting access to
25    information that is protected through the protective

9

1    relating to the standard, the defenses of standard

2    abuse.

3            And so I think what it comes down to for

4    your decision, I think, Your Honor, is, is a four-and-

5    a-half-month delay to the 601 case more prejudicial to

6    Complainant than proceeding separately, and having all

7    of these defenses that Nokia intends to bring up heard

8    and decided before Nokia has a chance to get a seat at

9    the table.

10           And I think that that's sort of the key.

11   Besides the efficiencies to the Commission, the

12   efficiencies to having one trial rather than two, all

13   of that, that I think is pretty clear -- there's not

14   much of a response to saying it's more efficient to

15   have one proceeding rather than two.

16           But I know you've read the briefs, and so I

17   just have a couple of new points.  And first off, in

18   response to receiving the Complainant's response, I

19   have a declaration I'd like to pass around.

20           JUDGE LUCKERN:  Give it to Mr. Hall, Mr.

21   Brinkman.  Thank you, Mr. Hall.

22           MR. BRINKMAN:  And the details of this

23   declaration are confidential, Your Honor, but I can

24   speak about it without going on the confidential

25   record, as long as we don't talk about the exact

14

1    stem from not consolidating the cases.

2         Based on the procedural schedule in the 601

3    investigation, you have the hearing set in the first

4    week of February.  And that means, I think, that the

5    ID would come out about the first week in May.

6         Well, our prehearing statements are due the

7    first week in May, according to the schedule that

8    we're proposing today with InterDigital in this case.

9    And trial has been set for mid-June.

10        Because the same patents are being asserted

11   largely in both investigations, we'll then get your

12   claim construction of these patents on the same week

13   that our prehearing briefs are due when we argue our

14   claim construction.  You may well have ruled on the

15   same sets of defenses that Nokia intends to raise,

16   based on patent misuse and the standard setting, that

17   we understand Samsung has been raising.

18        All of that will happen without Nokia being

19   at the table, the way the schedule is set up right

20   now.  And Nokia feels it would be highly prejudiced

21   from not being able to participate in that.

22        JUDGE LUCKERN:  Let me ask you this

23   question.  Complainants, in their filing on October

24   16, have alleged four points, on page 18 of their

25   filing.  Presumably you have their filing there, don't

1   schedule of the latter case.  And a couple of those

2   cases, I believe, Your Honor, lasted maybe not four

3   and a half months, but maybe four months or so.

4           So I don't think that it's necessarily

5   prejudicial.  Particularly, as I said earlier, Your

6   Honor, when the fault is all within InterDigital.

7   They're the ones that chose the timing of when to sue

8   Nokia.  They could have sued Nokia at the same time

9   they sued Samsung, but they chose not to.  And we

10  think this kind of gamesmanship shouldn't be tolerated

11  by the Commission.

12          JUDGE LUCKERN:  Then I take it you stand by

13  those arguments, in spite of the section in

14  Complainant's brief at page 25, which would indicate

15  that Complainants would be prejudiced if the 601

16  investigation is delayed as a result of a

17  consolidation?  They make reference to an attached

18  article, et cetera, et cetera, et cetera.  But you're

19  not persuaded at all by that particular argument in

20  Section C of Complainant's brief, which I received on

21  the 16th of October.

22          MR. BRINKMAN:  Your Honor, I agree there is

23  some prejudice to InterDigital.  I think there is a

24  lot more prejudice to Nokia not consolidating.  I'm

25  not persuaded by the attachments to their brief.  I

122

1          I didn't see any response from Respondents.

2   I stated that in the order.  I was sort of surprised

3   that I got nothing from Respondents.

4          Did I miss something, or was there an

5   oversight, or what?

6          MR. BRINKMAN:  No, Your Honor.  We did not

7   respond.

8          JUDGE LUCKERN:  That's okay.  I mean, it's

9   fine, all right, okay.  So I would imagine that you

10  haven't filed a petition for review have you?

11         MR. BRINKMAN:  No, Your Honor.  We don't

12  intend to.

13         JUDGE LUCKERN:  I assume that's going to get

14  in without any problem.

15         MR. BRITTINGHAM:  I thought that one was

16  fairly non-controversial.  It was so early.

17         So, just to be clear on this patent, we'd

18  been told by the Patent Office that it will issue on

19  October 23rd, which is next Tuesday.

20         JUDGE LUCKERN:  And that's going to have the

21  same stuff as the --

22         MR. BRITTINGHAM:  As the 004 and the 966

23  Patents.

24         JUDGE LUCKERN:  All right.

25         MR. BRINKMAN:  Your Honor, we have not seen

1   that patent, so we're not going to take a position on

2   whether we're going to contest that one or not.

3          JUDGE LUCKERN:  Let me ask Respondents, just

4   to get it a little bit to the substance of the

5   allegations.    Let's wrap up one other thing quickly,

6   though.

7          I've had three procedure schedules come in

8   to me.  One was Nokia's, and then the second one that

9   came in was a joint one from the Complainants and the

10  Staff.  However, there's a footnote that Nokia was

11  withdrawing the first one, that's the procedure

12  schedule.

13         But then, lo and behold, on the 17th, I got

14  a revised joint proposed procedure schedule.  I really

15  haven't had any time to digest it, but --

16         MR. BRITTINGHAM:  Your Honor?

17         JUDGE LUCKERN:  Yes?

18         MR. BRITTINGHAM:  For clarification, the

19  revised procedural schedule, if you look at the

20  original joint one, some of the years were 2007.

21  Those should have been 2008.

22         JUDGE LUCKERN:  Also, really it was --

23         MR. BRITTINGHAM:  I think the dates are

24  all --

25         JUDGE LUCKERN:  Meaning there are changes in

204

## CERTIFICATION OF TRANSCRIPTION

**TITLE:**                    Certain 3G Mobile Handsets

**INVESTIGATION NOs:**  337-TA-613

**HEARING DATE:**        October 18, 2007

**LOCATION:**                Washington, D.C.

**NATURE OF HEARING:**  Preliminary Conference

I hereby certify that the foregoing/attached transcript is a true, correct and complete record of the above-referenced proceeding(s) of the U.S. International Trade Commission.

DATE:                    October 18, 2007

SIGNED:                  LaShonne Robinson
                         Signature of the Contractor or the
                         Authorized Contractor's Representative
                         1220 L Street, N.W. - Suite 600
                         Washington, D.C.  20005

I hereby certify that I am not the Court Reporter and that I have proofread the above-referenced transcript of the proceeding(s) of the U.S. International Trade Commission, against the aforementioned Court Reporter's notes and recordings, for accuracy in transcription in the spelling, hyphenation, punctuation and speaker-identification, and did not make any changes of a substantive nature. The foregoing/attached transcript is a true, correct and complete transcription of the proceeding(s).

SIGNED:                  Carlos E. Gamez
                         Signature of Proofreader

I hereby certify that I reported the above-referenced proceeding(s) of the U.S. International Trade Commission and caused to be prepared from my tapes and notes of the proceedings a true, correct and complete verbatim recording of the proceeding(s).

SIGNED:                  Tammy Brodsky
                         Signature of Court Reporter

Heritage Reporting Corporation
(202) 628-4888

# EXHIBIT I

IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF DELAWARE

| | | |
|---|---|---|
| INTERDIGITAL COMMUNICATIONS, LLC, a Pennsylvania limited liability company and INTERDIGITAL TECHNOLOGY CORP., a Delaware corporation,<br><br>            Plaintiffs,<br><br>      v.<br><br>NOKIA CORPORATION, a Finnish corporation and NOKIA INC., a Delaware corporation,<br><br>            Defendants. | )<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>) | Civil Action No.: 07-489 SLR<br><br><br><br>JURY TRIAL DEMANDED |

## SECOND AMENDED COMPLAINT

This is an action for patent infringement. Plaintiffs, InterDigital Communications, LLC and InterDigital Technology Corporation (collectively "InterDigital"), through their undersigned counsel, bring this action against Defendants, Nokia Corporation and Nokia Inc. (collectively "the Nokia Defendants"). In support of this Second Amended Complaint, InterDigital alleges as follows:

## THE PARTIES

1.      Plaintiff, InterDigital Communications, LLC ("InterDigital Communications"), is a Pennsylvania limited liability company, having its principal place of business at 781 Third Avenue, King of Prussia, Pennsylvania 19406-1409.

2.      Plaintiff, InterDigital Technology Corporation ("InterDigital Technology"), is a Delaware corporation, having its principal place of business at Hagley Building, Suite 105, 3411 Silverside Road, Concord Plaza, Wilmington, Delaware 19810-4812.

3.    Defendant, Nokia Corporation, is a Finnish corporation, having its principal place of business at Keilalahdentie 2-4, P.O. Box 226, FIN-00045 Espoo, Finland.

4.    Defendant, Nokia Inc., is a Delaware corporation, having its principal place of business at 6000 Connection Drive, Irving, Texas 75039, USA.  Upon information and belief, Nokia Inc. (d/b/a Nokia Mobile Phones) distributes Nokia-branded handsets in the United States.

## JURISDICTION AND VENUE

5.    This is an action for patent infringement arising under the patent laws of the United States.  This Court has jurisdiction over this action under 28 U.S.C. §§ 1331 and 1338(a).

6.    Venue is proper in this judicial district under 28 U.S.C. §§ 1391(c)-(d) and 1400(b).

## FACTUAL BACKGROUND

7.    United States Patent No. 7,117,004 ("the '004 patent"), titled "Method and Subscriber Unit for Performing an Access Procedure," issued on October 3, 2006, to inventors Fatih Ozluturk and Gary Lomp.  InterDigital Technology owns by assignment the entire right, title, and interest in and to the '004 patent.  A true and correct copy of the '004 patent is attached to this Complaint as Exhibit A.

8.    United States Patent No. 7,190,966 ("the '966 patent"), titled "Method and Apparatus for Performing an Access Procedure," issued on March 13, 2007, to inventors Fatih Ozluturk and Gary Lomp.  InterDigital Technology owns by assignment the entire right, title, and interest in and to the '966 patent.  A true and correct copy of the '966 patent is attached to this Complaint as Exhibit B.

9.    United States Patent No. 6,973,579 ("the '579 patent"), titled "Generation of User Equipment Identification Specific Scrambling Code for the High Speed Shared Control

2

Channel," issued on December 6, 2005, to inventors Stephen G. Dick, Nader Bolourchi and Sung-Hyuk Shin. InterDigital Technology owns by assignment the entire right, title, and interest in and to the '579 patent. A true and correct copy of the '579 patent is attached to this Complaint as Exhibit C.

10.    United States Patent No. 7,286,847 ("the '847 patent"), titled "Method and Apparatus for Performing Access Procedure" issued on October 23, 2007, to inventors Fatih Ozluturk and Gary R. Lomp. InterDigital Technology owns by assignment the entire right, title, and interest in and to the '847 patent. A true and correct copy of the '847 patent is attached to this Complaint as Exhibit D.

## FIRST CAUSE OF ACTION
## INFRINGEMENT OF U.S. PATENT NO. 7,117,004

11.    The '004 patent is presumed valid under 28 U.S.C. § 282 and remains enforceable.

12.    On information and belief, the Nokia Defendants manufacture, use, import, offer for sale, and/or sell products in the United States that infringe the '004 patent and will continue to do so unless enjoined by this Court.

13.    On information and belief, the Nokia Defendants manufacture, use, import, offer to sell, and/or sell in the United States the following Third Generation ("3G") Wideband Code Division Multiple Access ("WCDMA") handset and components thereof that infringe the '004 patent: N75 and N95. The identification of these specific models is not intended to limit the scope of the Complaint, and any remedy should extend to all infringing models.

14.    The Nokia Defendants know or should have known of InterDigital's rights in the '004 patent, and their infringement of the '004 patent has been willful and deliberate.

3

15.    The Nokia Defendants' past and continuing infringements of the '004 patent have caused irreparable damage to InterDigital and will continue to do so unless enjoined by this Court.

## SECOND CAUSE OF ACTION
## INFRINGEMENT OF U.S. PATENT NO. 7,190,966

16.    The '966 patent is presumed valid under 28 U.S.C. § 282 and remains enforceable.

17.    On information and belief, the Nokia Defendants manufacture, use, import, offer for sale, and/or sell products in the United States that infringe the '966 patent and will continue to do so unless enjoined by this Court.

18.    On information and belief, the Nokia Defendants manufacture, use, import, offer for sale, and/or sell in the United States the following Third Generation ("3G") Wideband Code Division Multiple Access ("WCDMA") handset and components thereof that infringe the '966 patent:  N75 and N95.  The identification of these specific models is not intended to limit the scope of the Complaint, and any remedy should extend to all infringing models.

19.    The Nokia Defendants know or should have known of InterDigital's rights in the '966 patent, and their infringement of the '966 patent has been willful and deliberate.

20.    The Nokia Defendants' past and continuing infringements of the '966 patent have caused irreparable damage to InterDigital, and will continue to do so unless enjoined by this Court.

4

## THIRD CAUSE OF ACTION
## INFRINGEMENT OF U.S. PATENT NO. 6,973,579

21.    The '579 patent is presumed valid under 28 U.S.C. § 282 and remains enforceable.

22.    On information and belief, the Nokia Defendants manufacture, use, import, offer for sale, and/or sell products in the United States that infringe the '579 patent and will continue to do so unless enjoined by this Court.

23.    On information and belief, the Nokia Defendants manufacture, use, import, offer for sale, and/or sell in the United States the following Third Generation ("3G") Wideband Code Division Multiple Access ("WCDMA") handset and components thereof that infringe the '579 patent: N95. The identification of this specific model is not intended to limit the scope of the Complaint, and any remedy should extend to all infringing models.

24.    The Nokia Defendants know or should have known of InterDigital's rights in the '579 patent, and their infringement of the '579 patent has been willful and deliberate.

25.    The Nokia Defendants' past and continuing infringements of the '579 patent have caused irreparable damage to InterDigital, and will continue to do so unless enjoined by this Court.

## FOURTH CAUSE OF ACTION
## INFRINGEMENT OF U.S. PATENT NO. 7,286,847

26.    The '847 patent is presumed valid under 28 U.S.C. § 282 and remains enforceable.

27.    On information and belief, the Nokia Defendants manufacture, use, import, offer for sale, and/or sell products in the United States that infringe the '847 patent and will continue to do so unless enjoined by this Court.

5

28.    On information and belief, the Nokia Defendants manufacture, use, import, offer for sale, and/or sell in the United States the following Third Generation ("3G") Wideband Code Division Multiple Access ("WCDMA") handset and components thereof that infringe the '847 patent: N75 and N95.  The identification of these specific models is not intended to limit the scope of the Complaint, and any remedy should extend to all infringing models.

29.    The Nokia Defendants' infringement of the '847 patent will cause irreparable damage to InterDigital, and will continue to do so unless enjoined by this Court.

### PRAYER FOR RELIEF

30.    WHEREFORE, InterDigital respectfully requests that this Court:

(a)    Find that the Nokia Defendants have infringed one or more claims of the '004 patent, the '966 patent, the '579 patent and the '847 patent;

(b)    Find that this is an exceptional case under 35 U.S.C. § 285;

(c)    Permanently enjoin the Nokia Defendants from infringing the '004 patent, the '966 patent, the '579 patent and the '847 patent under 35 U.S.C. § 283;

(d)    Award InterDigital an amount to be determined as compensatory damages for the infringement of the '004 patent, the '966 patent, the '579 patent and the '847 patent and the costs of the action, as fixed by the Court, under 35 U.S.C. § 284;

(e)    Award InterDigital its costs, including expenses and reasonable attorneys' fees, incurred in bringing and prosecuting this action under 35 U.S.C. § 285;

(f)    Award InterDigital prejudgment and post-judgment interest on all amounts awarded; and

6

(g)    Award InterDigital any further relief that this Court deems just and proper.

## JURY DEMAND

31.    InterDigital demands a jury trial as to all issues that are triable by a jury in this action.

Dated:  October 23, 2007

_/s/ Richard K. Herrmann_
Richard K. Herrmann #405
Mary B. Matterer #2696
MORRIS JAMES LLP
500 Delaware Avenue, Suite 1500
Wilmington, Delaware  19801
(302) 888-6800
rherrmann@morrisjames.com

OF COUNSEL:
Patrick J. Coyne
Christopher P. Isaac
Lionel M. Lavenue
Houtan K. Esfahani
Rajeev Gupta
Qingyu Yin
FINNEGAN, HENDERSON, FARABOW,
  GARRETT & DUNNER, L.L.P.
901 New York Avenue, N.W.
Washington, DC  20001-4413
Telephone: (202) 408-4000
Facsimile: (202) 408-4400

Attorneys for Plaintiffs,
INTERDIGITAL COMMUNICATIONS, LLC
  and INTERDIGITAL TECHNOLOGY CORP.

# EXHIBIT J

IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF DELAWARE

INTERDIGITAL COMMUNICATIONS LLC
and INTERDIGITAL TECHNOLOGY
CORPORATION,

        Plaintiffs,

    v.

NOKIA CORPORATION and NOKIA INC.,

        Defendants.

C.A. No. 07-489 (SLR)

## **DEFENDANTS' MOTION FOR A STAY OF PROCEEDINGS**

Pursuant to 28 U.S.C. § 1659(a) and this Court's discretionary power, defendants

Nokia Corporation and Nokia Inc. (collectively "Defendants" or "Nokia") hereby move for an

order staying this case, on the basis that both Defendants have been accused of infringing the

same three patents at issue here in an action brought under 19 U.S.C. § 1337 in the United State

International Trade Commission ("ITC") titled *In the Matter of Certain 3G Mobile Handsets and*

*Components Thereof*, Investigation No. 337-TA-613.

## **FACTUAL BACKGROUND**

On August 7, 2007, InterDigital Communications, LLC and InterDigital

Technology Corp. (collectively "Plaintiffs" or "InterDigital") filed the complaint in this action,

accusing Nokia of infringing U.S. Patent Nos. 7,117,004 and 7,190,966 ("the '004 patent" and

"the '966 patent," respectively), based on Nokia's "manufacture, use, import[ation], offer for

sale, and/or s[ale of] products in the United States that [allegedly] infringe" the patents (D.I. 1 at

¶¶ 10, 15). On September 28, 2007, InterDigital Amended its Complaint to include U.S. Patent

No. 6,973,579 ("the '579 patent") (D.I. 10 at ¶ 9). InterDigital requests, *inter alia*, that the Court

permanently enjoin Nokia from infringing the '004, '966 and '579 patents (*id.* ¶ 25(c)).

Also on August 7, 2007, InterDigital filed a parallel complaint in the ITC

accusing Nokia of infringing the '004 and '966 patents. A copy of the Verified Complaint filed

with the ITC is attached hereto as Exhibit A. In its ITC Complaint, InterDigital alleges

infringement of the '004 and the '966 patents based on the alleged "unlawful importation into the

United States, the sale for importation, and the sale within the United States after importation by

owners, importers, or consignees of certain 3G mobile handsets and components thereof that

infringe" the patents (Exhibit A ¶ 1). On September 28, 2007, InterDigital moved for leave to

amend its ITC Complaint to include the '579 patent (*see* Complainants' Motion to Amend and

Proposed Amended Complaint, attached hereto as Exhibit B). InterDigital seeks from the ITC "a

permanent exclusion order pursuant to 19 U.S.C. § 1337(d)(1) barring from entry into the United

States all [Nokia's] infringing 3G mobile handsets and components thereof imported by or on

behalf of [Nokia]" (Exhibit A, ¶ 65(c)). InterDigital also has requested a cease and desist order

pursuant to 19 U.S.C. § 1337(f) prohibiting Nokia from "importing, marketing, advertising,

demonstrating, warehousing inventory for distribution, offering for sale, selling, distributing,

licensing, or using" 3G mobile handsets that practice the technologies claimed in the asserted

patents (*id.* ¶ 65(d)).

The ITC instituted Investigation No. 337 – TA – 617 on September 5, 2007, and

published notice of the investigation in the Federal Register on September 11, 2007 (*see* Notice

of Investigation, attached hereto as Exhibit C). Its decision on InterDigital's Motion to Amend

Complaint and Notice of Investigation ("Motion to Amend", attached at Exhibit B) is pending.

Accordingly, Nokia seeks a mandatory stay of the instant proceedings with respect to the '004

and '966 patents, and further moves the Court to exercise its discretion to stay this case with respect to the '579 patent as well.

## ARGUMENT

**I.**     **A Stay with Respect to the '004 and '966 Patents Is Mandatory.**

28 U.S.C. § 1659 provides in relevant part:

(a) Stay. In a civil action involving parties that are also parties to a proceeding before the United States International Trade Commission under section 337 of the Tariff Act of 1930, at the request of a party to the civil action that is also a respondent in the proceeding before the Commission, the district court shall stay, until the determination of the Commission becomes final, proceedings in the civil action with respect to any claim that involves the same issues involved in the proceeding before the Commission, but only if such request is made within -

(1) 30 days after the party is named as a respondent in the proceeding before the Commission, or

(2) 30 days after the district court action is filed, whichever is later.

InterDigital seeks relief in the ITC and in this action with respect to both Nokia Corporation and Nokia Inc. (*see* Exhibit A ¶¶ 10-11). Moreover, both this case and the ITC proceeding involve the same infringement-related issues with respect to the '004 and '966 patents. Defendants make this request in a timely manner in that thirty days have not elapsed since the initiation of the related proceeding before the ITC in which Defendants were named as respondents. Accordingly, a stay of this case with respect to the '004 and '966 patents pending final disposition of the proceedings before the ITC is mandatory.

**II.**     **The Court Should Also Stay This Case With Respect to the '579 Patent**

The Court should also exercise its discretionary power to stay this case with respect to the '579 patent. As part of the ability to control its docket, district courts have the

inherent power to stay a case pending the conclusion of some other event.  The Supreme Court

has explained that:

> [T]he power to stay proceedings is incidental to the power inherent
> in every court to control the disposition of cases on its docket with
> economy of time and effort for itself, for counsel, and for litigants.
> How this can best be done calls for the exercise of judgment,
> which must weigh competing interests and maintain an even
> balance.

*Landis v. North American Co.*, 299 U.S. 248, 254-55 (1936) (internal citations omitted.)

Similarly, the Third Circuit has held that a court has the "inherent power to

conserve judicial resources by controlling its own docket." *Cost Bros., Inc. v. Travelers Indem.*

*Co.*, 760 F.2d 58, 60 (3d Cir. 1985).  Moreover, the decision to stay a case is firmly within the

discretion of the Court.  *See Pegasus Development Corp. v. DirecTV, Inc.*, No. CIV.A. 00-1020-

GMS, 2003 WL 21105073, *1 (D. Del. May 14, 2003).  In ruling on a motion to stay, courts are

guided by three factors: "(1) whether a stay would unduly prejudice or present a clear tactical

disadvantage to the non-moving party; (2) whether a stay will simplify the issues in question and

trial of the case; and (3) whether discovery is complete and whether a trial date has been set." *Id*.

at *3-4 (quoting *Xerox Corp. v. 3Comm Corp.*, 69 F.Supp.2d 404, 406 (W.D.N.Y. 1999)).

Here, a discretionary stay with respect to the '579 patent would not work

prejudice to InterDigital.  Indeed, a stay with respect to the '579 is an almost certain consequence

of the ruling InterDigital seeks from the ITC on its Motion to Amend.  Because the addition of

the '579 patent to the ITC investigation would afford Nokia the protection of the mandatory stay

provisions of 28 U.S.C. § 1659, InterDigital must have contemplated a stay in this Court with

respect to the '579 patent and deemed it to be of little concern.  The prejudice to Nokia, in

contrast, would be severe, as would the waste of the time and resources of this Court.

Although Nokia intends to respond appropriately to InterDigital's Motion to Amend, the ITC Investigation may soon include the '579 patent. It makes little sense for InterDigital's claims to proceed, consuming time and money each day, only for Nokia to be back before this Court in a month or two seeking a mandatory stay under 28 U.S.C. § 1659 for the '579 patent. In any event, the overlap in evidence for the three patents, including the similarity of technical witnesses who will testify regarding the '004, the '966 and the '579, and the fact that InterDigital has accused the same products (Nokia's UMTS handsets) of infringing all three patents, justifies a stay of this entire proceeding regardless of the outcome of InterDigital's motion. Indeed, at least two courts have found it appropriate to stay other pending claims where only certain of the claims were subject to the mandatory provisions of 28 U.S.C. § 1659. *See Flexsys Americas, LP v. Kumho Tire, U.S.A., Inc*., No. 5:05CV156, 2005 WL 1126750, *4 (N.D. Ohio Apr. 29, 2005) (staying claims on patents that were not before the ITC given the court had already stayed other claims pursuant to § 1659(a)); *Verve, LLC v. Verifone, Inc*., No. C04-03659JF, 2004 WL 2600452, *1 (N.D. Cal. Nov. 15, 2004) (staying claims involving non-moving defendants who were not parties to the related ITC action given the same claims against moving defendants, who were parties to the ITC, had been stayed pursuant to § 1659(a)).

The other two prongs cited above (whether a stay will simplify the issues in question and trial of the case and whether discovery is complete and whether a trial date has been set) also weigh in favor of staying any claims remaining after application of the mandatory stay. The benefit of the ITC's resolution of issues such as the technical capabilities and functionalities of the accused N95 phone will streamline the issues in this case. As for the final prong, this case is in its very preliminary stages. No discovery has been served, and no trial date has been set. In fact, Nokia has not even answered InterDigital's Complaint or Amended Complaint, and

pursuant to a stipulation between the parties and ordered by the Court (D.I. 9 and 10, respectively), an answer is not due until November 5, 2007.  Accordingly, the Court should exercise its discretion to stay this action in its entirety pending resolution of InterDigital's ITC action.

**<u>CONCLUSION</u>**

For the foregoing reasons, Defendants' motion for a stay of this case should be granted.

MORRIS, NICHOLS, ARSHT & TUNNELL LLP

*/s/ Jack B. Blumenfeld (#1014)*
Jack B. Blumenfeld (#1014)
Julia Heaney (#3052)
1201 N. Market Street
Wilmington, DE  19801
jblumenfeld@mnat.com
jheaney@mnat.com
(302) 658-9200

*Attorneys for Nokia Corporation
and Nokia Iinc.*

*Of Counsel*:

Patrick Flinn
Randall Allen
Lance Lawson
ALSTON & BIRD LLP
1201 West Peachtree Street
Atlanta, GA  30309
(404) 881-7000

October 5, 2007

## **<u>RULE 7.1.1 CERTIFICATE</u>**

I hereby certify that the subject of the foregoing motion has been discussed with counsel for the plaintiffs, and that no agreement was reached.

*/s/ Jack B. Blumenfeld (#1014)*
Jack B. Blumenfeld (#1014)

## CERTIFICATE OF SERVICE

I, the undersigned, hereby certify that on October 5, 2007 I electronically filed the foregoing with the Clerk of the Court using CM/ECF which will send notification of such filing to the following:

> Richard K. Herrmann
> Mary Matterer
> MORRIS JAMES LLP

Additionally, I hereby certify that true and correct copies of the foregoing were caused to be served on October 5, 2007 upon the following individuals in the manner indicated:

> **BY ELECTRONIC MAIL**
> **and HAND DELIVERY**
>
> Richard K. Herrmann
> Mary Matterer
> MORRIS JAMES LLP
> 500 Delaware Avenue
> Suite 1500
> Wilmington, DE  19801
>
> **BY ELECTRONIC MAIL**
>
> Patrick J. Coyne
> Christopher P. Isaac
> Lionel M. Lavenue
> Houtan K. Esfahani
> Rajeev Gupta
> Qingyu Yin
> FINNEGAN, HENERDSON, FARABOW,
>   GARRETT & DUNNER, LLP
> 901 New York Avenue, NW
> Washington, DC  10001-4413

> */s/ Jack B. Blumenfeld (#1014)*
> Jack B. Blumenfeld (#1014)

# EXHIBIT K

PATENT, STAYED

# U.S. District Court
## District of Delaware (Wilmington)
## CIVIL DOCKET FOR CASE #: 1:07-cv-00489-SLR

Interdigital Communications LLC et al v. Nokia
Corporation et al
Assigned to: Judge Sue L. Robinson
Cause: 35:271 Patent Infringement

Date Filed: 08/07/2007
Jury Demand: Plaintiff
Nature of Suit: 830 Patent
Jurisdiction: Federal Question

## **Plaintiff**

**Interdigital Communications LLC**
*a*
*Pennsylvania*
*limited*
*liability*
*company*

represented by **Richard K. Herrmann**
Morris James LLP
500 Delaware Avenue, Suite
1500
P.O. Box 2306
Wilmington, DE 19899-2306
(302) 888-6800
Email:
rherrmann@morrisjames.com
*LEAD*
*ATTORNEY*
*ATTORNEY*
*TO BE*
*NOTICED*

## **Plaintiff**

**Interdigital Technology Corp.**
*a Delaware*
*Corporation*

represented by **Richard K. Herrmann**
(See above for address)
*LEAD*
*ATTORNEY*
*ATTORNEY*
*TO BE*
*NOTICED*

V.

## Defendant

**Nokia Corporation**
*a Finnish
Corporation*

represented by **Jack B. Blumenfeld**
Morris, Nichols, Arsht &
Tunnell LLP
1201 North Market Street
P.O. Box 1347
Wilmington, DE 19899
(302) 658-9200
Email: jbbefiling@mnat.com
*ATTORNEY
TO BE
NOTICED*

**Julia Heaney**
Morris, Nichols, Arsht &
Tunnell
1201 North Market Street
P.O. Box 1347
Wilmington, DE 19899
(302) 658-9200
Email: jhefiling@mnat.com
*ATTORNEY
TO BE
NOTICED*

## Defendant

**Nokia Inc.**
*a Delaware
Corporation*

represented by **Jack B. Blumenfeld**
(See above for address)
*ATTORNEY
TO BE
NOTICED*

**Julia Heaney**
(See above for address)
*ATTORNEY
TO BE
NOTICED*

| Date Filed | # | Docket Text |
|---|---|---|
|  |  |  |

| 08/07/2007 | 1 | COMPLAINT filed with Jury Demand against Nokia Corporation, Nokia Inc. - Magistrate Consent Notice to Pltf. ( Filing fee $ 350, receipt number 148433.) - filed by Interdigital Communications LLC, Interdigital Technology Corporation. (Attachments: # 1 Exhibit A# 2 Exhibit B# 3 Civil Cover Sheet # 4 Acknowledgement of Consent Form) (ead) (Entered: 08/08/2007) |
| 08/07/2007 | | Summons Issued as to Nokia Corporation on 8/7/2007; Nokia Inc. on 8/7/2007. (ead) (Entered: 08/08/2007) |
| 08/07/2007 | 2 | Disclosure Statement pursuant to Rule 7.1 filed by Interdigital Communications LLC, Interdigital Technology Corporation identifying Interdigital Inc. as Corporate Parent. (ead) (Entered: 08/08/2007) |
| 08/07/2007 | 3 | Notice of Availability of a U.S. Magistrate Judge to Exercise Jurisdiction (ead) (Entered: 08/08/2007) |
| 08/08/2007 | 4 | Report to the Commissioner of Patents and Trademarks for Patent/Trademark Number(s) 7,117,004; 7,190,966; (ead) (Entered: 08/08/2007) |
| 08/09/2007 | 5 | Return of Service Executed by Interdigital Communications LLC, Interdigital Technology Corporation. Nokia Corporation served on 8/8/2007, answer due 8/28/2007. (Herrmann, Richard) (Entered: 08/09/2007) |
| 08/09/2007 | 6 | Return of Service Executed by Interdigital Communications LLC, Interdigital Technology Corporation. Nokia Inc. served on 8/8/2007, answer due 8/28/2007. (Herrmann, Richard) (Entered: 08/09/2007) |
| 08/09/2007 | 7 | Letter to Dr. Peter T. Dalleo from Jack B. Blumenfeld regarding marking case pursuant to D. Del. LR 3.1 (b). (Blumenfeld, Jack) (Entered: 08/09/2007) |
| 08/14/2007 | 8 | Letter to Dr. Peter T. Dalleo from Richard K. Herrmann regarding Related Cases Issue. (Herrmann, Richard) (Entered: 08/14/2007) |
| 08/15/2007 | | Case assigned to Judge Sue L. Robinson. Please include the initials of the Judge (SLR) after the case number on all documents filed. (rjb) (Entered: 08/15/2007) |

| | | |
|---|---|---|
| 08/27/2007 | 9 | STIPULATION TO EXTEND TIME to answer Complaint to November 5, 2007 - filed by Interdigital Communications LLC, Interdigital Technology Corporation, Nokia Corporation, Nokia Inc.. (Heaney, Julia) (Entered: 08/27/2007) |
| 08/28/2007 | | SO ORDERED, re 9 STIPULATION TO EXTEND TIME to answer Complaint to November 5, 2007 filed by Nokia Inc., Nokia Corporation, Interdigital Communications LLC, Interdigital Technology Corporation, Set/Reset Answer Deadlines: Nokia Corporation answer due 11/5/2007; Nokia Inc. answer due 11/5/2007. Signed by Judge Sue L. Robinson on 8/28/07. (rld) (Entered: 08/28/2007) |
| 09/28/2007 | 10 | First AMENDED COMPLAINT against Nokia Corporation, Nokia Inc.- filed by Interdigital Communications LLC, Interdigital Technology Corporation. (Attachments: # 1 Exhibits) (Herrmann, Richard) (Entered: 09/28/2007) |
| 10/05/2007 | 11 | MOTION to Stay *Proceedings* - filed by Nokia Corporation, Nokia Inc.. (Attachments: # 1 Exhibits A through C)(Blumenfeld, Jack) (Entered: 10/05/2007) |
| 10/22/2007 | 12 | RESPONSE to Motion re 11 MOTION to Stay *Proceedings* filed by Interdigital Communications LLC, Interdigital Technology Corp.. (Herrmann, Richard) (Entered: 10/22/2007) |
| 10/23/2007 | 13 | MOTION to Amend/Correct 10 Amended Complaint - filed by Interdigital Communications LLC, Interdigital Technology Corp.. (Attachments: # 1 Second Amended Complaint# 2 Blackline)(Herrmann, Richard) (Entered: 10/23/2007) |
| 11/15/2007 | 14 | STIPULATION TO EXTEND TIME for defendants to respond to plaintiffs' Second Amended Complaint to 20 days following entry of Court's decision on defendants' Motion to Stay, if the Court denies that motion - filed by Interdigital Communications LLC, Interdigital Technology Corp., Nokia Corporation, Nokia Inc.. (Heaney, Julia) (Entered: 11/15/2007) |

| | | |
|---|---|---|
| 11/19/2007 | | SO ORDERED, re 14 STIPULATION TO EXTEND TIME for defendants to respond to plaintiffs' Second Amended Complaint to 20 days following entry of Court's decision on defendants' Motion to Stay, if the Court denies that motion filed by Nokia Inc., Nokia Corporation, Interdigital Communications LLC, Interdigital Technology Corp. Signed by Judge Sue L. Robinson on 11/19/07. (rlp) (Entered: 11/19/2007) |
| 12/10/2007 | 15 | Second AMENDED COMPLAINT against Nokia Corporation, Nokia Inc.- filed by Interdigital Communications LLC, Interdigital Technology Corp..(Herrmann, Richard) (Entered: 12/10/2007) |
| 01/10/2008 | | SO ORDERED, re 13 MOTION to Amend/Correct 10 Amended Complaint filed by Interdigital Communications LLC, Interdigital Technology Corp., 11 MOTION to Stay *Proceedings* filed by Nokia Inc., Nokia Corporation. Signed by Judge Sue L. Robinson on 1/10/08. (fmt) (Entered: 01/10/2008) |
| 01/24/2008 | 16 | Report to the Commissioner of Patents and Trademarks for Patent/Trademark Number(s) US 7,117,044 B2; US 7,190,966 B2; Included by Amendment: US 6,973,579 B2; US 7,286,847 B2; (fmt) (Entered: 01/24/2008) |

| PACER Service Center | | | |
|---|---|---|---|
| **Transaction Receipt** | | | |
| 03/04/2008 19:07:01 | | | |
| **PACER Login:** | fh0018 | **Client Code:** | 10056.8057-00000/1154 |
| **Description:** | Docket Report | **Search Criteria:** | 1:07-cv-00489-SLR Start date: 1/1/1970 End date: 3/4/2008 |
| **Billable Pages:** | 2 | **Cost:** | 0.16 |

# EXHIBIT D

IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF DELAWARE

| | |
|---|---|
| NOKIA CORPORATION and NOKIA INC.,<br><br>Plaintiffs,<br><br>v.<br><br>INTERDIGITAL COMMUNICATIONS CORPORATION and INTERDIGITAL TECHNOLOGY CORPORATION,<br><br>Defendants. | Civil Action No. 05-16-JJF<br><br>**DEMAND FOR JURY TRIAL**<br><br>**PUBLIC VERSION** |

### FIRST AMENDED COMPLAINT

Plaintiffs Nokia Corporation and Nokia Inc. (collectively "Nokia") file this First Amended Complaint ("Complaint") against Defendants InterDigital Communications Corporation and InterDigital Technology Corporation (collectively "InterDigital") and in support of this Complaint allege:

#### Nature and Basis of Action

1.    This is an action for violations of the Lanham Act (15 U.S.C. §1051 et seq.), common law unfair competition, intentional interference with business relationships or opportunities, injurious falsehood, and commercial or business disparagement, and for violations of the laws of the States of Delaware, Pennsylvania, and Texas. Nokia seeks damages, declaratory and injunctive relief, and disgorgement of unjust enrichment for InterDigital's unlawful conduct.

#### The Parties

2.    Nokia Corporation is a global leader in the design, manufacture, and supply of wireless (or "mobile") telephone equipment, including handset and infrastructure products.

3.    Nokia is also a global leader in the design and development of interoperability ~~standards that are central to the functioning of mobile telephony equipment and the economic~~ success of the wireless industry.

4.    Nokia Corporation is incorporated under the laws of Finland and has its principal place of business at Keilalahdentie 4, Espoo, Finland.

5.    Nokia Inc. is incorporated under the laws of the state of Delaware and has a principal place of business at 6000 Connection Dr., Irving, Texas.

6.    InterDigital Communications Corporation is incorporated under the laws of the ~~State of Pennsylvania and has its principal place of business at 781 Third Avenue, King of~~ Prussia, Pennsylvania.

7.    InterDigital Technology Corporation is incorporated under the laws of the State of Delaware and has its principal place of business at 300 Delaware Avenue, Suite 527, Wilmington, Delaware.

8.    Upon information and belief, InterDigital Technology Corporation is a wholly owned subsidiary of InterDigital Communications Corporation.

**Jurisdiction and Venue**

9.    This Court has jurisdiction over the subject matter of this action pursuant to 28 U.S.C. §§ 1331 and 1338 based on federal question jurisdiction, and has supplemental jurisdiction over all other claims based on 28 U.S.C. § 1367.

~~10.    This Court has personal jurisdiction over InterDigital Communications Corporation and InterDigital Technology Corporation pursuant to the laws of the State of Delaware, including the Delaware long-arm statute, 10 Del. Code § 3104.~~

11.    Venue is proper in this Court pursuant to 28 U.S.C. § 1391.





### Facts Giving Rise to this Action

12.    Wireless telephone handset and infrastructure equipment complies with industry standards that ensure that products produced by different companies can interoperate.  The so-called first generation of wireless telephony used analog radio signals to convey messages between wireless handsets and base stations connected to the public switched telephone network.  These base stations received and transmitted radio signals to handsets in small areas called "cells," and as a mobile user left one cell and entered another, the call would be transferred to next cell.

13.    The capacity of the first generation system was soon limited, however, because only one user could use a frequency channel at a time in any given cell.  A second generation of mobile telephone technology was developed to address this problem.  More users could share the same frequency – thereby increasing the capacity of each cell – if the voice communications were digitized.  This Second Generation (or "2G") technology used two basic methods to allow multiple users to share the same frequency.  The first used time division (called "Time Division Multiple Access," or "TDMA") as the method of sharing the frequency.  The 2G standard developed in Europe, of which Nokia is a pioneer, is called GSM.  The second method was to spread the digitized signals across a wider bandwidth, giving each user a unique "spreading code" that allowed each separate call to be distinguished by the receiving station.  This method is called Code Division Multiple Access (CDMA), and was specified in the United States by a standard called IS-95.

14.    GSM and IS-95 remain the two principal competing 2G standards implemented worldwide.  Both have continued to evolve to allow the transmission of data as well as voice communications, and the more efficient transmission of data in "packets."  These improvements

and other aspects of the two technologies make them different in other ways besides the method of sharing radio frequencies. The networks between the transmission towers and the public switched telephone network are incompatible between GSM and IS-95.

15.    A third generation ("3G") of wireless telephony has been defined to succeed both IS-95 and GSM. This third generation will use more bandwidth to transmit data, and is intended to transmit information at substantially higher rates than 2G technology, such as video and internet content. The 3G successor to IS-95 is called CDMA 2000, and the 3G successor to GSM is called UMTS (Universal Mobile Telephone Service).

16.    The transition from GSM to UMTS will allow much of the existing GSM network infrastructure to be compatible with UMTS. The method of sharing frequencies is different in UMTS than GSM, however, as UMTS has adopted code division as the method of multiple access. CDMA 2000 also uses code division, and will be backward compatible with IS-95, but the remainder of its network will remain incompatible with GMS and UMTS.

17.    These technologies are made possible by the cooperation of the manufacturers of the equipment used for wireless telephony and the carriers who sell the service to customers. Only if the parties agree on, and specify, the standards for implementing the technology can multiple manufacturers compete to make the telephone handsets and network equipment for carriers.

18.    In the process of specifying standards, the participants may have intellectual property rights ("IPRs") – including patents and published patent applications – where as a technical matter the standard cannot be implemented without infringing the patent (or the patent that would issue if an application were granted). Standards bodies have developed policies



requiring parties to timely identify such IPRs, and with respect to the licensing of identified patents, as a condition of allowing participation in the standards-setting process.

19.    As mentioned above, Nokia was a pioneer in the development of GSM and likewise was a key inventor in much of what has been defined to be the 3G UMTS standard. Nokia holds many patents covering this technology – as do other manufacturers – and has followed the policies specified regarding identifying and licensing patents called for by the applicable standards bodies.

20.    InterDigital's only real business is coercing patent license payments from the wireless telephone industry. Nonetheless, it has become a member of wireless telephony standards organizations. It does so in order to claim that it, too, has patents essential to the practice of the standards and it has been particularly active in claiming that it has patents essential to the practice of the UMTS standard. By claiming that it has essential patents, it insists that all manufacturers of systems that comply with the standards must pay it patent license fees.

21.    InterDigital makes no tangible products, however, and it has in fact invented nothing of value that would merit the license fees it has been demanding from Nokia and others in the industry. Accordingly, it has had to develop, implement and maintain a scheme to mislead manufacturers and others in the industry into believing, falsely, that its patent portfolio is essential, valuable, and validly covers standards such as UMTS.

*InterDigital's False Statements Regarding Second Generation Technology*

22.    InterDigital began alleging in the early 1990s that it had numerous patents essential to 2G mobile phone standards. InterDigital has in the past asserted certain of its 2G patents in court against OKI America, Inc., Qualcomm, Inc., Motorola, Inc., and Ericsson, Inc.

23.    The court in the Motorola case determined that all of the asserted patents in those cases were either invalid or not infringed by mobile handset and infrastructure products used in the United States.

24.    In none of these disputes did a court rule that any of InterDigital's patents were valid and infringed. Indeed, comparison of the claim limitations of InterDigital 2G patents and their prosecution histories to either the 2G mobile phone standards or any systems in use in the United States shows that none of the claims can be infringed by any of those 2G systems, including those utilized by companies such as Motorola, Ericsson, and Nokia.

25.    InterDigital's purpose in declaring patents to be essential to the 2G standard, and in publicizing its contentions regarding essentiality, was to convey, and did in fact convey, the claim that all manufacturers of 2G compliant systems were required to pay InterDigital patent royalties.

26.    These claims were false, in that InterDigital did not have valid patents that were essential to the practice of the applicable 2G standards. Accordingly, companies were not legally obligated to pay InterDigital money simply because their products were compliant with the 2G standards.

*InterDigital's False Statements Regarding Third Generation Technology*

27.    More recently, InterDigital has alleged that its patents are essential to 3G mobile telephone standards, including UMTS, CDMA 2000, and a standard called TD-SCDMA.

28.    For example, InterDigital has filed declarations claiming at least 195 patents were essential to the practice of the UMTS standard with the European Telecommunications Standards Institute ("ETSI"). InterDigital made these declarations through two filings with ETSI. The first filing was made in April 2001. The second filing was made in April 2004.

29.    ETSI is one of the preeminent Standards Setting Organizations ("SSOs") – establishing the wireless standards for one of the largest markets in the world. Most of the major industry players are accordingly members of ETSI. ETSI has taken a leadership role amongst SSOs by requiring its members to declare IPRs that are "essential" to UMTS. ETSI makes these declarations publicly available through a searchable database on its website.

30.    At the time InterDigital made the declarations to ETSI (and currently), the term "ESSENTIAL" with respect to IPRs was a defined term as follows:

> "ESSENTIAL" as applied to IPR means that it is not possible on technical (but not commercial) grounds, taking into account normal technical practice and the state of the art generally available at the time of standardization, to make, sell, lease, otherwise dispose of, repair, use or operate EQUIPMENT or METHODS which comply with a STANDARD without infringing that IPR. For the avoidance of doubt in exceptional cases where a STANDARD can only be implemented by technical solutions, all of which are infringements of IPRs, all such IPRs shall be considered ESSENTIAL.

31.    At the time InterDigital made these declarations, it knew that many, if not all, of the IPRs it was declaring to ETSI did not meet this definition of "essential." Indeed, InterDigital made the deliberate decision to include IPRs that it knew were not technically necessary. InterDigital has never publicly identified which of the IPRs it declared to ETSI actually meet the ETSI definition of "essential" and which do not. As a result, ETSI members have been left with the impression that all of InterDigital's declared IPRs are technically essential.

32.    The UMTS Standard has more than four hundred separately numbered provisions, as listed in the "table of contents" in section 5 of ETSI TS 121.101. For each patent or application that it declared to ETSI, however, InterDigital did not list the particular provision or provisions for which InterDigital contended the declared patent or application was essential.

33.    InterDigital's declarations to ETSI are publicly available through a searchable database on ETSI's website.

34.    In addition, InterDigital has engaged in a campaign of publicity regarding its claim of essentiality in the press and in other ways intended to be disseminated in the communications industry. InterDigital claims in public statements that it has patents essential to the practice of the UMTS standard, and that it expects to obtain substantial license revenue from all companies who make standards compliant products. For example, in a press release issued on November 10, 2006, InterDigital claims that it "has built an intellectual property portfolio of more than 7,500 issued patents and patents pending around the world," and boasts of its "active participation in global standards bodies that shape the evolution of the technology and the future of the industry." InterDigital further claims that its participation in the standards process allowed it to create "a strong portfolio of patented technologies which it licenses to manufacturers of 2G, 2.5G, 3G and 802 products worldwide."

35.    That is, InterDigital does more than just claim that it has essential patents with respect to 3G technologies. InterDigital claims that its portfolio of patents is sufficiently broad that all manufacturers of 3G products must pay InterDigital substantial fees for the privilege of making standards-compliant products.

36.    These statements, particularly when considered in their totality, are false and misleading in number of respects, including but not necessarily limited to the following:

a.    Participants in the industry, including manufacturers and users of 3G compliant equipment, do not have to pay InterDigital any money, notwithstanding the IPRs claimed in InterDigital's portfolio. Alternatively, the weakness of the portfolio is such that InterDigital is not entitled to the sums of money it has demanded from the industry for patent license rights it has provided to its portfolio.

b.   The vast majority, if not all, of the IPRs declared by InterDigital to ETSI to be essential to the current implementation of UMTS are not, in fact essential. A list of such patents is attached hereto as Exhibit A. In addition, Nokia incorporates by this reference Plaintiffs' Statement Pursuant to Second Discovery Order, served on Defendants December 14, 2006, for a detailed explanation of the falsity of these declarations.

c.   Indeed, InterDigital routinely and knowingly declares patents to be essential to ETSI even though it is well aware that its patents do not meet the definition of "essential" contained in the ETSI IPR policy.

d.   To the extent there are, in fact, any patents in the InterDigital portfolio which meet the definition of "essential," members of the industry do not need to pay InterDigital any money for them. This is for one or more of the following reasons: (i) the patents are already licensed to most if not all of those in the industry, including Nokia, as part of a package of license rights previously granted for the practice of the IS-95 standard; (ii) the patents are applicable to a specific implementation of the UMTS standard known as Time-Division Duplexing (TDD) ("TDD Patents"), which has not been implemented commercially anywhere in the world with respect to wireless mobile telephones; and/or (iii) the patents cannot be valid and cover the standard at the same time.

e.   Likewise, to the extent there are, in fact, any patents in the InterDigital portfolio which meet the definition of "essential," Nokia does not need to pay InterDigital any money for them for the reasons stated above and for the additional reason that



Nokia has an agreed-upon, fully-paid, irrevocable license to InterDigital's TDD Patents.

    f.    In addition, there are no other patents in the InterDigital portfolio that are valid and that are infringed by any Nokia 3G product.

37.    Accordingly, it is false and misleading for InterDigital to say or suggest that the industry as a general matter owes it money, or should pay it money, for the practice of 3G standards, and it is false and misleading for InterDigital to say or suggest that Nokia owes it money, or should pay it money, for the practice of 3G standards.

*InterDigital's Abuse of the Standards Process*

38.    As noted above, InterDigital touts its participation in telecommunications standards bodies as a basis for contending that it has a portfolio of essential patents for which industry manufacturers must pay license fees.  InterDigital has, in fact, grossly abused its membership in standards bodies in order to further its scheme of misleading the industry into paying money for patents for which no money is actually owed.

39.    For example, as alleged above, InterDigital is a member of ETSI, the premier standards body that promulgates the UMTS standard.  That body has promulgated a Policy for declaring IPRs,.  That Policy, a true and correct copy of which is attached as Exhibit B and incorporated herein by reference, requires, among other things, good faith implementation by ETSI members.  It further requires the timely disclosure of "essential" patents (as that term is defined in the Policy), and the specification of the particular portion of the standard to which the patent in question is essential.

40.    InterDigital has abused this Policy, deliberately, and in bad faith, in at least the following respects:

a.   *Over-Declaration* – InterDigital has declared IPRs to be essential that are not essential, and which InterDigital knows are not essential, in order to inflate artificially and falsely the perceived value of its portfolio.

b.   *Late Declaration* – InterDigital, aware of the requirement of timely declaration of IPRs, nonetheless withheld IPRs from declaration until 2001, and then between 2001 and 2004, in order to create a "patent ambush" on those in the industry making standards-compliant equipment.

c.   *No Declaration* – InterDigital, again notwithstanding the requirement of timely declaration of IPRs, has, on information and belief, withheld from declaration IPRs since 2004 even though it has evaluated its portfolio since that time and determined that non-declared IPRs meet the criteria it applied for declaring IPRs in 2001 and 2004. InterDigital is reserving these IPRs, on information and belief, for further use in "ambush" or surprise litigation tactics.

d.   *Deliberately Vague Declaration* – Notwithstanding the requirement, effective before InterDigital's 2004 declarations, that a member specify the portion of the standard to which a declared IPR is essential, InterDigital engaged in a sham intended to limit the ability of the public to evaluate the truth of its essentiality claims. The declaration form IPR holders were to use when InterDigital made its 2004 declarations contained a column – entitled "Standard No." – for the particular provision of the standard for which a declared IPR is essential. In its declarations, InterDigital cited only to the Table of Contents for the entire standard, intentionally and deliberately, in order to obfuscate and conceal the lack of actual essentiality of the patents listed.

e.    *Secret Repeal* – InterDigital now claims that it has withdrawn from declaration IPRs that were declared in its 2001 filing with ETSI, but not listed in its 2004 filing. This, too, is a sham intended to avoid the consequences of its bad faith declaration in 2001. There is no evidence that InterDigital ever communicated to the public or interested parties that it had withdrawn any of the IPRs declared in 2001, and those declarations appear in the ETSI database in the same form as the 2004 declarations. InterDigital did not withdraw or update its 2001 declarations. The 2004 declarations did not inform ETSI members that they superseded the 2001 declarations in their entirety. ETSI's policies do not state, moreover, that subsequent declarations supersede previous ones. In fact, on October 30, 2006, InterDigital recently rejected its own endorsement of secret repeal by *explicitly* requesting that ETSI remove its essentiality declarations regarding a small number of IPRs.

41.    This bad faith behavior is a part of the broader scheme InterDigital has implemented to mislead the industry into believing (a) that it has a portfolio of essential patents, (b) that the portfolio's scope and value justify the royalties it has been demanding, and (c) that manufacturers should pay it money in order to manufacture standards-compliant technology.

*Injury to Nokia*

42.    The bad faith conduct, false and misleading behavior, and other wrongful acts set forth herein have injured Nokia. First, the conduct is likely to cause confusion in the marketplace. To the extent there are false statements in the ETSI declarations – whether made in good faith or not – they should be corrected in order to remove the likely confusion in the marketplace. Because InterDigital has refused to withdraw or modify the false declarations (and

indeed has declared in proceedings in this Court that all 195 patents are, in fact, essential), an injunction of this Court requiring InterDigital to withdraw all false declarations and engage in corrective advertising is required.

43.    In addition, InterDigital had in fact acted in bad faith in implementing and maintaining this deceptive scheme. It has obtained unjust profits from this scheme, and should be ordered to disgorge all profits it has obtained from the illicit plan.

44.    Next, this misconduct has caused a direct financial injury to Nokia.

45.    Notwithstanding the ultimate truth or falsity of InterDigital's essentiality declarations, InterDigital is not relieved from its legal and equitable obligations arising from having made these declarations in the first instance.

46.    Nokia accordingly is entitled to the injunctive and declaratory relief requested herein, as well as money damages and the disgorgement of InterDigital's unjust enrichment.

**COUNT I.**
**Violation of § 43(a) of the Lanham Act**
**(Essentiality Claims)**

47.    Nokia incorporates and re-alleges the averments contained in paragraphs 1 through 46, as set forth in full.

48.    InterDigital has used false or misleading descriptions or representations in connection with its patent portfolio, the 3G standards (including the UMTS standard, the CDMA 2000 standard, and the TD-SCDMA standard), Nokia's products, the applicability of InterDigital's patents to Nokia's products, and the applicability of InterDigital's patents to 3G wireless standards within the meaning of 15 U.S.C. § 1125(a) (§43(a) of the Lanham Act). These statements are made in connection with goods or services and are used in interstate commerce within the meaning of 15 U.S.C. § 1125(a).



49.    This misconduct of InterDigital has inhibited the development of 3G technology, damaged Nokia's business, and its reputation in the wireless market.

50.    InterDigital has repeatedly stated that its patents are essential to 3G wireless telecommunications standards and are infringed by current manufacture, use, or sale of 3G-compliant products.  InterDigital has further claimed that manufacturers of 3G technology must pay money to InterDigital as a result of the allegedly essential patents.

51.    These statements are false or misleading for the reasons stated above, and because no valid claim of any InterDigital's patent is necessary for manufacturers to make, sell, or import wireless phone standards currently being implemented compliant with the applicable 3G standards.

52.    InterDigital has repeatedly stated that its patents are essential to 3G wireless telecommunications standards and are infringed by Nokia's manufacture, use, or sale of 3G-compliant products.  InterDigital has further claimed that Nokia must pay money to InterDigital as a result of the allegedly essential patents.

53.    These statements are false or misleading for the reasons stated above, and because no valid claim of any InterDigital's patent is necessary for Nokia to make, sell, offer to sell or import wireless phone standards currently being implemented compliant with the applicable 3G standards.

54.    Nokia will prove that no valid claim of any of the patents in the InterDigital portfolio reads on any Nokia product made, used, sold, offered for sale, or imported into the United States, and thus that Nokia owes no money to InterDigital as a result of its purported 3G patent portfolio.  Even if InterDigital has some patents that may have valid claims that are essential to 3G standards, InterDigital's general claims that its patent portfolio contains essential

patents – which were made after InterDigital declared hundreds of U.S. patents and patent applications essential to ETSI – are false or misleading because Nokia will prove that a substantial number, if not all, of those declarations are false.

55.    These false statements are material and, upon information and belief, have caused actual deception and are likely to deceive a substantial portion of the intended audience.

56.    InterDigital's misrepresentations about the scope and validity of its patents and how these patents apply to Nokia's products have caused actual injuries to Nokia in its business and have damaged Nokia's reputation as alleged herein.

57.    InterDigital has made these false statements in bad faith and with knowledge of their falsity.

58.    Nokia is accordingly entitled to the relief requested herein.



## COUNT II.
### Violation of § 43(a) of the Lanham Act
### (ETSI Declarations)

59.    Nokia incorporates and re-alleges the averments contained in paragraphs 1 through 58, as if set forth in full.

60.    InterDigital declared to ETSI as essential at least 110 US patents and 85 US patent applications that have issued as patents since they were declared by InterDigital to ETSI.

61.    Through these declarations, InterDigital claimed that each of these 195 patents is infringed by UMTS-compliant 3G products.  Whether the patents are, in fact, essential is an objectively verifiable proposition and not a statement of mere opinion or "puffing."

62.    InterDigital's false and misleading declarations are material and, upon information and belief, have caused actual deception or have a tendency to deceive a substantial portion of the intended audience:



63.    InterDigital's misrepresentations through its ETSI declarations about the scope and validity of its patents and how these patents apply to Nokia's products have caused actual injuries to Nokia in its business and have damaged Nokia's reputation.

64.    Nokia will prove that no valid claim of any of the patents in the InterDigital portfolio reads on any Nokia product made, used, sold, offered for sale, or imported into the United States, and thus that Nokia owes no money to InterDigital as a result of its purported 3G patent portfolio.  Even if InterDigital has some patents that may have valid claims that are essential to 3G standards, InterDigital's general claims that its patent portfolio contains essential patents — which were made after InterDigital declared hundreds of U.S. patents and patent applications essential to ETSI — are false or misleading because Nokia will prove that a substantial number, if not all, of those declarations are false.

65.    InterDigital has made these false and misleading statements in bad faith and with knowledge of their falsity.  These statements are made in connection with goods or services and are used in interstate commerce within the meaning of 15 U.S.C. § 1125(a).

66.    Nokia is accordingly entitled to the relief requested herein.

**COUNT III.**
**Violation of Delaware Deceptive Trade Practices Act**
**(6 Del. Code § 2532)**

67.    Nokia incorporates and re-alleges the averments contained in paragraphs 1 through 66, as if set forth in full.

68.    InterDigital cast a cloud over Nokia's 3G products by creating the false and misleading impression those products contained technology that infringed InterDigital's patents.

69.    InterDigital declared its patents as essential to 3G standards, when they were not.

70.    InterDigital represented that its patents were essential to 3G standards, even though it knew they were not.

71.    InterDigital sowed confusion in the market by leading consumers to believe that Nokia's and other 3G standards-compliant manufacturers' products infringed its patents.

72.    InterDigital created confusion in the industry, in general, and among ETSI members, in particular, by (a) declaring patents to be essential to 3G standards, when it knew that they were not, (b) not withdrawing the 2001 declarations or indicating that the 2004 declarations replaced the 2001 declarations, (c) not providing sufficient information in the declarations to verify essentiality, and (d) indicating that manufacturers should pay money when no money needs to be paid.

73.    InterDigital's actions were willful and in bad faith.

74.    InterDigital's above-described deceptive trade practices have caused and threaten to continue to cause actual injuries to Nokia.

75.    InterDigital's above-described deceptive trade practices were willful and Nokia is entitled to treble damages pursuant to 6 Del. Code § 2533(c).

76.    Nokia is further entitled to the relief requested herein.

## COUNT IV.
## Common Law Unfair Competition
### (Delaware)

77.    Nokia incorporates and re-alleges the averments contained in paragraphs 1 through 76, as if set forth in full.

78.    Nokia reasonably anticipated obtaining revenue with respect to 3G technology.

79.    InterDigital's actions were willful and in bad faith.

80.    InterDigital's above-described unfair competition has caused and threatens to continue to cause actual injuries to Nokia.

81.    Nokia is further entitled to the relief requested herein.

## COUNT V.
### Common Law Unfair Competition
### (Pennsylvania)

82.    Nokia incorporates and re-alleges the averments contained in paragraphs 1 through 81, as if set forth in full.

83.    Nokia reasonably anticipated commercial benefits with respect to 3G products.

84.    Additionally, InterDigital's bad faith and affirmative misrepresentations regarding its patent portfolio constitute unfair methods of competition.

85.    InterDigital's above-described acts of unfair competition has caused and threatens to continue to cause actual injuries to Nokia.

86.    Nokia is further entitled to the relief requested herein.

## COUNT VI.
### Intentional Interference with Prospective Business Opportunities
### (Delaware)

87.    Nokia incorporates and re-alleges the averments contained in paragraphs 1 through 86, as if set forth in full.

88.    Nokia possessed a reasonable probability of a business opportunity with respect to 3G products.

89.    InterDigital's interference was willful and in bad faith.

90.    InterDigital's interference was the cause of Nokia's loss of business opportunity as, absent InterDigital's interference, more 3G Nokia products would have been sold and licensees would have paid additional royalties to Nokia.

91.    InterDigital's interference has caused and threatens to continue to cause actual injuries to Nokia.

92.    InterDigital's interference was knowing and willful in that InterDigital represented that all 3G manufacturers must pay money for license rights to its patents even though it knew the money was not, in fact, owed. Nokia is therefore entitled to punitive damages from InterDigital.

93.    Nokia is further entitled to the relief requested herein.

## COUNT VII.
### Intentional Interference with Prospective Business Relations
### (Pennsylvania)

94.    Nokia incorporates and re-alleges the averments contained in paragraphs 1 through 93, as if set forth in full.

95.    Nokia possessed a reasonable probability of revenues from business relations with respect to 3G technology.

96.    InterDigital intentionally interfered with Nokia's reasonable probability of business relations with the purpose or intent of harming Nokia by preventing the relations from occurring, as InterDigital knew or should have known that its declarations would affect the marketability of Nokia's products and the licensing royalties that Nokia would receive.

97.    There was no privilege or justification for InterDigital's interference as InterDigital used an unfair method of competition.

98.    InterDigital's interference was willful and in bad faith.

99.    InterDigital's interference was the cause of Nokia's loss of business opportunity as, absent InterDigital's interference, more 3G Nokia products would have been sold and Nokia would have received additional royalties.

100.    InterDigital's interference has caused and threatens to continue to cause actual injuries to Nokia.

101.    InterDigital's interference was knowing and willful in that InterDigital represented that all 3G manufacturers must pay license fees for its patents even though it knew that such fees were not required.    Nokia is therefore entitled to punitive damages from InterDigital.

102.    Nokia is further entitled to the relief requested herein.

## COUNT VIII.
## Intentional Interference with Prospective Business Relations
## (Texas)

103.    Nokia incorporates and re-alleges the averments contained in paragraphs 1 through 102, as if set forth in full.

104.    Nokia possessed a reasonable probability of revenues from business relations from 3G technology.

105.    InterDigital intentionally and in bad faith interfered with Nokia's reasonable probability of business relations with the a conscious desire to prevent the relations from occurring, or with knowledge that the interference was certain or substantially certain to prevent the relations from occurring, as InterDigital knew or should have known that its declarations would affect the marketability of Nokia's products and the licensing royalties that Nokia would receive.

106.    InterDigital intentionally interfered with Nokia through an independently tortious or unlawful act by the defendant, including through all of the counts set forth herein.

107.    There was no privilege or justification for InterDigital's interference as InterDigital used an unfair method of competition.

108.    InterDigital's interference was the cause of Nokia's loss of business opportunity as, absent InterDigital's interference, more 3G Nokia products would have been sold and Nokia would have received additional royalties.

109.    InterDigital's interference has caused and threatens to continue to cause actual injuries to Nokia.

110.    InterDigital's interference was knowing and willful in that InterDigital represented that all 3G manufacturers must pay license fees for its patents even though it knew that such fees were not required.    Nokia is therefore entitled to punitive damages from InterDigital.

111.    Nokia is further entitled to the relief requested herein.

## COUNT IX.
### Injurious Falsehood
### (Delaware)

112.    Nokia incorporates and re-alleges the averments contained in paragraphs 1 through 111, as if set forth in full.

113.    InterDigital published false statements through its declarations to ETSI.

114.    InterDigital declared that its patents were essential to 3G standards even though it knew they were not, or acted in reckless disregard of the declarations' truth or falsity.

115.    InterDigital further intimated that manufacturers such as Nokia needed to pay licensee fees for these patents, even though current 3G technology does not infringe them.

116.    InterDigital's declarations were willful and in bad faith.

117.    InterDigital intended its declarations to result in pecuniary harm to Nokia, or recognized or should have recognized harm would result, as InterDigital knew its statements would negatively impact marketability of Nokia's products.

118.    InterDigital's interference has caused and threatens to continue to cause actual

injuries to Nokia.

119.    Nokia is further entitled to the relief requested herein.

## COUNT X.
### Commercial Disparagement
### (Pennsylvania)

120.    Nokia incorporates and re-alleges the averments contained in paragraphs 1

through 119, as if set forth in full.

121.    InterDigital published false statements through its declarations to ETSI.

122.    InterDigital declared that its patents were essential to 3G standards even though it

knew they were not, or acted in reckless disregard of the declarations' truth or falsity.

123.    InterDigital further intimated that manufacturers such as Nokia needed to pay

license fees for these patents, even though current 3G technology does not infringe them.

124.    InterDigital's declarations were willful and in bad faith.

125.    InterDigital intended its declarations to result in pecuniary harm to Nokia, or

recognized or should have recognized harm would result, as InterDigital knew its statements

would negatively impact marketability of Nokia products.

126.    InterDigital's interference has caused and threatens to continue to cause actual

injuries to Nokia.

127.    Nokia is further entitled to the relief requested herein.

## COUNT XI.
### Business Disparagement
### (Texas)

128.    Nokia incorporates and re-alleges the averments contained in paragraphs 1

through 127, as if set forth in full.



129.    InterDigital published false statements through its declarations to ETSI.

130.    InterDigital declared that its patents were essential to 3G standards even though it knew they were not, or acted in reckless disregard of the declarations' truth or falsity.

131.    InterDigital further intimated that manufacturers such as Nokia needed to pay license fees for these patents, even though current 3G technology does not infringe them.

132.    InterDigital's declarations were willful and in bad faith.

133.    InterDigital intended its declarations to result in pecuniary harm to Nokia, or recognized or should have recognized harm would result, as InterDigital knew its statements would negatively impact marketability of Nokia's products.

134.    Upon information and belief, Nokia has suffered lost business expected from persons who are aware of InterDigital's statements.

135.    InterDigital's declarations have caused and threaten to continue to case actual injuries to Nokia.

136.    Nokia is further entitled to the relief requested herein.

## COUNT XII.
## Unjust Enrichment
## (Delaware)

137.    Nokia incorporates and re-alleges the averments contained in paragraphs 1 through 136, as if set forth in full.

138.    InterDigital received an unjust enrichment of licensing revenues as a result of its false and misleading declarations to ETSI and other conduct described herein.

139.    Nokia has lost money due to InterDigital's wrongful conduct.

140.    InterDigital's false and misleading declarations to ETSI and other conduct described herein were purposeful and in bad faith, and caused both InterDigital's unjust enrichment and Nokia's loss.

141.    There was no privilege or justification for the false and misleading declarations to ETSI and other conduct described herein as InterDigital used an unfair method of competition.

142.    Nokia suffers the absence of an adequate remedy at law as InterDigital has improperly obtained licensing revenue and the adequate remedy is restitution of this improperly obtained revenue.

143.    InterDigital's declarations have caused and threaten to continue to cause actual injuries to Nokia.

144.    Nokia is further entitled to the relief requested herein.

**COUNT XII.**
**Unjust Enrichment**
**(Pennsylvania)**

145.    Nokia incorporates and re-alleges the averments contained in paragraphs 1 through 144, as if set forth in full.

146.    InterDigital received an unjust benefit of licensing revenues as a result of its false and misleading declarations to ETSI and other conduct described herein.

147.    InterDigital appreciated its unjust benefit as the false and misleading declarations to ETSI and other conduct described herein were purposeful and in bad faith.

148.    InterDigital accepted and retained its unjust benefit at the expense of Nokia and others and therefore it would be inequitable not to return its benefit.

149.    There was no privilege or justification for the false and misleading declarations to ETSI and other conduct described herein as InterDigital used an unfair method of competition.

150.    Nokia suffers the absence of an adequate remedy at law as InterDigital has ~~improperly obtained licensing revenue and the adequate remedy is restitution of this improperly~~ obtained revenue.

151.    InterDigital's declarations have caused and threaten to continue to cause actual injuries to Nokia.

152.    Nokia is further entitled to the relief requested herein.

## COUNT XIV.
## Unjust Enrichment
## (Texas)

153.    ~~Nokia incorporates and re-alleges the averments contained in paragraphs 1~~ through 152, as if set forth in full.

154.    InterDigital received an unjust enrichment of licensing revenues as a result of its false and misleading declarations to ETSI and other conduct described herein.

155.    InterDigital's false and misleading declarations to ETSI and other conduct described herein were purposeful and in bad faith.

156.    InterDigital accepted and retained its unjust benefit at the expense of Nokia and others and therefore it would be inequitable not to return its benefit.

157.    There was no privilege or justification for the false and misleading declarations to ETSI and other conduct described herein as InterDigital used an unfair method of competition.

158.    Nokia suffers the absence of an adequate remedy at law as InterDigital has ~~improperly obtained licensing revenue and the adequate remedy is restitution of this improperly~~ ~~obtained revenue.~~

159.    InterDigital's declarations have caused and threaten to continue to cause actual injuries to Nokia.

160.    Nokia is further entitled to the relief requested herein.

### ~~JURY DEMAND~~

Nokia demands a trial by jury.

### PRAYER FOR RELIEF

WHEREFORE, Nokia respectfully requests that the Court enter judgment:

(a)    Declaring the extent to which any of the patents set forth in Attachment A actually

meet the definition of "essential" under the ETSI IPR policy;

(b)    Declaring the extent to which any of the patents in Attachment A are necessarily

~~infringed by compliance of a product with a 3G standard actually commercially~~

implemented anywhere in the world;

(c)    Declaring the extent to which any of the patents in Attachment A have valid,

enforceable claims which necessarily read on any product compliant with the any 3G

standard, including but not necessarily limited to Nokia products made, used, sold,

offered for sale or imported in the United States;

(d)    Declaring that no Nokia 3G compliant product infringes any valid, enforceable claim

of any of the patents in Attachment A (or any such other United States patent as

InterDigital may refuse to concede is not infringed by Nokia);

(e)    That InterDigital's statements concerning the scope and validity of its 3G patents are

false or misleading;

(f)    ~~Enjoining InterDigital from continued dissemination of these false and misleading~~

~~statements;~~

(g)    Requiring InterDigital to take all necessary steps to have its false and misleading

statements withdrawn from ETSI's website;

(h)    Awarding Nokia damages in an amount to be determined at trial for Nokia's losses;

~~(i)    Awarding Nokia treble damages pursuant to 6 Del. Code § 2533(c);~~

(j)    Awarding Nokia punitive damages;

(k)    Requiring InterDigital's disgorgement of its unjust enrichment;

(l)    Granting Nokia its attorneys' fees and costs pursuant to 6 Del. Code § 2533(b) and all

other applicable bases for awarding fees and costs; and

(m)    Granting such other and further relief as the Court deems just and proper.

MORRIS, NICHOLS, ARSHT & TUNNELL LLP

*/s/ Julia Heaney*

JACK B. BLUMENFELD (#1014)
~~JULIA HEANEY (#3052)~~
1201 N. Market Street
Wilmington, DE 19801
(302) 658-9200
Attorneys for NOKIA CORPORATION and
NOKIA, INC.

OF COUNSEL:

ALSTON & BIRD LLP
Patrick Flinn
Randall Allen
Lance Lawson
1201 West Peachtree Street
Atlanta, GA 30309
(404)881-7000

Original Filing Date: January 9, 2007
~~Public Filing Date: February 9, 2007~~
550110

## CERTIFICATE OF SERVICE

I, Julia Heaney, hereby certify that on February 9, 2007 I electronically filed the

foregoing with the Clerk of the Court using CM/ECF, which will send notification of such

filing(s) to the following:

> Richard L. Horwitz
> Potter Anderson & Corroon LLP

I also certify that copies were caused to be served on February 9, 2007 upon the

following in the manner indicated:

### BY HAND AND E-MAIL

Richard L. Horwitz
Potter Anderson & Corroon LLP
1313 N. Market Street
Wilmington, DE 19801
rhorwitz@potteranderson.com

### BY E-MAIL

Dan D. Davison
Fulbright & Jaworski LLP
2200 Ross Avenue
Suite 2800
Dallas, TX 75201-2784
ddavidson@fulbright.com

/s/ Julia Heaney

Julia Heaney (#3052)

A

# EXHIBIT A

## Exhibit A to Nokia's First Amended Complaint



Patent
No.

5,081,643
5,161,168
5,179,572
5,224,120
5,263,045
5,351,269
5,363,403
5,469,468
5,553,062
5,563,907
5,574,747
5,588,020
5,673,286
5,703,874
5,719,852
5,748,687
5,796,776
5,799,010
5,835,527
5,841,768
5,912,919
5,920,590
5,940,382
5,943,331
5,991,329
5,991,332
5,995,538
6,005,898
6,011,789
6,014,373
6,049,535
6,075,792
6,115,406
6,141,332
6,157,619
6,175,586
6,181,949
6,212,174
6,215,778
6,229,843
6,252,866
6,256,339
6,259,688
6,272,168
6,278,726
6,330,272

| Patent No. |
| --- |
| 6,373,830 |
| 6,373,877 |
| 6,381,264 |
| 6,389,002 |
| 6,404,828 |
| 6,456,608 |
| 6,490,462 |
| 6,493,563 |
| 6,507,745 |
| 6,519,474 |
| 6,560,300 |
| 6,571,105 |
| 6,574,265 |
| 6,574,271 |
| 6,577,672 |
| 6,577,673 |
| 6,577,876 |
| 6,606,503 |
| 6,608,838 |
| 6,611,548 |
| 6,614,776 |
| 6,633,600 |
| 6,671,308 |
| 6,674,788 |
| 6,674,791 |
| 6,697,350 |
| 6,707,805 |
| 6,721,301 |
| 6,721,350 |
| 6,738,368 |
| 6,744,809 |
| 6,778,840 |
| 6,782,040 |
| 6,788,662 |
| 6,798,759 |
| 6,801,516 |
| 6,801,517 |
| 6,804,315 |
| 6,810,029 |
| 6,816,473 |
| 6,823,194 |
| 6,826,244 |
| 6,831,905 |
| 6,832,095 |
| 6,832,096 |
| 6,839,567 |
| 6,845,093 |
| 6,850,514 |

- 2 -

| Patent No. |
| --- |
| 6,865,217 |
| 6,868,076 |
| 6,868,078 |
| 6,868,278 |
| 6,873,645 |
| 6,876,665 |
| 6,879,841 |
| 6,885,652 |
| 6,898,197 |
| 6,904,294 |
| 6,915,473 |
| 6,940,817 |
| 6,940,840 |
| 6,961,398 |
| 6,973,579 |
| 6,980,538 |
| 6,980,615 |
| 6,983,009 |
| 6,985,467 |
| 6,993,001 |
| 7,020,111 |
| 7,020,125 |
| 7,020,151 |
| 7,046,754 |
| 7,072,290 |
| 7,072,380 |
| 7,085,583 |
| 7,106,719 |
| 7,110,383 |
| 7,110,384 |
| 7,110,385 |
| 7,110,386 |
| 7,123,600 |

# EXHIBIT L

IN THE UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

In the Matter of Arbitration between
INTERDIGITAL COMMUNICATIONS
CORPORATION, a Pennsylvania
corporation and INTERDIGITAL
TECHNOLOGY CORPORATION, a
Delaware Corporation,

        Petitioners,

and

NOKIA CORPORATION, a corporation
existing under the laws of Finland,

        Respondent.

**NOTICE OF APPEAL**

05-CV 06180 (WHP)
ECF CASE



FILED U.S. DC
JAN 2 6 2006
S.D. OF N.Y.

      Notice is hereby given that Nokia Corporation (hereinafter, "Nokia"), Respondent

in the above named case, hereby appeals to the United States Court of Appeals for the

Second Circuit from the District Court's Memorandum and Order and Judgment, both of

which were dated and entered in this action on December 28, 2005, granting the motion

of InterDigital Communications Corporation and InterDigital Technology Corporation to

confirm the arbitration award of the International Chamber of Commerce and denying

Nokia's motion to vacate the arbitration award. Pursuant to Local Rule 83.8, the names

and addresses of the respective attorneys of record are attached hereto as Exhibit "A."

Dated: New York, New York
       January 26, 2006

                                      _Karl Geercken (KG 5897)_

Karl Geercken (KG 5897)
Alan Kanzer (AK 5839)
ALSTON & BIRD LLP
90 Park Avenue
New York, NY 10016-1387
Tel. (212) 210-9400

Peter Kontio
Patrick J. Flinn
S. Gardner Culpepper
Mark A. McCarty
Keith E. Broyles
ALSTON & BIRD LLP
1201 West Peachtree Street
Atlanta, GA 30311
Tel. (404) 881-7000

*Attorneys for Nokia
Corporation*

7804889.2

# EXHIBIT M





* Home * 3G Store * 3G Phones * 3G Reviews * 3G Forum * 3G UK * 3G World * Advertise

**Today's 3G News**



FREE
Nokia N95!

First Commercial 3G UMTS DVB-H Handset

MSN Messenger for 3G Operator 3

Nokia N93 3G Mobile Gets Adobe Premiere

Nokia and Interdigital Resolve 2G / 3G Royalty Issues

Virgin Mobile Bites Back with Unique 3G Content

Siemens Co-sponsor 3G Wireless Lab

Vipnet Launches Croatia's First 3G HSDPA Network

New Take to 3G Mobile Game Service

Huawei Signs 3G EV-DO Contract with Skylink

Near 100 3G HSDPA Network Deployments

EMT's Commercial Launch of 3G HSDPA in Estonia

3G Cellular Router Products Hook-Up

Samsung SGH-Z540V 3G Phone Review

Modem For UbiquiSys 3G HSDPA Home Access Point System

3G Home Gateway Project

New Nokia N73 3G Mobile Phone

New Nokia N72 EDGE/GSM Phone

New Nokia 3G N93 Mobile Phone

World's First 3G Live Video Broadcast From a Mobile Phone to a Mass Audience

New Products Enable Interactive Mobile Video Over 3G Phones

Vodafone Crosses to Live 3G News Broadcast

Seven Leading Asian Mobile Operators Form Alliance

Vodafone May bid for Tiscali

E-GPS High Accuracy Mobile Location Technology for GSM / 3G W-CDMA

3G Research Competition

# Nokia and Interdigital Resolve 2G / 3G Royalty Issues

### 28th April , 2006

US : InterDigital Communications Corporation announced that the company and its wholly-owned subsidiary InterDigital Technology Corporation have reached agreement with Nokia Corporation resolving the dispute regarding Nokia's royalty obligations for its sales of 2G TDMA-based products and related litigation matters.

Under the agreement, Nokia is obligated to pay InterDigital a total of $253 million on or before April 28, 2006. Upon payment, Nokia will have a paid-up patent license covering sales of 2G TDMA-based products, which consist mainly of GSM/GPRS/EDGE terminal units and infrastructure. Also, InterDigital will release Nokia from infringement liability for its worldwide sales of 3G terminal units and infrastructure through April 26, 2006. The parties have agreed to terminate their 1999 patent license agreement originally scheduled to terminate at the end of 2006. As a result, Nokia's sales of 3G products after April 26, 2006 will be unlicensed. InterDigital expects to continue negotiations with Nokia on this issue.

"Throughout this process, we were confident that we would be paid the amounts owed under the Arbitration Award by agreement or by court order," commented William J. Merritt, President and Chief Executive Officer of InterDigital. "Nokia's payment for its sales of 2G-TDMA based products falls within the range of our prior disclosures and is consistent with the royalty rates stated in the Award."

Regarding future 3G sales, Mr. Merritt added, "We remain hopeful that we can reach an amicable resolution on this issue on terms acceptable to both parties. By terminating the current license agreement, the parties have a clean slate from which to work and resolve 3G issues."

As part of the agreement, Nokia has agreed to dismiss its appeal filed in the United States Court of Appeals for the Second Circuit regarding the Arbitration Award and InterDigital has agreed to withdraw its arbitration demand recently filed with the International Chamber of Commerce dealing with the payment of royalties due under the Award. In addition, Nokia has agreed to withdraw its challenge before the High Court of Justice of England and Wales, Chancery Division, Patents Court as to three InterDigital TDMA-related patents. In exchange for its agreement to withdraw its challenge to these patents, InterDigital has agreed not to assert the three patents (and related non-U.K. counterparts) involved in that case against Nokia and that Nokia will have a worldwide paid-up license for single-mode TIA/EIA-95 products.

Based upon its preliminary review of the accounting treatment for this matter, InterDigital believes that the entire $253 million payment will be recognized in its 2006 income statement. The company will provide additional detailed disclosure upon the completion of its analysis.

**3G Sponsored by ANRITSU**



/Anritsu

**3G video IVR platform**



**Test With The Best - Catapult**



CATAPULT

Focus on DIGITAL TELECOM TESTING

Testing Over 900 Protocols

**3G Phone Design Win on Vodafone Project**

**TelcoBridges Launches 3G-324M on a Blade**

**World's First 2GByte Memory Card for Mobile Phones**

**This Weeks 3G News By Photos**

**This Weeks 3G News**

**All 3G News**

If you would like our **FREE** daily 3G News delivered to your mailbox then please **SUBSCRIBE** ( click here )

Please ask your IT department to add the following domain **http://www.3g.co.uk/** to their spamfilter as a good source so that your newsletter is not blocked in future.

## Free V3x + Free iPod Nano



FREE 3G Motorola V3x video phone

FREE iPod Nano mp3 player

FREE 6 months 1/2 price line rental

FREE on selected pay monthly tariffs

BUY NOW ››

**This Weeks 3G News By Photos**

**This Weeks 3G News**

# EXHIBIT N



901 New York Avenue, NW ▪ Washington, DC 20001-4413 ▪ 202.408.4000 ▪ Fax 202.408.4400
www.finnegan.com

FINNEGAN
HENDERSON
FARABOW
GARRETT &
DUNNER LLP

SMITH R. BRITTINGHAM IV
202.408.4158
smith.brittingham@finnegan.com

August 7, 2007

**VIA HAND DELIVERY**

The Honorable Marilyn Abbott
Secretary
U.S. International Trade Commission
500 E Street, S.W.
Washington, D.C. 20436

      Re:   *Certain 3G Mobile Handsets and Components Thereof*

Dear Secretary Abbott:

      Enclosed for filing on behalf of Complainants InterDigital Communications, LLC and InterDigital Technology Corporation (collectively referred to as "InterDigital") are the following documents in support of InterDigital's request that the Commission commence an investigation pursuant to Section 337 of the Tariff Act of 1930, as amended. A separate request for confidential treatment of confidential exhibits 5, 8, and 14 and confidential Appendix E, is included with this filing.

      Accordingly, InterDigital submits the following documents for filing:

1.     An original and twelve (12) copies of the verified complaint and an original and six (6) copies of the accompanying exhibits, with the confidential exhibits segregated from the other material submitted, original and (1) copy unbound, without tabs. (Rules 201.6(c), 210.4(f)(3)(i), and 210.8(a));

2.     Two (2) additional copies of both the complaint and accompanying non-confidential exhibits for service upon each proposed respondent. (Rules 210.4 (f)(3)(i), 210.8(a), and 210.11(a));

3.     Two (2) additional copies of the confidential exhibits;

4.     Certified copies of United States Letters Patent Nos. 7,117,004 and 7,190,966 (collectively the "Asserted Patents"), included as Exhibits 1 and 2 in the complaint, and copies thereof included as Exhibits 1 and 2 in all copies of the complaint;

The Honorable Marilyn Abbott
August 7, 2007
Page 2

FINNEGAN
HENDERSON
FARABOW
GARRETT &
DUNNER LLP

5.      Certified copies of the assignment documents involving the Asserted Patents included as Exhibit 3 in the complaint, and copies thereof included as Exhibit 3 in all copies of the complaint;

6.      Certified copies and three (3) copies thereof of the prosecution histories of each of the Asserted Patents included as Appendices A and C (Rule 210.12(c)(2));

7.      Four (4) copies of each available reference document cited on the face of the Asserted Patents or mentioned in the prosecution histories of the applications leading to the issuance of the Asserted Patents included as Appendices B and D;

8.      Three copies of each relevant license included as confidential Appendix E.  (Rule 210.12(c)(1));

9.      One (1) additional copy of the complaint and the accompanying non-confidential exhibits for service upon the Finnish embassy in Washington, D.C. (Rule 210.8(a) and 210.11(a)(1));

10.     One (1) physical exemplar of the imported articles that are the subject of the complaint as Appendix F (Rule 210.12(b); and

11.     A letter and certification pursuant to Commission Rules 201.6(b) and 210.5(d) requesting confidential treatment of confidential exhibits 5, 8, and 14, and confidential Appendix E.

Thank you for your attention to this matter.

Respectfully submitted,

Smith R. Brittingham IV

Enclosures



901 New York Avenue, NW ▪ Washington, DC 20001-4413 ▪ 202.408.4000 ▪ Fax 202.408.4400
www.finnegan.com

FINNEGAN
HENDERSON
FARABOW
GARRETT &
DUNNER LLP

SMITH R. BRITTINGHAM IV
202.408.4158
smith.brittingham@finnegan.com

August 7, 2007

## VIA HAND DELIVERY

The Honorable Marilyn Abbott
Secretary
U.S. International Trade Commission
500 E Street, S.W.
Washington, D.C. 20436

Re:    *Certain 3G Mobile Handsets and Components
        Thereof*

Dear Secretary Abbott:

This firm represents Complainants InterDigital Communications, LLC and InterDigital Technology Corporation (collectively "InterDigital"), who are concurrently filing a complaint pursuant to Section 337 of the Tariff Act of 1930, as amended, 19 U.S.C. § 1337.

In accordance with Commission Rules 201.6 and 210.5 (19 C.F.R. §§ 201.6 and 210.5), InterDigital requests confidential treatment of the business information contained in confidential exhibits 5, 8, and 14, and confidential Appendix E.

The information for which confidential treatment is sought is proprietary commercial information not otherwise publicly available. Specifically, the confidential exhibits and appendix contain proprietary information regarding InterDigital's licensing program, sensitive technical analysis of the accused products that was acquired at substantial cost to InterDigital and reveals customized tests developed in cooperation with a diagnostic testing facility, disclosure of which may prejudice InterDigital and the testing facility, and proprietary commercial information concerning InterDigital's investments in the domestic industry.

The information described above qualifies as confidential business information pursuant to Rule 210.6(a) because:

      1.    it is not available to the public;

The Honorable Marilyn Abbott
August 7, 2007
Page 2

FINNEGAN
HENDERSON
FARABOW
GARRETT &
DUNNER LLP

    2.    unauthorized disclosure of such information could cause substantial harm to the competitive position of InterDigital or its testing facility; and

    3.    the disclosure of which could impair the Commission's ability to obtain information necessary to perform its statutory function.

Please contact me if you have any questions about this request, or if this request is not granted in full.

We appreciate your assistance in this matter.

Respectfully submitted,

Smith R. Brittingham IV

Sworn to and subscribed before me this 7th day of August, 2007.

Catherine G. DuBose

Notary Public, District of Columbia

My commission expires November 30, 2009

# UNITED STATES INTERNATIONAL TRADE COMMISSION
## WASHINGTON, D.C.

| |
|---|
| **In the Matter of** |
| **CERTAIN 3G MOBILE HANDSETS AND COMPONENTS THEREOF** |

Investigation No. 337-TA-_____

## COMPLAINT OF INTERDIGITAL COMMUNICATIONS, LLC AND INTERDIGITAL TECHNOLOGY CORPORATION UNDER SECTION 337 OF THE TARIFF ACT OF 1930, AS AMENDED

**COMPLAINANTS**

InterDigital Communications, LLC
781 Third Avenue
King of Prussia, Pennsylvania 19406-1409
(610) 878-7800

InterDigital Technology Corporation
Hagley Building, Suite 105
3411 Silverside Road, Concord Plaza
Wilmington, Delaware 19810-4812
(302) 477-2500

**COUNSEL FOR COMPLAINANTS**

Smith R. Brittingham IV
Patrick J. Coyne
Christopher P. Isaac
Lionel M. Lavenue
Houtan K. Esfahani
Elizabeth A. Niemeyer
Rajeev Gupta
FINNEGAN, HENDERSON, FARABOW,
  GARRETT & DUNNER, L.L.P.
901 New York Avenue, N.W.
Washington, D.C. 20001
Telephone: (202) 408-4000
Facsimile: (202) 408-4400

**PROPOSED RESPONDENTS**

Nokia Corporation
Keilalahdentie 2-4
P.O. Box 226
FIN-00045 Espoo
Finland
358 (0) 7180 08000

Nokia Inc.
6000 Connection Drive
Irving, Texas 75039
USA
(972) 894-5000

**TABLE OF CONTENTS**

I.      INTRODUCTION ................................................................................ 1

II.     COMPLAINANT ................................................................................ 2

III.    PROPOSED RESPONDENTS ............................................................ 3

IV.     THE TECHNOLOGY AND PRODUCTS-AT-ISSUE ........................ 3

V.      THE ASSERTED PATENTS AND NON-TECHNICAL DESCRIPTION OF THE
        INVENTIONS ................................................................................... 5

   A.   U.S. Patent No. 7,117,004 ................................................................ 5
     1. Identification of the Patent and Ownership by InterDigital ............ 5
     2. Non-Technical Description of the Patent ....................................... 5
     3. Foreign Counterparts to the Patent ............................................... 6
     4. Licenses ........................................................................................ 7
   B.   U.S. Patent No. 7,190,966 ................................................................ 7
     1. Identification of the Patent and Ownership by InterDigital ............ 7
     2. Non-Technical Description of the Patent ....................................... 7
     3. Foreign Counterparts to the Patent ............................................... 9
     4. Licenses ........................................................................................ 9

VI.     UNLAWFUL AND UNFAIR ACTS OF RESPONDENTS—
        PATENT INFRINGEMENT ............................................................. 9

VII.    SPECIFIC INSTANCES OF UNFAIR IMPORTATION AND SALE .......... 11

VIII.   HARMONIZED TARIFF SCHEDULE ITEM NUMBERS ............................ 11

IX.     RELATED LITIGATION ................................................................. 11

X.      THE DOMESTIC INDUSTRY ......................................................... 14

   A.   Investments in Research and Development, and Engineering .......... 15
   B.   Investments in Licensing ................................................................ 15

XI.     RELIEF REQUESTED ..................................................................... 16

**TABLE OF EXHIBITS**

| Exhibit | Document |
|---|---|
| 1 | United States Patent No. 7,117,004 |
| 2 | United States Patent No. 7,190,966 |
| 3 | Assignment Documents for the '004 and the '966 Patents |
| 4 | Table Identifying Foreign Counterparts of the '004 and the '966 Patents |
| 5 | CONFIDENTIAL  Identification of Licensees |
| 6 | Claim Charts:  Infringement of '004 Patent by Nokia Handsets |
| 7 | Claim Charts:  Infringement of '966 Patent by Nokia Handsets |
| 8 | CONFIDENTIAL  Test Report Supporting Infringement Claim Charts for Nokia Handsets |
| 9 | Nokia Website Document Supporting Infringement of Asserted Patents by Nokia Handsets |
| 10 | Standards-Related Documents, 3GPP TS 25.211, Supporting Infringement of Asserted Patents by Nokia Handsets |
| 11 | Standards-Related Documents, 3GPP TS 25.213, Supporting Infringement of Asserted Patents by Nokia Handsets |
| 12 | Standards-Related Documents, 3GPP TS 25.301, Supporting Infringement of Asserted Patents by Nokia Handsets |
| 13 | Documents and Photographs of Representative Accused Infringing Nokia Handset Demonstrating Specific Instance of Importation and Sale |
| 14 | CONFIDENTIAL  Identification of InterDigital's Domestic Industry |

## TABLE OF APPENDICES

| Appendix | Document |
|---|---|
| A | Prosecution History of United States Patent No. 7,117,004 |
| B | Copies of References Cited in the Prosecution History of U.S. Patent No. 7,117,004 |
| C | Prosecution History of United States Patent No. 7,190,966[1] |
| D | Copies of Additional[2] References Cited in the Prosecution History of U.S. Patent No. 7,190,966 |
| E | CONFIDENTIAL Copies of Complainant InterDigital's License Agreements |
| F | Physical Sample of Nokia N75 Handset |

---

[1] Appendix C contains Patent Office records related to the last application in the line of applications leading to issuance of the '966 patent. Since the '966 patent is a continuation of the '004 patent, the Patent Office records related to the earlier applications in the line are contained in Appendix A, which is the prosecution history for the '004 patent.

[2] Because the '966 patent is a continuation of the '004 patent, Appendix D only contains copies of each reference that is cited on the face of the '966 patent or mentioned in its prosecution history, but not in the prosecution history of the '004 patent. The references cited in the prosecution history of the '004 patent are included in Appendix B.

## I.    INTRODUCTION

1.    This Complaint is filed by InterDigital Communications, LLC and InterDigital Technology Corporation (collectively referred to as "InterDigital") under Section 337 of the Tariff Act of 1930, as amended, 19 U.S.C. § 1337, based on the unlawful importation into the United States, the sale for importation, and the sale within the United States after importation by owners, importers, or consignees of certain 3G mobile handsets and components thereof that infringe any of United States Letters Patent Nos. 7,117,004 ("the '004 patent") and 7,190,966 ("the '966 patent") (sometimes collectively referred to as "the asserted patents").

2.    The proposed respondents are:  Nokia Corporation and Nokia Inc. (sometimes collectively referred to as "Nokia").

3.    Certified copies of the '004 and '966 patents are attached to this Complaint as Exhibits 1 and 2.  InterDigital owns all right, title, and interest in each of the asserted patents. The '004 and the '966 patent share the same recorded assignment, a certified copy of which is attached to this Complaint as Exhibit 3.

4.    An industry as required by 19 U.S.C. § 1337(a)(2) and (3) exists in the United States relating to the technology protected by the asserted patents.

5.    InterDigital seeks, as relief, an exclusion order barring from entry into the United States infringing 3G mobile handsets and components thereof imported by or on behalf of the respondents.  InterDigital also seeks, as relief, cease-and-desist orders prohibiting the sale for importation, importation, sale after importation, offer for sale, advertising, testing, the solicitation of sales, and other commercial activity relating to infringing 3G mobile handsets and components thereof.

## II.    COMPLAINANT

6.    Complainant InterDigital Communications, LLC is a Pennsylvania limited liability company with its principal place of business at 781 Third Avenue, King of Prussia, Pennsylvania 19406-1409.[3]  InterDigital Technology Corporation is a Delaware corporation with its principal place of business at Hagley Building, Suite 105, 3411 Silverside Road, Concord Plaza, Wilmington, Delaware 19810-4812.  InterDigital Communications, LLC and InterDigital Technology Corporation are subsidiaries of InterDigital, Inc., a Pennsylvania corporation.

7.    Since 1993, InterDigital has been engaged in the research, development, engineering, and licensing of Code Division Multiple Access ("CDMA") technology in the United States.  That work later transitioned into research, development, engineering, and licensing of Wideband CDMA technology ("WCDMA").  WCDMA is one of the wireless technologies often referred to commercially as "3G."

8.    At its King of Prussia, Pennsylvania, and Melville, New York facilities, among other activities, InterDigital researches, develops, engineers, and licenses technology for 3G mobile handsets.  InterDigital also files and prosecutes worldwide patent applications covering its innovative research and development of 3G mobile technology and communications protocols used in connection with that technology.

9.    InterDigital's research, development, and engineering business has developed proprietary technology that is used in most, if not all, 3G WCDMA handsets made throughout

---

[3] InterDigital Communications, LLC was previously known as InterDigital Communications Corporation, but in connection with an internal corporate reorganization, effective July 3, 2007, InterDigital Communications Corporation (a Pennsylvania corporation) became InterDigital Communications, LLC (a Pennsylvania limited liability corporation).  When referring to historical events, the term "InterDigital" will include the activities of InterDigital Communications Corporation.

the world. InterDigital's technology has been licensed to significant handset manufacturers throughout the world, including, at times in the past, Nokia.

## III.    PROPOSED RESPONDENTS

10.    Respondent, Nokia Corporation, is a Finnish corporation, with its principal place of business at Keilalahdentie 2-4, P.O. Box 226, FIN-00045 Nokia Group, Finland. Upon information and belief, Nokia Corporation is involved in the design, development and manufacture of 3G mobile handsets through its Mobile Phones Business Group.

11.    Respondent, Nokia Inc., is a Delaware corporation, with its principal place of business at 6000 Connection Drive, Irving, Texas 75039. Upon information and belief, Nokia Inc. (d/b/a Nokia Mobile Phones) distributes Nokia-branded handsets in the United States.

## IV.    THE TECHNOLOGY AND PRODUCTS-AT-ISSUE

12.    The technology and products-at-issue concern mobile handsets for use in Third Generation or "3G" systems.

13.    The first generation of cellular systems deployed in the United States in the late 1990s was referred to as Advanced Mobile Phone Service, or "AMPS." A variety of entities proposed improvements in that system, leading to "Second Generation" or "2G" systems. Those 2G systems used either Time Division Multiple Access ("TDMA") or Code Division Multiple Access ("CDMA") technology. The drawbacks of these systems spurred further improvements, resulting in so-called "3G" systems that were first deployed in Asia and later in Europe and the United States.

14.    The components common to all 3G cellular systems include mobile devices and base stations. A mobile device can be either a portable cellular handset or a cellular PC card used in laptops. Base stations, which include towers, act as the first point of access for the

3

mobile device into the cellular system. To place a call, for example, a mobile device must first establish communication with a base station over a communication channel.

15.    In a 3G cellular CDMA system, many mobile devices share the same frequency channel in the system. This sharing of the frequency channel, while enhancing the efficiency of the system, leads to a gradual degradation of the system performance as the number of mobile devices in the system increases because signals transmitted by each mobile device in the system contribute to the overall interference in the system. It is, therefore, important to minimize the power level at which each mobile device transmits, thereby minimizing the overall interference in the system while at the same time providing an acceptable communication quality to users of mobile devices. Controlling the power transmitted from a mobile device is important, for example, when the device first attempts to establish communication with a base station, such as when a user attempts to place a call using the mobile device.

16.    In addition to minimizing the power transmitted by a mobile device as it tries to gain access to a cellular system, it is also important for the device to gain access as quickly as possible. Reducing the access time improves the performance of the system as perceived by users when, for example, they attempt to place calls.

17.    InterDigital's continuing development efforts to improve CDMA cellular systems through development of WCDMA technologies have significantly contributed to the evolution of the 3G systems.

18.    The specific products-at-issue in this Investigation are mobile handsets, as well as components thereof, that are capable of operating in 3G cellular systems. The mobile handsets at issue operate as cellular mobile telephones, allowing users of the handsets to place and receive

4

telephone calls as well as to run data applications, such as web browsing and audio and video streaming.

## V.    THE ASSERTED PATENTS AND NON-TECHNICAL DESCRIPTION OF THE INVENTIONS

19.    There are two asserted patents in this Investigation: U.S. Patent No. 7,117,004 ("the '004 patent") and U.S. Patent No. 7,190,966 ("the '966 patent").

### A.    U.S. Patent No. 7,117,004

#### 1.    Identification of the Patent and Ownership by InterDigital

20.    The '004 patent, titled "Method and Subscriber Unit for Performing an Access Procedure," issued on October 3, 2006, to inventors Gary Lomp and Fatih Ozluturk. The '004 patent is based on Patent Application Serial No. 10/866,851 filed on June 14, 2004, and claims priority to an application filed on June 27, 1996.

21.    The '004 patent has 18 independent claims and 48 dependent claims. Claims 1, 2, 7-10, 14, 15, 21, 22, 24, 30-32, 34, 35, 46, 47, 49, 59, and 60 are being asserted in this Investigation.

22.    InterDigital Technology Corporation owns by assignment the entire right, title, and interest in and to the '004 patent. *See* Exhibit 3.

23.    This Complaint is accompanied by a certified copy and three copies of the prosecution history of the '004 patent and four copies of each reference cited on the face of the '004 patent or mentioned in its prosecution history. *See* Appendices A and B.

#### 2.    Non-Technical Description of the Patent

24.    The '004 patent generally covers improvements to the way a mobile device gains access to a cellular CDMA system. In a CDMA system, the signals transmitted by mobile devices contribute to the overall interference in the system. To minimize interference, it is

particularly important that mobile devices transmit at the minimum possible power level necessary to gain access to the system. It is also important for mobile devices to gain access to the system as quickly as possible when, for example, users attempt to place calls.

25.    The improvements of the '004 patent achieve the above and other objectives. When a mobile device attempts to gain access to a cellular CDMA system, the mobile device starts transmitting short probe signals at an initial low power and gradually increases its transmission power until a base station in the system detects one of the short probe signals transmitted by the mobile device. In this fashion, the mobile device "ramps up" its transmission power until the base station hears the mobile device. Transmitting short probe signals while ramping up the power of the signals during the initial attempt to access the system enables the mobile device to gain access to the system in an efficient and rapid manner with minimal contribution to interference in the system.

26.    In contrast to the power ramp up improvements of the '004 patent, prior known approaches employed a series of long signals, which included a message intended to be communicated along with a header. By repeatedly transmitting the entire long message and header, the initial power ramp up procedure introduced substantial unwanted interference into the system, and it took longer for mobile devices to gain access to the system. The additional interference caused poor system performance, including poor connections and failed call attempts. The prior approaches also resulted in longer delays for mobile devices to gain access to the system, further degrading system performance.

### 3.    Foreign Counterparts to the Patent

27.    The '004 patent and its related U.S. applications have a number of foreign counterparts. Those foreign patents and applications, as well as related U.S. applications and patents, are identified in Exhibit 4.

### 4.    Licenses

28.    Under Commission Rule 210.12(a)(9)(iii), a list of licensed entities is attached to this Complaint as Confidential Exhibit 5. Under Commission Rule 210.12(c)(1), three copies of the licenses are submitted with this Complaint as Confidential Appendix E.

**B.    U.S. Patent No. 7,190,966**

### 1.    Identification of the Patent and Ownership by InterDigital

29.    The '966 patent, titled "Method and Apparatus for Performing an Access Procedure," issued on March 13, 2007, to inventors Gary Lomp and Fatih Ozluturk. The '966 patent is based on Patent Application Serial No. 11/169,490 filed on June 29, 2005, and claims priority to the same June 27, 1996 application, to which the asserted '004 patent also claims priority. The '996 patent resulted from a continuation of the application that led to the asserted '004 patent.

30.    The '966 patent has 1 independent claim and 11 dependent claims. Claims 1, 3, and 6-12 are being asserted in this Investigation.

31.    InterDigital Technology Corporation owns by assignment the entire right, title, and interest in and to the '966 patent. *See* Exhibit 3.

32.    This Complaint is accompanied by a certified copy and three copies of the portion of the prosecution history of the '966 patent that is not included in Appendix A (the prosecution of the '004 patent) and four copies of each reference that was cited on the face of the '966 patent or mentioned in its prosecution history but not already included in Appendix B. *See* Appendices C and D.

### 2.    Non-Technical Description of the Patent

33.    The '966 patent generally covers improvements to the way a mobile device gains access to a cellular CDMA system. In a CDMA system, the signals transmitted by mobile

devices contribute to the overall interference in the system. To minimize interference, it is particularly important that mobile devices transmit at the minimum possible power level necessary to gain access to the system. It is also important for mobile devices to gain access to the system as quickly as possible when, for example, users attempt to place calls.

34.    The improvements of the '966 patent achieve the above and other objectives. When a mobile device attempts to gain access to a cellular CDMA system, the mobile device starts transmitting short signals at an initial low power and gradually increases its transmission power until a base station in the system detects one of the short signals transmitted by the mobile device. After the base station hears the mobile device, the mobile device then transmits to the base station a message that is longer in duration than each of the successively transmitted short signals, indicating to the base station that the mobile device wants to establish communication with the base station. In this fashion, the mobile device "ramps up" its transmission power until the base station hears the mobile device. Transmitting short signals while ramping up the power of the signals during the initial attempt to access the system enables the mobile device to gain access to the system in an efficient and rapid manner with minimal contribution to interference in the system.

35.    In contrast to the power ramp up improvements of the '966 patent, prior known approaches employed a series of long signals, which included a message intended to be communicated along with a header. By repeatedly transmitting the entire long message and header, the initial power ramp up procedure introduced substantial unwanted interference into the system, and it took longer for mobile devices to gain access to the system. The additional interference caused poor system performance, including poor connections and failed call

attempts. The prior approaches also resulted in longer delays for mobile devices to gain access to the system, further degrading system performance.

### 3. Foreign Counterparts to the Patent

36. The '966 patent and its related U.S. applications have a number of foreign counterparts. Those foreign patents and applications, as well as related U.S. applications and patents, are the same as those identified in connection with the related '004 patent, and are identified in Exhibit 4.

### 4. Licenses

37. Pursuant to Commission Rule 210.12(a)(9)(iii), a list of licensed entities is attached to this Complaint as Confidential Exhibit 5. Pursuant to Commission Rule 210.12(c)(1), three copies of the licenses are submitted with this Complaint as Confidential Appendix E.

## VI. UNLAWFUL AND UNFAIR ACTS OF RESPONDENTS— PATENT INFRINGEMENT

38. The accused products are cellular telephone handsets capable of operating within a 3G system.

39. Generally, any of respondents' handsets capable of operating in a 3G WCDMA system are accused of infringing claims 1, 2, 7-10, 14, 15, 21, 22, 24, 30-32, 34, 35, 46, 47, 49, 59, and 60 of the '004 patent, and claims 1, 3, and 6-12 of the '966 patent.

40. In order to confirm that the accused products operate in the manner covered by the asserted patents, InterDigital has tested a selected accused product using analytical techniques that are generally accepted in the industry. The results of those analyses support the infringement allegations set forth in the claim charts accompanying this Complaint.

41.  On information and belief, the respondents collectively manufacture, import, and sell in the United States after importation 3G mobile handsets that infringe one or more of the asserted patents.  On information and belief, certain Nokia handsets can operate in a 3G WCDMA system.  For example, at least the Nokia N75 handset infringes one or more of the asserted patents.  The identification of a specific model is not intended to limit the scope of the Investigation, and any remedy should extend to all infringing models.

42.  A chart that applies representative claim 1 of the '004 patent to the accused Nokia N75 handset is attached to this Complaint as Exhibit 6.

43.  A chart that applies representative claim 1 of the '966 patent to the accused Nokia N75 handset is attached to this Complaint as Exhibit 7.

44.  To the extent any of the asserted claims require products sold by the respondents to be operated in a 3G WCDMA system in order to satisfy all claim elements, on information and belief, the accused products infringe both directly and indirectly.

45.  On information and belief, the respondents test or operate the accused products in the United States by using them in a 3G WCDMA system and performing the claimed methods, thereby directly infringing any claim requiring such operation.

46.  Respondents have had notice of the asserted patents since before the filing of this Complaint or, at a minimum, will receive notice of the asserted patents upon the filing of this Complaint.

47.  The accused product listed above is specifically designed to be used in a 3G WCDMA system.  When the accused products are operated in a WCDMA system, they have no substantial non-infringing use.

48.    Respondents induce infringement of the asserted claims by advertising their products as complying with the 3G WCDMA standards and being capable of operating according to those standards, by publishing manuals and promotional literature describing the operation of the accused devices in an infringing manner according to the 3G WCDMA standards, and by offering support and technical assistance to their customers that encourage use of the accused products in ways that infringe the asserted claims.

## VII.    SPECIFIC INSTANCES OF UNFAIR IMPORTATION AND SALE

49.    On or around May 4, 2007, representatives for InterDigital purchased several imported Nokia handsets in the United States. Exhibit 13 is a copy of a receipt for the purchase of a Nokia N75 handset, and a series of photographs of the handset and the box in which the handset was delivered. The label on the box bears a Nokia logo. The label on the inside of the handset states that the handset was made in Finland. A physical sample of the Nokia N75 handset (that was purchased as described above) is submitted with this Complaint as Appendix F.

## VIII.    HARMONIZED TARIFF SCHEDULE ITEM NUMBERS

50.    On information and belief, the Harmonized Tariff Schedule of the United States item numbers under which the infringing Nokia handsets or components thereof may be imported into the United States may be at least HTSUS 8525 and subsections thereof (including 8525.20.05, 8525.20.30, and 8525.20.90), 8527.90.40, 8527.90.95, and 8529 and subsections thereof.

## IX.    RELATED LITIGATION

51.    There has been no court or agency litigation, domestic or foreign, involving the specific unfair acts asserted in this Complaint.

52.   Nokia filed a suit in 2005 against InterDigital Communications Corporation and InterDigital Technology Corporation in the U.S. District Court for the District of Delaware seeking a declaratory judgment that a number of InterDigital patents relating to cellular telephone technology were invalid or not infringed.  Neither of the asserted patents was the subject of any declaratory judgment request, and that declaratory judgment claim was dismissed by the Court.  The complaint also claimed that certain of InterDigital's statements that certain of InterDigital's patents are essential to the 3G standard violated the Lanham Act.  *See Nokia Corp. v. InterDigital Communications Corp.*, Civ. Action No. 05-16 (D. Del. 2005).  Nokia later identified specific InterDigital patents and alleges such patents are not essential to the 3G standard.  Although neither of the asserted patents was specifically identified by Nokia as allegedly not essential to the 3G standard, pursuant to a First Amended Case Management Order issued on July 9, 2007, by the Special Master in the case, Nokia may later identify additional InterDigital patents to be included in the case.  Moreover, also pursuant to the First Amended Case Management Order, Nokia's attempt to take discovery on validity, infringement, and enforceability was denied, but Nokia may seek to modify this limitation after claim construction.

53.   In 2003, a dispute arose between InterDigital and Nokia concerning Nokia's royalty obligations under a Patent License Agreement.  This matter was submitted to arbitration, and in mid-2005 the Arbitral Tribunal issued its award finding, among other things, that Nokia's obligation to pay certain royalties had been triggered.  There was a subsequent action in the Southern District of New York confirming the Award and also a subsequent arbitration between the parties.  In April 2006, the parties settled these disputes in a manner that provided Nokia with a 2G license for certain products and a release for certain 3G-related activities occurring before

12

the effective date of the settlement. There is no ongoing 3G license between InterDigital and Nokia.

54.    On March 23, 2007, InterDigital filed a complaint with the International Trade Commission identifying as proposed respondents Samsung Electronics Co., Ltd., Samsung Electronics America, Inc., and Samsung Telecommunications America LLC, and alleging infringement of the '004 patent, U.S. Patent No. 6,674,791 ("the '791 patent"), and U.S. Patent No. 6,973,579 ("the '579 patent"). The complaint requested that the Commission institute an investigation and, after determining there had been a violation of 19 U.S.C. § 1337, issue a permanent exclusion order and a permanent cease-and-desist order. An investigation was instituted on April 20, 2007, as Investigation No. 337-TA-601. On June 4, 2007, InterDigital filed an amended complaint in that investigation alleging infringement of the '966 patent. That investigation is currently in discovery.

55.    On March 23, 2007, the same day InterDigital filed the complaint in Investigation No. 337-TA-601, InterDigital filed a complaint against the same Samsung entities in the U.S. District Court for the District of Delaware alleging infringement of the '004, '791, and '579 patents. *See InterDigital Communications Corp. v. Samsung Electronics Corp., Ltd.*, Civ. Action No. 07-165 (D. Del. 2007). On May 4, 2007, InterDigital filed an amended complaint in that action alleging infringement of the '966 patent. This action in the District of Delaware has been stayed until the ITC determination in Investigation No. 337-TA-601 becomes final.

56.    On March 23, 2007, the same day InterDigital filed the complaints in Investigation No. 337-TA-601 and in the U.S. District Court for the District of Delaware, Samsung Telecommunications America LLP ("Samsung Telecom") and Samsung Electronics Co., Ltd. ("Samsung Electronics") filed a complaint against defendants InterDigital Communications

13

Corporation, InterDigital Technology Corporation, and Tantivy Communications, Inc. in the U.S. District Court for the District of Delaware. The complaint seeks damages and injunctive relief for defendants' alleged refusal to comply with their contractual obligations to be prepared to license their patents on fair, reasonable, and nondiscriminatory ("FRAND") terms. The complaint also seeks declarations that (i) InterDigital's alleged refusal to provide FRAND licenses to Samsung Telecom or Samsung Electronics constitutes an unfair business practice; (ii) Samsung Telecom and Samsung Electronics have a right to InterDigital's patents by virtue of their relationship with Qualcomm Incorporated; (iii) the claims of various InterDigital's patents are unenforceable; (iv) the claims of various InterDigital's patents are invalid; and (v) the claims of various InterDigital's patents are not infringed by Samsung Telecom or Samsung Electronics. *See Samsung Electronics Corp., Ltd. v. InterDigital Communications Corp.*, Civ. Action No. 07-167 (D. Del. 2007). Neither of the asserted patents was specifically identified in the complaint. This action has been stayed until September 14, 2007.

## X.    THE DOMESTIC INDUSTRY

57.    InterDigital has established a domestic industry under at least 19 U.S.C. § 1337(a)(3)(C).

58.    A domestic industry exists with respect to InterDigital's activities in the United States that exploit the asserted patents by reason of InterDigital's substantial investment in domestic research, development, engineering, and licensing of the WCDMA technology protected by the patents, including past and present development of the technology itself, testing of that technology and components, and technical support services to licensees. InterDigital's research activities with respect to CDMA technology date back to 1993 and continue today.

**A.    Investments in Research and Development, and Engineering**

59.    InterDigital operates facilities in King of Prussia, Pennsylvania and Melville, New York that are used for the research and development and engineering of technology used in the 3G mobile handsets at issue and covered by the asserted patents.

60.    In 1993, InterDigital began working on research and development of a CDMA technology at its Melville, New York facility.  That work later transitioned into research and development of WCDMA technology.  That WCDMA technology is utilized by handsets and PC cards today, including in the accused products, and is covered by the '004 and '966 patents. In 1997, InterDigital also began working on CDMA research and development projects at its King of Prussia location.  Between 1993 and 1999, InterDigital employed between 21 and 130 engineering and technical staff, associated support personnel, and management personnel in that research.

61.    The value of InterDigital's plant and equipment and the specific number of employees involved in these research and development activities are disclosed in more detail in Confidential Exhibit 14.

**B.    Investments in Licensing**

62.    InterDigital has invested in personnel and resources to monitor the market, identify potential manufacturers and users of its 3G wireless technology, establish contacts with those potential manufacturers and users, provide pre-licensing technical services, negotiate licenses, conduct technology transfers, and monitor licensee compliance with the licensing program.

63.    InterDigital's 3G wireless technology licensing efforts include the '004 and '966 patents.

15

64.  InterDigital's investments in intellectual property and technology licensing operations attributable to domestic industry activities exploiting the '004 and '966 patents are set forth in more detail in Confidential Exhibit 14.

## XI.  RELIEF REQUESTED

65.  WHEREFORE, by reason of the foregoing, Complainant InterDigital respectfully requests that the United States International Trade Commission:

(a)  Institute an immediate Investigation pursuant to Section 337 of the Tariff Act of 1930, as amended, 19 U.S.C. § 1337(a)(1)(B)(i) and (b)(1) with respect to violations of Section 337 based upon the importation, sale for importation, and sale after importation into the United States of infringing 3G mobile handsets and components thereof that infringe one or more of the asserted claims of InterDigital's United States Letters Patent Nos. 7,117,004 or 7,190,966;

(b)  Schedule and conduct a hearing on said unlawful acts and, following said hearing;

(c)  Issue a permanent exclusion order pursuant to 19 U.S.C. § 1337(d)(1) barring from entry into the United States all infringing 3G mobile handsets and components thereof imported by or on behalf of any of the respondents;

(d)  Issue a permanent cease-and-desist order, pursuant to 19 U.S.C. § 1337(f), directing each respondent to cease and desist from importing, marketing, advertising, demonstrating, warehousing inventory for distribution, offering for sale, selling, distributing, licensing, or using 3G mobile handsets or components thereof that infringe one or more claims of the asserted patents; and

16

(e)    Grant such other and further relief as the Commission deems just and proper

based on the facts determined by the Investigation and the authority of the Commission.

Respectfully Submitted,

Dated:  August 7, 2007

Smith R. Brittingham IV
Patrick J. Coyne
Christopher P. Isaac
Lionel M. Lavenue
Houtan K. Esfahani
Elizabeth A. Niemeyer
Rajeev Gupta

FINNEGAN, HENDERSON, FARABOW,
  GARRETT & DUNNER, L.L.P.
901 New York Avenue, N.W.
Washington, D.C.  20001
Telephone:  (202) 408-4000
Facsimile:  (202) 408-4400

Counsel for Complainants
InterDigital Communications, LLC and
InterDigital Technology Corporation

## VERIFICATION OF COMPLAINT

I, Bruce G. Bernstein, declare, in accordance with 19 C.F.R. §§ 210.4 and 210.12(a), under penalty of perjury, that the following statements are true:

1.    I am the Chief Intellectual Property and Licensing Officer for Complainant InterDigital Communications, LLC as well as for Complainant InterDigital Technology Corporation.  I am duly authorized to sign this Complaint on behalf of both Complainants.

2.    I have read the foregoing Complaint.

3.    To the best of my knowledge, information, and belief, based on reasonable inquiry, the foregoing Complaint is well-founded in fact and is warranted by existing law or by a non-frivolous argument for the extension, modification, or reversal of existing law or the establishment of new law.

4.    The allegations and other factual contentions have evidentiary support or are likely to have evidentiary support after a reasonable opportunity for further investigation or discovery.

5.    The foregoing Complaint is not being filed for an improper purpose, such as to harass or to cause unnecessary delay or needless increase in the cost of litigation.

Executed on:  August __6__ , 2007

_____
Bruce G. Bernstein
Chief Intellectual Property and Licensing Officer
InterDigital Communications, LLC

Executed on:  August __6__ , 2007

_____
Bruce G. Bernstein
General Patent Counsel
InterDigital Technology Corporation

# EXHIBIT O

NON-CONFIDENTIAL VERSION
CONFIDENTIAL BUSINESS INFORMATION SUBJECT TO PROTECTIVE ORDER
REDACTED FROM IN EXHIBIT A HERETO

# THE UNITED STATES INTERNATIONAL TRADE COMMISSION
## WASHINGTON, D.C.

### Before the Honorable Paul J. Luckern
### Administrative Law Judge

| | |
|---|---|
| In the Matter of | |
| CERTAIN 3G MOBILE HANDSETS AND COMPONENTS THEREOF | Investigation No. 337-TA-613 |

## NOKIA CORPORATION AND NOKIA INC.'S RESPONSE
## TO THE COMPLAINT AND NOTICE OF INVESTIGATION

Pursuant to 19 C.F.R. § 201.13(a), Respondents Nokia Corporation and Nokia Inc. (collectively "Respondents" or "Nokia") hereby respond to the Complaint filed by Complainants InterDigital Communications Corporation and InterDigital Technology Corporation (collectively "Complainant" or "InterDigital") on August 7, 2007 in the above-captioned investigation ("this Investigation") and to the Notice of Investigation issued by the United States International Trade Commission ("the Commission") dated September 5, 2007.

The following headings and numbered paragraphs correspond to and respond to the numbered paragraphs set forth in the Complaint.

## I.    INTRODUCTION

1.    The allegations contained in Paragraph 1 are not factual allegations that call for a response from Respondents. To the extent the allegations in Paragraph 1 require a response, Respondents deny them.

2.    Respondents admit that they have been named as Respondents in this Investigation. Respondents deny all remaining allegations in Paragraph 2.

3.      Respondents lack sufficient information or knowledge to admit or deny the allegations of Paragraph 3, and, on that basis, deny them.

4.      Respondents deny the allegations of Paragraph 4.

5.      The allegations contained in Paragraph 5 are not factual allegations that call for a response from Respondents.  To the extent the allegations in Paragraph 5 require a response, Respondents deny them.

## II.    COMPLAINANT

6.      Respondents lack sufficient information or knowledge to admit or deny the allegations of Paragraph 6, and, on that basis, deny them.

7.      Respondents admit that WCDMA technology is sometimes referred to as a "3G technology."  Respondents lack sufficient information or knowledge to admit or deny the remaining allegations of Paragraph 7, and, on that basis, deny them.

8.      Respondents lack sufficient knowledge or information to admit or deny the allegations of Paragraph 8, and, on that basis, deny them.

9.      Respondents admit that Nokia Corporation entered into a patent license agreement with Complainant in the past.  Respondents lack sufficient knowledge or information to admit or deny the remaining allegations of Paragraph 9, and, on that basis, deny them.

## III.   PROPOSED RESPONDENTS

10.     Respondent admits the allegations of Paragraph 10.

11.     Respondent admits the allegations of Paragraph 11.

## IV.   THE TECHNOLOGY AND PRODUCTS AT ISSUE

12.     Based upon their current information and belief, Respondents admit the allegations in Paragraph 12.

13.     Respondents admit the allegations contained in the first three sentences of Paragraph 13. Respondents deny all the remaining allegations contained in Paragraph 13.

14.     Respondents admit the allegations of Paragraph 14.

15.     Respondents admit the allegations in the first two sentences of Paragraph 15. Respondents lack sufficient knowledge or information to admit or deny the remaining allegations in Paragraph 15 and, on that basis, deny them.

16.     Respondents lack sufficient knowledge or information to admit or deny the remaining allegations in Paragraph 16 and, on that basis, deny them.

17.     Respondents deny the allegations of Paragraph 17.

18.     Respondents admit that Complainants are accusing UMTS handsets that can be used to place calls and transfer data. Respondents deny all the remaining allegations in Paragraph 18.

## V.     THE ASSERTED PATENTS AND NON-TECHNICAL DESCRIPTION OF THE INVENTIONS

19.     Respondents admit the allegations of Paragraph 19.

### A.     United States Patent No. 7,117,004

#### 1.     Identification of the Patent and Ownership by InterDigital

20.     Based upon their current information and belief, Respondents admit that the face of the '004 Patent states that it: (i) is entitled "Method and Subscriber Unit for Performing an Access Procedure;" (ii) appears to have been issued on October 3, 2006; (iii) names as putative inventors Gary Lomp and Fatih Ozluturk; (iv) appears to be based on Patent Application Serial No. 10/866,851, filed on June 14, 2004. Respondents lack sufficient knowledge or information to admit or deny the accuracy of the above or any of the remaining allegations contained in Paragraph 20 and, on that basis, deny them.

21.    Based upon their current information and belief, Respondents admit the allegations contained in the first sentence of Paragraph 21.   The remaining allegations in Paragraph 21 are not factual allegations that call for a response from Respondents.   To the extent these allegations call for a response, Respondents deny them.

22.    Respondents lack sufficient knowledge or information to admit or deny the allegations of Paragraph 22, and, on that basis, deny them.

23.    Respondents lack sufficient knowledge or information to admit or deny the allegations of Paragraph 23 of the Complaint, and on that basis deny them.

### 2.    Non-Technical Description of the Patent

24.    Respondents deny all the allegations of Paragraph 24.

25.    Respondents deny all the allegations of Paragraph 25.

26.    Respondents deny all the allegations of Paragraph 26.

### 3.    Foreign Counterparts to the Patent

27.    Respondents lack sufficient information to admit or deny the allegations of Paragraph 27 and, on that basis, deny them.

### 4.    Licenses

28.    The allegations contained in Paragraph 28 are not factual allegations that call for a response from Respondents.   To the extent these allegations call for a response, Respondents lack sufficient knowledge or information to admit or deny the allegations and, on that basis, deny them.

B.    United States Patent No. 7,190,966

1.    Identification of the Patent and Ownership of InterDigital

29.    Based upon their current information and belief, Respondents admit that the face of the '966 Patent states that it: (i) is entitled "Method and Apparatus for Performing an Access Procedure;" (ii) appears to have been issued on March 13, 2007; (iii) names as putative inventors Gary Lomp and Fatih Ozluturk; (iv) appears to be based on Patent Application Serial No. 11/169,490 filed on June 29, 2005. Respondents lack sufficient knowledge or information to admit or deny the accuracy of the above or any of the remaining allegations contained in Paragraph 29 and, on that basis, deny them.

30.    Based upon their current information and belief, Respondents admit the allegations contained in the first sentence of Paragraph 30. The remaining allegations in Paragraph 30 are not factual allegations that call for a response from Respondents. To the extent these allegations call for a response, Respondents deny them.

31.    Respondents lack sufficient knowledge or information to admit or deny the allegations of Paragraph 31, and, on that basis, deny them.

32.    Respondents lack sufficient knowledge or information to admit or deny the allegations of Paragraph 32, and, on that basis, deny them.

2.    Non-Technical Description of the Patent

33.    Respondents deny all the allegations of Paragraph 33.

34.    Respondents deny all the allegations of Paragraph 34.

35.    Respondents deny all the allegations of Paragraph 35.

### 3.     Foreign Counterparts to the Patent

36.     Respondents lack sufficient knowledge or information on which to admit or deny the allegations of Paragraph 36 of the Complaint, and, on that basis deny them.

### 4.     Licenses

37.     The allegations contained in Paragraph 37 are not factual allegations that call for a response from Respondents.  To the extent these allegations call for a response, Respondents lack sufficient knowledge or information to admit or deny the allegations and, on that basis, deny them.

## VI.    UNLAWFUL AND UNFAIR ACTS OF RESPONDENTS – PATENT INFRINGEMENT

38.     Respondents admit that the accused products are UMTS handsets.  Respondents deny the remaining allegations contained in Paragraph 38.

39.     The allegations contained in Paragraph 39 are not factual allegations that call for a response from Respondents.  To the extent these allegations call for a response, Respondents deny them.

40.     Respondents deny that the accused products infringe the patents asserted in this Investigation.  Respondents lack knowledge or information sufficient to admit or deny the remaining allegations in Paragraph 40 and, on that basis, deny them.

41.     Respondents admit the allegations contained in the second sentence of Paragraph 41.  Respondents deny all the remaining allegations contained in Paragraph 41.

42.     The allegations contained in Paragraph 42 are not factual allegations that call for a response from Respondents.  To the extent the allegations call for a response, Respondents deny them.

43.    The allegations contained in Paragraph 43 are not factual allegations that call for a response from Respondents. To the extent the allegations call for a response, Respondents deny them.

44.    Respondents deny all the allegations of Paragraph 44.

45.    Respondents deny all the allegations of Paragraph 45.

46.    Respondents admit that they have, at least, received notice of the asserted patents upon service of the Complaint.

47.    Respondents admit that the accused products are designed to be compliant with the UMTS standard. Respondents deny any remaining allegations in Paragraph 47.

48.    Respondents deny all the allegations of Paragraph 48.

## VII.    SPECIFIC INSTANCES OF UNFAIR IMPORTATION AND SALE

49.    Respondents lack knowledge or information sufficient to admit or deny the allegations of Paragraph 49 and, on that basis, deny them.

## VIII.    HARMONIZED TARIFF SCHEDULE ITEM NUMBERS

50.    Respondents deny the allegations in Paragraph 50.

## IX.    RELATED LITIGATION

51.    Respondents deny all the allegations of Paragraph 51.

52.    Respondents deny the allegations contained in the fifth and sixth sentences of Paragraph 52. Respondents admit the remaining allegations contained in Paragraph 52.

53.    Respondents deny the allegations contained in the last sentence of Paragraph 53. Respondents admit the remaining allegations contained in Paragraph 53.

54.     Respondents lack knowledge or information sufficient to admit or deny the allegations contained in the last sentence of Paragraph 54. Respondents admit the remaining allegations contained in Paragraph 54.

55.     Respondents admit the allegations contained in Paragraph 55.

56.     Respondents admit that there exists litigation between Complainant, Tantivy Communications, Inc. and Samsung in the United States District Court for the District of Delaware. Respondents lack sufficient knowledge or information to admit or deny all remaining allegations of Paragraph 56, and, on that basis, deny them.

X.     THE DOMESTIC INDUSTRY

57.     Respondents deny all the allegations of Paragraph 57.

58.     Respondents deny all the allegations of Paragraph 58.

A.     **Investments In Research and Development, and Engineering**

59.     Respondents lack sufficient knowledge or information to admit or deny the allegations in Paragraph 59, and, on that basis deny them.

60.     Respondents lack sufficient knowledge or information to admit or deny the allegations in Paragraph 60, and, on that basis, deny them.

61.     Respondents lack sufficient knowledge or information to admit or deny the allegations in Paragraph 61 of the Complaint, and, on that basis deny them.

B.     **Investments in Licensing**

62.     Respondents lack sufficient knowledge or information to admit or deny the allegations in Paragraph 62, and, on that basis, deny them.

63.     Respondents lack sufficient knowledge or information to admit or deny the allegations in Paragraph 63, and, on that basis, deny them.

64.    Respondents lack sufficient knowledge or information to admit or deny the allegations in Paragraph 64 of the Complaint, and, on that basis, deny them.

## XI.    RELIEF REQUESTED

65.    The allegations contained in Paragraph 65 are not factual allegations that call for a response from Respondents.  To the extent the allegations call for a response, Respondents deny them.

66.    To the extent any allegation of the Complaint is not specifically admitted in the numbered paragraphs above, Respondents deny such allegations.

67.    The following headings and numbered paragraphs do not directly correspond to numbered paragraphs set forth in the Complaint.

### RESPONSE TO NOTICE OF INVESTIGATION

Respondents acknowledge that the Commission has instituted an investigation as set forth in the Commission's Notice of Investigation dated September 5, 2007.  Respondents deny that there has been any violation of 19 U.S.C. § 1337 by Respondents in the importation into the United States, the sale for importation, or the sale within the United States after importation of certain 3G mobile handsets and components thereof by reason of infringement of any claims of any patents owned by or assigned to the Complainant.  Respondents deny that there exists a domestic industry as required under 19 U.S.C. § 1337(a)(2) and defined under 19 U.S.C. § 1337(a)(3).  Respondents deny that Complainant is entitled to any relief as a result of this Investigation.

By providing the following information, Respondents intend only to supply data required by 19 C.F.R. § 210.13(b).  Respondents specifically deny that any of the information or data

supplied below relate to or support any allegations of infringement against Respondents or any violation of 19 U.S.C. § 1337.

Pursuant to Rule 210.13(b), Respondents provide the following additional information:

1.    The quantity and value of Respondents' products accused of infringement imported by Respondent Nokia Inc. is provided in Confidential Exhibit A to this Response.

2.    The Harmonized Tariff Schedule item number for wireless communication handsets imported by or on behalf of Respondent Nokia Inc. is 8517.12.00 and/or 8517.18.00.

3.    Respondents' capacity to manufacture the Accused Products is provided in confidential exhibit A to this Response.

4.    The United States constitutes a substantial market for Respondents for the Accused Products.

## AFFIRMATIVE DEFENSES

Respondents assert the following affirmative and other defenses.    Discovery of Complainant had just begun at the time of this Response, and therefore, Respondents have not yet had sufficient time and opportunity to collect and review all the information that may be relevant to the matters and issues raised herein.    Respondents accordingly, under 19 U.S.C. §§ 210.14(b) and 210.14(c), reserves the right to seek amendment of, modify, and/or expand these defenses and to take further positions as discovery proceeds in this Investigation.

## FIRST AFFIRMATIVE DEFENSE
(Invalidity)

A.    **United States Patent No. 7,117,004**

5.    The asserted claims of the '004 Patent are each invalid for failure to meet the requirements of 35 U.S.C. §§ 101, 102, 103, and/or 112.

6.    All asserted claims of the '004 Patent are invalid under 35 U.S.C. §§ 102 and/or 103 in view of at least the following prior art: U.S. Patent Nos. 5,430,760, 5,748,687, 5,796,776, 5,799,010, 5,991,329, 5,828,662, 5,991,332, 6,021,122, 6,049,535, 6,157,619, 6,212,174, 6,215,778, 6,229,843, 6,272,168, and 6,707,805; Telecommunications Industry Association Interim Standard 95A ("TIA-IS-95A"); A. Viterbi, et al., *Erlang Capacity of a Power Controlled CDMA System*, IEEE Journal on Selected Areas in Communications, VOL. 11, No. 6, Aug. 1993; F. Ozluturk, et al., *Performances of Acquisition Schemes for CDMA Systems with Complex Signature Sequences*, International Journal of Wireless Information Networks, Vol. 2, No. 1, 1995; and *Coherent and noncoherent DS/SSMA communications with complex signature sequences: Error and acquisition performances*, (dissertation of) Ozluturk, Fatih M., Ph.D, University of Massachusetts, 1994.  Respondents are in the process of obtaining further relevant prior art, including through discovery, which is in its early stages at the time of this Response. Respondents will set forth further invalidity allegations upon obtaining additional relevant prior art.

7.    All asserted claims of the '004 Patent are invalid for failure to comply with the requirements of 35 U.S.C. § 112 due to lack of written description, failure to particularly point out and distinctly claim the subject matter which is regarded as the alleged invention, failure to set forth the best mode contemplated by the inventors for carrying out the alleged invention, and/or failure to set forth a written description sufficient to enable any person skilled in the art to make and use the alleged invention.  For example, at least the following limitations of claim 1 of the '004 Patent are indefinite, not enabled, and/or lack adequate written description: "transmitting dynamically selected code signals;" "the transmitted dynamically selected code signals carry no data;" "[transmitting an access signal] in response to detecting the acknowledgment;" "the access

signal is associated with the dynamically selected code signals;" and "the dynamically selected code signals are shorter than the access signal."

B.    **United States Patent No. 7,190,966**

8.    The asserted claims of the '966 Patent are each invalid for failure to meet the requirements of 35 U.S.C. §§ 101, 102, 103, and/or 112.

9.    All asserted claims of the '966 Patent are invalid under 35 U.S.C. §§ 102 and/or 103 in view of at least the following prior art: U.S. Patent Nos. 5,430,760, 5,748,687, 5,796,776, 5,799,010, 5,991,329, 5,828,662, 5,991,332, 6,021,122, 6,049,535, 6,157,619, 6,212,174, 6,215,778, 6,229,843, 6,272,168, and 6,707,805; TIA-IS-95A; A. Viterbi, et al., *Erlang Capacity of a Power Controlled CDMA System*, IEEE Journal on Selected Areas in Communications, VOL. 11, No. 6, Aug. 1993; F. Ozluturk, et al., *Performances of Acquisition Schemes for CDMA Systems with Complex Signature Sequences*, International Journal of Wireless Information Networks, Vol. 2, No. 1, 1995; and *Coherent and noncoherent DS/SSMA communications with complex signature sequences: Error and acquisition performances*, (dissertation of) Ozluturk, Fatih M., Ph.D, University of Massachusetts, 1994. Respondents are in the process of obtaining further relevant prior art, including through discovery, which is in its early stages at the time of this Response. Respondents will set forth further invalidity allegations upon obtaining additional relevant prior art.

10.    All asserted claims of the '966 Patent are invalid for failure to comply with the requirements of 35 U.S.C. § 112 due to lack of written description, failure to particularly point out and distinctly claim the subject matter which is regarded as the alleged invention, failure to set forth the best mode contemplated by thee inventors for carrying out the alleged invention, and/or failure to set forth a written description sufficient to enable any person skilled in the art to

make and use the alleged invention. For example, at least the following limitations of claim 1 of the '966 Patent are indefinite, not enabled, and/or lack adequate written description: "when the subscriber unit is first accessing a CDMA network and wants to establish communications with a base station;" "the transmitter successively transmits signals;" "the transmitter further configured such that the transmitter transmits to the base station a message indicating to the base station over the communication channel to be indicated by the base station, the message being transmitted only subsequent to the subscriber unit receiving the indication;" "wherein each of the successively transmitted signals and the message are generated using a same code;" and "wherein each of the successively transmitted signals is shorter than the message."

**SECOND AFFIRMATIVE DEFENSE**
(Substantial Non-Infringing Uses)

11.    The Accused Product has substantial non-infringing uses as set forth herein.

12.    Complainant has only alleged that certain functionalities of the Accused Product infringe certain claims of the Asserted Patents.

13.    The Accused Product is capable of operating in one or more modes other than in a 3G UMTS mode.

14.    3G UMTS technology is not the primary 3G technology used in the United States.

15.    The majority of cellular networks in the United States are not capable of facilitating wireless communication using 3G UMTS technology.

16.    The Accused Product is capable of operating on cellular networks in the United States that are not 3G UMTS networks.

17.    Various of the asserted claims are method claims directed to the use of wireless communication handsets on an active cellular network, and Respondents, by import and sale in the United States of the Accused Product, do not practice such claimed methods.

## THIRD AFFIRMATIVE DEFENSE
(Inequitable Conduct)

18.    On information and belief, the Asserted Patents are unenforceable under the doctrine of inequitable conduct due to breaches of 37 C.F.R. § 1.56 by either or both of the named inventors on the Asserted Patents and others substantively involved in the prosecution of applications leading to the Asserted Patents.

19.    Respondents are continuing to obtain and review information related to the large family of United States and foreign patents and publications related to the Asserted Patents, and accordingly, Respondents intend to set forth further allegations regarding the inequitable conduct associated with the procurement of one or more of the Asserted Patents as discovery continues.

**A.    United States Patent No. 7,117,004**

20.    On information and belief, individuals charged with a duty of candor on behalf of Complainant failed, with an intent to deceive, to properly disclose to the United States Patent & Trademark Office ("USPTO") information material to the patentablity of the '004 Patent. This information includes, but is not limited to, the following: United States Patent No. 5,748,687 (on which F. Ozluturk is listed as an inventor, and which claims priority to a provisional application filed on June 30, 1995); U.S. Patent Nos. 5,796,776, 5,799,010, 5,991,329, 5,991,332, 6,049,535, 6,157,619, 6,212,174, 6,215,778, 6,229,843, 6,272,168, and 6,707,805 (on each of which F. Ozluturk and G. Lomp are listed as inventors, and each of which claims priority to a provisional application filed on June 30, 1995); United States Patent No. 5,828,662 (which F. Ozluturk and G. Lomp had knowledge of through United States Patent No. 6,801,516); United States Patent No. 6,021,122 (which F. Ozluturk and G. Lomp had knowledge of through United States Patent No. 6,272,168); F. Ozluturk, et al., *Performances of Acquisition Schemes for CDMA Systems with Complex Signature Sequences*, International Journal of Wireless Information Networks,

-14-

Vol. 2, No. 1, 1995; and *Coherent and noncoherent DS/SSMA communications with complex signature sequences: Error and acquisition performances*, (dissertation of) Ozluturk, Fatih M., Ph.D, University of Massachusetts, 1994.

### B.    United States Patent No. 7,190,966

21.    On information and belief, individuals charged with a duty of candor on behalf of Complainants failed, with an intent to deceive, to properly disclose to the USPTO information material to the patentablity of the '966 Patent. This information includes, but is not limited to, the following: United States Patent No. 5,748,687 (on which F. Ozluturk is listed as an inventor, and which claims priority to a provisional application filed on June 30, 1995); United States Patent No. 5,991,329 (on which F. Ozluturk and G. Lomp are listed as inventors, and each of which claims priority to a provisional application filed on June 30, 1995); United States Patent No. 5,828,662 (which F. Ozluturk and G. Lomp had knowledge of through United States Patent No. 6,801,516); United States Patent No. 6,021,122 (which F. Ozluturk and G. Lomp had knowledge of through United States Patent No. 6,272,168); F. Ozluturk, et al., *Performances of Acquisition Schemes for CDMA Systems with Complex Signature Sequences*, International Journal of Wireless Information Networks, Vol. 2, No. 1, 1995; and *Coherent and noncoherent DS/SSMA communications with complex signature sequences: Error and acquisition performances*, (dissertation of) Ozluturk, Fatih M., Ph.D, University of Massachusetts, 1994. Respondents are in the process of investigating for the existence of further inequitable conduct activities, including through discovery, which is in its early states at the time of this Response. Respondents may set forth further inequitable conduct allegations upon further investigation.

## FOURTH AFFIRMATIVE DEFENSE
(Lack of Domestic Industry)

22.     Complainant has not adequately alleged and cannot prove the existence of a domestic industry, as required under § 1337(a)(2) and defined under § 1337(a)(3), in connection with any of the Asserted Patents, or such that a domestic industry is in the process of being established.

## FIFTH AFFIRMATIVE DEFENSE
(Lack of Unfair Act)

23.     Respondents have committed no unfair acts.

## SIXTH AFFIRMATIVE DEFENSE
(Prosecution Laches)

24.     Complainant's claims are barred in whole or in part by delay in prosecuting the patent applications that matured into the Asserted Patents.

25.     One or more of the Asserted Patents have a purported effective filing date of more than ten years before the date Complainant requested this Investigation.

26.     Complainant, based on its representations that one or more of the Asserted Patents claim benefit under 35 U.S.C. § 120 to a series of continuation applications, could have claimed the subject matter now recited in the asserted claims of one or more of the Asserted Patents at any time from the purported effective filing dates of one or more Asserted Patents.

## SEVENTH AFFIRMATIVE DEFENSE
(Prosecution History Estoppel)

27.     By reason of acts, admissions, and statements before the USPTO made by or on behalf of applicants for the Asserted Patents during prosecution of the patent applications that matured into the Asserted Patents, Complainant is estopped from claiming infringement by Respondents of one or more claims of the Asserted Patents.

28.    For example, during prosecution of the '004 Patent, the asserted claims were amended from requiring that the transmitted dynamically selected code signals "carry no access message data" to requiring that such signals "carry no data." Based on such amendment, Complainant is now estopped from claiming infringement of the '004 Patent by the Accused Products.

## EIGHTH AFFIRMATIVE DEFENSE
### (Patent Misuse)

29.    On information and belief, InterDigital is barred from asserting the patents-in-suit by the equitable doctrine of patent misuse.  Both InterDigital and Nokia are members of the relevant standards-setting organizations ("SSOs"), including the European Telecommunications Standardization Institute ("ETSI").  Like other SSOs, ETSI's Intellectual Property Rights Policy ("IPR Policy") requires each ETSI member to identify all patents the member holds that may be essential to compliance with a proposed technology standard and state whether it will license such patents on fair, reasonable and non-discriminatory ("FRAND") terms.  InterDigital did not declare the patents-in-suit essential to the UMTS standard in accordance with ETSI's procedures, failed to provide the information requested by ETSI for the benefit of its members, failed to verify the accuracy and completeness of the information it provided to ETSI, and failed to comply with its obligations including its failure to propose FRAND terms for the patents-in-suit it claims are essential.

## NINTH AFFIRMATIVE DEFENSE
### (Express or Implied License)

30.    InterDigital's claims are barred in whole or in part pursuant to actual licenses or under the doctrine of implied license.  These licenses include, but are not limited to, any express

or implied licenses arising from InterDigital's participation in ETSI and undertakings made to that or any other SSO.

### TENTH AFFIRMATIVE DEFENSE
(Unclean Hands)

31.    The patents-in-suit are void and unenforceable by reason of the equitable doctrine of unclean hands based (among other things) on InterDigital's failure to comply with ETSI rules and obligations, failure to promptly and appropriately declare any patents-in-suit to the relevant SSOs, and failure to propose FRAND terms for the patents-in-suit it claims are essential.

### ELEVENTH AFFIRMATIVE DEFENSE
(Breach of Contract)

32.    InterDigital breached its undertakings and obligations to ETSI and any other SSO responsible for the UMTS standard, as well as to Nokia as a beneficiary of such undertakings and commitments, by seeking an exclusionary order on the patents-in-suit when it has failed to propose FRAND terms for the patents-in-suit it claims are essential.

### TWELFTH AFFIRMATIVE DEFENSE
(Equitable and Promissory Estoppel)

33.    InterDigital's claims are barred in whole or in part based on equitable and/or promissory estoppel based on its failure to propose FRAND terms for the patents-in-suit it claims are essential as required by ETSI, Nokia's reliance on InterDigital's obligation to adhere to ETSI's IPR policy, and Nokia's detriment as a result of InterDigital's failure to honor its obligation.

### CONCLUSION

34.    Respondents respectfully request that the Commission determine and direct that: (i) Respondents has not violated 19 U.S.C. § 1337; (ii) Respondents have not infringed any claim of the Asserted Patents; (iii) Complainant's request for an exclusion order and a cease and desist

order be denied; (iv) the Asserted Patents are invalid and/or unenforceable; (v) there is no protectable domestic industry in the Asserted Patents; and (vi) such other and further relief as deemed just and proper under the law.

Dated: October 5, 2007                                    Respectfully submitted,

Paul F. Brinkman
ALSTON & BIRD LLP
950 F Street, N.W.
Washington, DC  20004
Tel. (202) 756-3300
Fax (202) 756-3333
E-mail: nokia.interdigital.itc@alston.com

Patrick J. Flinn
ALSTON & BIRD LLP
1201 West Peachtree Street
Atlanta, GA  30309-3424
Tel. (404) 881-7000
Fax (404) 881-7777

Lance A. Lawson
ALSTON & BIRD LLP
101 South Tryon Street, Suite 4000
Charlotte, NC  28280
Tel. (704) 444-1000
Fax (704) 444-1111

Erica Taggart
QUINN EMMANUEL URQUHART OLIVER &
HEDGES LLP
865 South Figueroa Street
Los Angeles, CA 90017-2543
Tel. (213) 443-3000
Fax. (213) 443-3100

CONTAINS CONFIDENTIAL BUSINESS INFORMATION SUBJECT TO PROTECTIVE ORDER

## NON-CONFIDENTIAL VERSION OF EXHIBIT A

## ADDITIONAL INFORMATION REQUIRED BY RULE 210.13(b)

1.    Nokia Inc. sold approximately [           ] imported 3G mobile handsets

in the first six months of 2007.

2.    Nokia Inc.'s net U.S. sales of imported 3G mobile handsets was

approximately [        ] in the first six months of 2007.

3.    Nokia Corporation has the capacity to produce approximately [           ]

3G mobile handsets annually.

## VERIFICATION OF RESPONSE TO
## THE COMPLAINT AND NOTICE OF INVESTIGATION

I, Tero Ojanperä, for and on behalf of Nokia Corporation and Nokia Inc. declare as follows:

1. I am Executive Vice President and Chief Technology Officer of Nokia Corporation and am duly authorized to sign this Verification of Response to Complaint and Notice of Investigation ("Response") on behalf of both Complainants Nokia Corporation and Nokia Inc.;

2. I have read the Response and am aware of its contents;

3. To the best of my knowledge, information and belief founded upon reasonable inquiry:

    a. the foregoing Response contains claims, defenses, and other legal contentions that are warranted by existing law or by a non-frivolous argument for the extension, modification, or reversal of existing law or the establishment of new law;

    b. the allegations and other factual contentions contained in the Response have evidentiary support or, if specifically so identified, are likely to have evidentiary support after a reasonable opportunity for further investigation or discovery;

    c. the denials or factual contentions are warranted on the evidence or, if specifically so identified, are reasonably based on a lack of information or belief; and

10-05-2007  6:13PM    FROM

914 368 0798                                                10.23 17 a.m.    10-04-2007      1/1

    d.  the Response is not being presented for any improper purpose, such as to

harass or to cause unnecessary delay or needless increase in the cost of

the investigation or related proceeding.

I declare under penalty of perjury under the laws of the United States that the

following statements are true and correct to the best of my knowledge, information and

belief.

Executed this ____5____ day of October, 2007

                                            Tero Ojanperä

## CERTIFICATE OF SERVICE

I HEREBY CERTIFY that on this day, a true and correct copy of the foregoing document was served by the indicated means to the persons at the addresses below:

The Honorable Paul J. Luckern               [   ]   UPS Overnight
Administrative Law Judge                     [ X ]   Hand Delivery
U.S. International Trade Commission                   (2 copies)
500 E Street, S.W.
Washington, D.C.  20436


David Hollander, Jr., Esq.                   [   ]   UPS Overnight
U.S. International Trade Commission           [ X ]   Hand Delivery
Office of Unfair Import Investigations
500 E. Street, S.W., Room 401-D
Washington, D.C.  20436


Smith Brittingham, IV, Esq.                  [   ]   UPS Overnight
Patrick J. Coyne, Esq.                        [ X ]   Hand Delivery
Christopher P. Isaac, Esq.
Lionel M. Lavenue, Esq.
Houtan K. Efahani, Esq.
Vamsi K. Kakarla, Esq.
Elizabeth A. Niemeyer, Esq.
Rajeev Gupta, Esq.
FINNEGAN, HENDERSON, FARABOW,
 GARRETT & DUNNER, L.L.P.
901 New York Avenue, N.W.
Washington, D.C.  20001-4413


Dated: October 5, 2007

                                             Paul F. Brinkman